**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE FARFETCH LIMITED SECURITIES LITIGATION | Case No.: 1:23-cv-10982-ER-KHP [rel. 1:24-cv-00532-ER] |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* |  |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO MODIFY THE PSLRA DISCOVERY STAY**

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................3

      A.    Procedural History ......................................................................................3

      B.    Plaintiffs' Claims in the Consolidated Complaint .............................................5

      C.    Farfetch's Liquidation Proceeding and Chapter 15 Bankruptcy Case...............6

III.  ARGUMENT..........................................................................................................7

      A.    Applicable Legal Standards .............................................................................7

      B.    The Relevant Factors Support a Modification of the PSLRA Discovery Stay..9

            1.    Plaintiffs Seek Particularized Discovery .............................................9

            2.    The Discovery Sought by Plaintiffs Is Core to Their Claims ..............10

            3.    It Is Not an Undue Burden Simply to Reproduce Documents to
                  Plaintiffs....................................................................................................11

            4.    Plaintiffs Will Suffer Undue Prejudice if the PSLRA Stay Is Not
                  Modified.................................................................................................12

IV.   CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
 No. 09 MDL 2058(DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009)........................... *passim*

*City of Almaty, Kazakhstan v. Ablyazov*,
 1:15-CV-05345 (AJN) (KHP), 2020 WL 1130670 (S.D.N.Y. Mar. 9, 2020) ......................... 12

*Courter v. CytoDyn, Inc.*,
 No. C21-5190 BHS, 2022 WL 621535 (W.D. Wash. Mar. 3, 2022) ......................................... 9

*In re Delphi Corp.*,
 No. 05-MD-1725, 2007 WL 518626 (E.D. Mich. Feb. 15, 2007)..................................... 13, 14

*In re FirstEnergy Corp. Sec. Litig.*,
 229 F.R.D. 541 (N.D. Ohio 2004) ........................................................................................ 14

*In re FirstEnergy Corp. Sec. Litig.*,
 No. 2:20-cv-03785, 2021 WL 24147635 (S.D. Ohio June 14, 2021)........................................ 9

*In re Flir Sys., Inc. Sec. Litig.*,
 No. Civ. 00-360-HA, 2000 WL 33201904 (D. Or. Dec. 13, 2000)......................................... 15

*Hawkins v. Medapproach Holdings, Inc.*,
 13cv5434 (ALC) (DF), 2014 WL 11350177 (S.D.N.Y. June 27, 2014) .............................. 9, 12

*John B. v. Goetz*,
 879 F. Supp. 2d 787 (M.D. Tenn. 2010).................................................................................. 3

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
 947 F. Supp. 2d 368 (S.D.N.Y. 2013) ..................................................................................... 9

*In re LaBranche Sec. Litig.*,
 333 F. Supp. 2d 178 (S.D.N.Y. 2004) ............................................................................... 12, 14

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
 943 F. Supp. 2d 913 (E.D. Wis. 2013)..................................................................................... 9

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
 220 F.R.D. 246 (D. Md. 2004).................................................................................................. 9

*Singer v. Nicor, Inc.*,
   No. 02 C 5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ................................................. 14

*Waldman v. Wachovia Corp.*,
   No. 08 Civ. 2913(SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009).................................... 8, 13

 *In re Williams Sec. Litig.*,
   No. 02–CV–72H ( M), 2003 WL 22013464 (N.D. Okla. May 22, 2003) ............................... 12

*In re WorldCom, Inc. Sec. Litig.*,
   234 F. Supp. 2d 301 (S.D.N.Y. 2002) .............................................................................*passim*

**Statutes**

15 U.S.C. §78u-4 ..................................................................................................... 4, 7, 8, 15

## I.    INTRODUCTION

The Court should grant Plaintiffs' motion to modify the PSLRA's automatic discovery stay. Plaintiffs seek only to receive the limited non-privileged documents already produced by (or being produced by) Surpique L.P. to Farfetch's liquidator.[1] This narrowly tailored relief is necessary to prevent undue prejudice to Plaintiffs and the Class. In December 2023, Farfetch abruptly announced that it was bankrupt and would be selling its core operating assets to another company. Farfetch told shareholders and note holders that they would "not recover any of their outstanding investments" as a result of the maneuver. Liquidation proceedings commenced immediately under Cayman Islands law to investigate the circumstances behind Farfetch's financial collapse and bring claims against those responsible for it (the "Cayman Proceeding"). This investigation has led to discovery under Bankruptcy Rule 2004 whereby Farfetch's liquidator has subpoenaed Surpique to obtain Farfetch's corporate records, *e.g.*, financial statements, internal communications, meeting minutes, board presentations, relating to its abrupt demise and prepackaged sale to Surpique.

Farfetch's liquidator intends to use these materials to bring claims against Farfetch's former principals, including Defendant Jose Neves, for breaches of fiduciary duty. Crucially, while Farfetch's liquidator is pursuing similar claims as Plaintiffs, and would stand to recover from the same limited insurance proceeds, the liquidator is acting on behalf of Farfetch's *creditors*, not equity holders (like Plaintiffs). Thus, as critical evidence is exchanged abroad in a proceeding arising from the same core facts, Plaintiffs alone are barred from reviewing documents central to their claims. This asymmetry places Plaintiffs at a distinct disadvantage—depriving them of the ability to make informed litigation decisions and protect the Class's interests while the Cayman

---

[1] Plaintiffs have served Surpique's counsel with a copy of these motion papers.

Proceeding moves forward. Thus, with the Court's leave, Plaintiffs intend to serve a subpoena on Surpique seeking a reproduction of documents already produced (or to be produced) to the liquidator in the Cayman Proceeding.

At the April 10, 2025 hearing, Defendants suggested the PSLRA stay should remain in place regardless of parallel proceedings. But courts have recognized that when discovery is unfolding elsewhere and plaintiffs are the only parties denied access, the risk of prejudice justifies modification. *See In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002) (modifying stay where "plaintiffs are the only parties who do not have access to documents that are at the core of their claims"). That is precisely the case here. Farfetch is defunct. Its remaining value lies in limited D&O insurance proceeds—resources that may be depleted through foreign litigation if Plaintiffs cannot act now. If the liquidator, on behalf of Farfetch's creditors, is the first to the finish line, there will be nothing left for Plaintiffs and the equity holders they represent. Defendants offered no credible answer at the hearing to the looming risk that Plaintiffs could be left with no meaningful recovery.

Defendants instead speculated that granting Plaintiffs access to the requested documents would be unduly burdensome. That argument fails. Defendants have no factual basis to raise this argument on behalf of another party without knowing what exactly would be entailed in making the production. Additionally, Plaintiffs seek no new or additional discovery—only access to materials Surpique has already collected, reviewed, and produced to another party (or will be producing imminently). As Surpique's own response to the liquidator's discovery requests shows, any necessary privilege review will have already occurred by the time it would produce any documents to Plaintiffs. And even if a second review were required, courts have consistently held that such burdens are minimal where documents have already been compiled and modern tools

streamline privilege screening. *See*, *e.g.*, *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 09 MDL 2058(DC), 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009); *John B. v. Goetz*, 879 F. Supp. 2d 787, 883 (M.D. Tenn. 2010) ("[Th]e most significant contributor to the cost of privilege screening, however, is fear… Courts recognize that scanning of vast amounts of ESI utilizing key words to identify privileged information can significantly reduce the costs of a privilege review.") (cleaned up) (citations omitted).

The prejudice to Plaintiffs is not hypothetical. Surpique Holdings Limited—the parent entity—has begun the process of dissolution, and with Farfetch no longer operating, further delay risks the permanent loss of documents. This is not a speculative risk but in fact likely to occur given that Surpique has ***already*** lost documents it previously had access to; specifically, documents that previously existed in a virtual data room that, as of earlier this year, are no longer available. Moreover, as previously mentioned, the liquidation proceedings are intended to "maximize value for creditors" of Farfetch meaning that Plaintiffs face the real risk of being unable to recover any money for shareholders (equity holders) once Defendants' D&O insurance is depleted if the liquidators conclude their proceedings earlier in time.

Plaintiffs' request is narrow, imposes no undue burden, and is necessary to prevent real and irreparable harm. It does not circumvent the PSLRA but fulfills its purpose by ensuring that Plaintiffs are not forced to litigate in the dark while others access the same evidence. The Court should grant the motion and permit Plaintiffs limited discovery of documents produced (or to be produced) by Surpique in the Cayman Proceeding.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

The initial complaint in this action was filed on October 20, 2023, in the District of Maryland by Plaintiff Michael Ragan (Case No. 8:23-cv-02857-MJM (D. Md.), the "Maryland

Action"). On December 19, 2023, Plaintiff Jasmine Wu commenced a substantively identical action in this District (1:23-cv-10982-ER-KHP (S.D.N.Y.), the "SDNY Action"), asserting the same claims on behalf of the same putative class. ECF No. 1. Pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(ii), six members of a putative class of purchasers of Farfetch securities filed motions for appointment as lead plaintiff. Following the withdrawal and/or non-opposition of several lead plaintiff movants, and pursuant to a stipulation, on January 17, 2024, the Maryland court appointed Fernando Sulichin and Yuanzhe Fu as Co-Lead Plaintiffs in the Maryland Action and approved those plaintiffs' selections of Levi & Korinsky, LLP, and Hagens Berman Sobol Shapiro, LLP, to serve as Co-Lead Counsel. *See* Maryland Action, ECF No. 50.

On January 22, 2024, the Maryland court transferred the action to this District (Maryland Action, ECF No. 52), and on February 6, 2024, this Court entered an order pursuant to the parties' stipulation consolidating the Maryland Action and the SDNY Action, with Co-Lead Plaintiffs and Co-Lead Counsel continuing in their same roles.

On June 21, 2024, Plaintiffs filed a consolidated complaint. ECF No. 34. On September 11, 2024, the Individual Defendants moved to dismiss the complaint and requested judicial notice of certain documents. ECF Nos. 43–47. Plaintiffs opposed that motion on November 12, 2024 (ECF Nos. 48–49), and Defendants filed replies in support of their motions on December 12, 2024 (ECF Nos. 50–51).

On March 14, 2025, Plaintiffs filed a letter requesting a pre-motion conference for leave to modify the PSLRA stay. ECF No. 52. On April 1, 2025, the Joint Official Liquidators ("JOLs") filed a response, as did the Individual Defendants on April 7, 2025. ECF Nos. 56, 57. On April 8, Plaintiffs filed a reply in support of their letter. ECF No. 58. On April 9, 2025, the Court held a pre-motion conference, at which it granted Plaintiffs leave to file their motion by May 1, 2025.

**B.    Plaintiffs' Claims in the Consolidated Complaint**

Plaintiffs' allegations in the consolidated complaint concern Farfetch's transition to a new business strategy, the resulting financial difficulties, and the concealment of critical deficiencies. After its 2018 IPO, Farfetch shifted from a low-risk, third-party e-commerce model to an aggressive growth strategy centered on first-party acquisitions. The company spent hundreds of millions of dollars acquiring entities such as Stadium Goods, Toplife, and New Guards Group (¶¶66-81). These acquisitions, however, were poorly integrated, creating operational inefficiencies, increased costs, and inaccuracies in financial reporting (¶¶86-93). While the surge in online shopping during the COVID-19 pandemic temporarily masked these issues, they became apparent as growth slowed and profitability declined by late 2021 (¶¶111-145).

The plaintiffs allege that by the start of the Class Period,[2] Farfetch and its executives were aware that the company's pandemic-fueled growth was unsustainable. Despite internal warnings about slowing revenue and unaddressed deficiencies in internal controls, Defendants made public statements projecting continued growth and profitability (¶¶146-160). Rather than addressing these challenges, Farfetch embarked on another acquisition spree, including high-profile transactions such as the purchase of Violet Grey, a commercial agreement with Reebok, and a strategic partnership with the Neiman Marcus Group (¶¶161-196). These acquisitions were marred by financial difficulties and operational setbacks, including high costs, unsaleable inventory, and low margins, which compounded the company's financial strain (¶¶165-184, 198-235).

Plaintiffs further allege that Farfetch concealed material weaknesses in its internal controls, which were never remediated. These deficiencies led to unreliable financial reporting and further exacerbated the company's challenges (¶¶198-235). Despite these unremediated deficiencies,

---

[2] The Class Period is February 24, 2022, through December 17, 2023.

- 5 -

defendants assured investors of the company's financial health and liquidity, providing optimistic guidance for 2023 (¶¶236-240). The truth emerged through a series of partial disclosures in 2023. These disclosures included disappointing financial results, challenges in key markets, and the termination of strategic initiatives, which culminated in a dramatic decline in Farfetch's stock price (¶¶241-263). By late 2023, Farfetch faced insolvency and was forced to sell its core business to Coupang in a fire sale that effectively gutted the company and left shareholders with significant losses (¶¶264-278).

## C.    Farfetch's Liquidation Proceeding and Chapter 15 Bankruptcy Case

In February 2024, Wilmington Trust filed a "winding-up petition" in the Grand Court of the Cayman Islands. *See* Declaration of Adam Apton ("Apton Decl.") at Exhibit 1, Wilmington Trust Winding-Up Petition. The petition sought the creation of the JOLs to investigate *inter alia* Farfetch's management and the events behind its financial collapse. In pertinent part, the petition explains that "No explanation was provided by [Farfetch] in the December 2023 Announcement, or has been provided subsequently, as to how [its] financial position deteriorated from expecting positive free cash flows to substantial doubt as to its ability to continue as a going concern in the space of only four months." *Id.* at ¶26. The Cayman Islands court granted the petition and, consequently, the JOLs have been overseeing an investigation for more than a year. These efforts have most recently included a subpoena to Surpique, which was the entity that acquired Farfetch's operating assets along with its corporate "books and records."

While discovery in this matter is stayed pending the Court's resolution of the Individual Defendants' motion to dismiss the consolidated complaint, the JOLs have been pursuing discovery in the Cayman Proceeding. *See, e.g.,* Apton Decl. Ex. 2, Motion of the Foreign Representatives for Entry of an Order to Conduct Discovery from Surpique L.P., Case No. 24-11519-CTG (Bankr. D. Del.), ECF No. 66 (Dec. 3, 2024). The JOLs seek documents and communications relating to

issues directly relevant to Plaintiffs' claims in this action, including, *inter alia*, documents related to Farfetch's financial information and statements, board and committee documents, acquisitions, and public statements; and documents related to the winding up and sale of Farfetch to Coupang. *See generally id*. at Ex. 1 (Subpoena for Rule 2004 Examination). According to public filings, the JOLs suspect that Farfetch's management breached fiduciary duties owed to the company and its shareholders and that because of these breaches, abused the company and caused it to fail. As described below, there is significant overlap between these fiduciary breach claims and the Exchange Act claims alleged by Plaintiffs here.

The JOLs have been investigating the reasons behind Farfetch's implosion for the past year now, and discovery proceedings in the U.S. Bankruptcy Court in the District of Delaware have come to a head. On February 4, 2025, United States Bankruptcy Judge Craig T. Goldblatt entered an order allowing the JOLs to subpoena Surpique. Surpique produced over 16,000 document responsive to the JOLs' subpoena, and at a hearing on March 12, 2025, Judge Goldblatt held that Surpique could not rely on Delaware books-and-records inspection law to evade compliance with the subpoena. Thus, Surpique will be producing additional responsive, non-privileged materials in the near future.

### III.    ARGUMENT

**A.    Applicable Legal Standards**

The PSLRA provides for an automatic stay of discovery "during the pendency of any motion to dismiss" in a private securities class action. 15 U.S.C. §78u-4(b)(3)(B). Congress enacted the discovery stay "to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery … or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *WorldCom*, 234 F. Supp. 2d at 305 (internal citations omitted). The

statute, however, expressly provides courts with discretion to allow limited discovery during the stay "upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. §78u-4(b)(3)(B); *see also Waldman v. Wachovia Corp.*, No. 08 Civ. 2913(SAS), 2009 WL 86763, at *1 (S.D.N.Y. Jan. 12, 2009) (finding that the PSLRA discovery stay is not absolute and may be lifted "when the request is sufficiently particularized *and* when maintenance of the stay would either generate an impermissible risk of the destruction of evidence or create undue prejudice") (emphasis in original).

Undue prejudice in the context of the PSLRA has been interpreted to mean "improper or unfair treatment amounting to something less than irreparable harm," and can exist where "plaintiffs would be unable to make informed decisions about their litigation strategy in a rapidly shifting landscape because they are the only major interested party without documents forming the core of their proceedings." *Bank of Am.*, 2009 WL 4796169, at *2 (internal quotations and citations omitted); *see also WorldCom*, 234 F. Supp. 2d at 306. "Courts weigh the burden to defendants against the potential prejudice to plaintiffs, focusing on the production costs to defendants and plaintiffs' need for early review of the documents." *Bank of Am.*, 2009 WL 4796169, at *2. In determining whether to modify the discovery stay, other factors include "the defendants' financial state, settlement negotiations, case management, and the effect of delay." *Id.* at *2; *see also WorldCom*, 234 F. Supp. 2d at 306 (acknowledging the risk plaintiffs face of "pursu[ing] [an] action against defendants who no longer have anything or at least as much to offer").

"Even when a court finds undue prejudice, the stay will only be lifted on a 'clearly defined universe of documents.'" *Bank of Am.*, 2009 WL 4796169, at *3 (quoting *WorldCom*, 234 F. Supp. 2d at 301). The burden "is slight when a [producing party] 'has already found, reviewed and organized the documents.'" *Id.* at *2 (quoting *Waldman*, 2009 WL 86763, at *2). Further,

"conclusory assertions" by a subpoena recipient that compliance with a subpoena "would implicate large numbers of privileged communications and hence impose an undue burden" are "insufficient to meet their burden of persuasion." *Hawkins v. Medapproach Holdings, Inc.*, 13cv5434 (ALC) (DF), 2014 WL 11350177, at *3 (S.D.N.Y. June 27, 2014).

**B.      The Relevant Factors Support a Modification of the PSLRA Discovery Stay**

   **1.      Plaintiffs Seek Particularized Discovery**

The discovery sought by Plaintiffs is particularized and comprises a clearly defined universe of documents. Courts in this District and across the country have modified the discovery stay where, like here, the documents sought are the same documents already being sought in related litigation. *See Kaplan v. S.A.C. Cap. Advisors, L.P.*, 947 F. Supp. 2d 368, 370 (S.D.N.Y. 2013) (modifying PSLRA discovery stay "for the limited purpose of allowing the plaintiffs to obtain all document discovery now or hereafter produced to the defendants" by governmental authorities); *Bank of Am.*, 2009 WL 4796169, at *3 ("motion to lift the stay on discovery is granted as to the documents already produced in the related matters"); *see also Courter v. CytoDyn, Inc.*, No. C21-5190 BHS, 2022 WL 621535, at *2 (W.D. Wash. Mar. 3, 2022) (finding that plaintiffs adequately specified the particularized discovery because it was "already assembled and produced" and was a "closed universe of materials"); *In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-cv-03785, 2021 WL 2414763, at *3-5 (S.D. Ohio June 14, 2021) (holding that plaintiff's "specific request for already-produced discovery is sufficiently particularized"); *Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 915 (E.D. Wis. 2013) (agreeing that requested discovery was particularized because the request was "limited solely to relevant materials that have already been produced in other proceedings"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) (finding particularity in a request describing a

"clearly defined universe of documents" produced to governmental, regulatory, or self-regulatory agencies).

Plaintiffs' request here is particularized as it is limited to the non-privileged documents already produced or to be produced by Surpique to the JOLs in the Cayman Proceeding, which are directly relevant to the claims in this case. Specifically, if the Court grants Plaintiffs' motion, Plaintiffs will serve the attached subpoena on Surpique seeking a copy of those documents produced in response to the JOLs' subpoena – nothing more. *See* Apton Decl. Ex. 3, Draft Subpoena to Surpique L.P.

## 2.    The Discovery Sought by Plaintiffs Is Core to Their Claims

Defendants asserted at the April 10 hearing that the documents sought by the JOLs are not core to Plaintiffs' claims here because the JOLs are focused on fiduciary breaches, while Plaintiffs are seeking damages for false and misleading statements. But this distinction is without a difference.

The discovery being pursued by the JOLs relates to some of the very same financial statements and public proclamations that Plaintiffs allege are false and misleading. As examples, the JOLs have requested documents concerning: Farfetch's SEC filings; the creation of Farfetch's consolidated financial statements or any financial projections; the sale of Farfetch's assets to Coupang; financial information and results of Farfetch's financial reporting for Q3 and Q4 2023; Farfetch's cash flow, cash position, liquidity, revenues, profits, and losses; the decision to enter into transactions regarding Violet Grey and Reebok; Farfetch's treatment of Value-Added Tax; material weaknesses and lack of internal and operations controls; any material misstatement of Farfetch's financial position; the financial impact on Farfetch of the Ukraine war, China's zero-tolerance COVID policies, and currency fluctuations; and more. *See generally* Apton Decl. Ex. 2 at ECF No. 66-3. On matters both large and small, these requests align substantially with the core

- 10 -

of Plaintiffs' allegations in the operative complaint, which concern the same financial reports, transactions, and material weaknesses. *See* Section II(B), *supra*; *see also* Consolidated Complaint, ECF No. 34.[3]

These requests demonstrate that the JOLs, who are not subject to the PSLRA discovery stay in the Cayman Proceeding, are seeking discovery on many of the same topics that Plaintiffs discuss in their complaint, supporting Plaintiffs' allegations that Defendants were aware of and ignored repeated warnings from Farfetch employees that statements provided to investors were materially false and misleading and/or omitted material facts. These documents are core to Plaintiffs' claims.

### 3.        It Is Not an Undue Burden Simply to Reproduce Documents to Plaintiffs

Surpique may argue that it is an undue burden to force it to conduct a privilege review in advance of a reproduction to Plaintiffs, but because Plaintiffs seek only documents that Surpique has produced (or will be producing) to the JOLs, the documents sought by Plaintiffs will "have already [been] collected, reviewed, and organized … for production in other proceedings, and the burden of making another copy for [Plaintiffs] will be slight." *Bank of Am.*, 2009 WL 4796169, at *3.

Surpique's subpoena response states that it will already be preparing a privilege log in response to the JOLs' subpoena. *See* Apton Decl. Ex. 4, Letter Motion to Judge Goldblatt from the Foreign Representatives, Case No. 24-11519-CTG (Bankr. D. Del.), ECF No. 124 (Feb. 24, 2025), ECF No. 124-2 at 12 ¶ 25 ("Surpique will produce a privilege log consistent with the Applicable

---

[3] Defendants argued at the April 10 hearing that Plaintiffs' motion is an attempted end-around the purposes of the PSLRA stay and that Plaintiffs have admitted that the operative complaint is deficient as written. As counsel explained at the hearing, this mischaracterization is unfounded, and the operative complaint stands on its own.

Law, customary practice, and any other agreement that may be reached by the parties regarding the scope, timing, and/or format of privilege logs."). And to the extent that the JOLs share documents with the Ad Hoc Group of Creditors, such sharing would vitiate any privilege claim by Surpique. So Surpique need not perform a new search, collection, or privilege review for the case at bar. Courts have found there to be no prejudice where the requested documents "have already been found and compiled and plaintiffs will pay production costs." *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004); *see also In re Williams Sec. Litig.*, No. 02–CV–72H ( M), 2003 WL 22013464, at *2 (N.D. Okla. May 22, 2003) (finding no hardship on producing party when the "information sought is readily available for copying and possible production").

And even if Surpique asserted that it would need to conduct a privilege review for Plaintiffs' request, that alone does not constitute undue burden. *See Hawkins*, 2014 WL 11350177, at *3 ("conclusory assertions" by subpoena recipient that compliance with subpoena "would implicate large numbers of privileged communications and hence impose an undue burden" are "insufficient to meet their burden of persuasion").

Finally, because, "[a]s a general matter, only recipients of a subpoena have standing to seek a protective order quashing or modifying the subpoena[,]" *City of Almaty, Kazakhstan v. Ablyazov*, 1:15-CV-05345 (AJN) (KHP), 2020 WL 1130670, at *1 (S.D.N.Y. Mar. 9, 2020), Defendants have no standing to oppose Plaintiffs' request: Plaintiffs' subpoena would be directed to a third-party, *i.e.*, Surpique.

### 4.        Plaintiffs Will Suffer Undue Prejudice if the PSLRA Stay Is Not Modified

There will be undue prejudice to Plaintiffs and the Class if they do not have access to the documents produced to the JOLs in the Cayman Proceeding. The Cayman Proceeding is moving forward because it is not subject to a discovery stay, and Plaintiffs and the Class will be prejudiced by their "inability to make informed decisions about [their] litigation strategy in a rapidly shifting

landscape." *WorldCom*, 234 F. Supp. 2d at 305; *see also Waldman*, 2009 WL 86763, at *2 (finding undue prejudice where the "unavailability of the documents plaintiffs have requested places a burden on their ability to make" a determination regarding continuing with the case).

Moreover, because Farfetch no longer exists as an operating entity, its assets are fixed. The only assets available to satisfy any parties – both here and in the Cayman Proceeding – are the applicable insurance policies. If parties in the Cayman Proceeding advance through the discovery process while Plaintiffs here are restrained by the discovery stay, Plaintiffs face a likelihood that, by the time the discovery stay here is lifted, there will be no assets left to satisfy any judgment against any of the defendants. Indeed, the JOLs have made it known that their intent is to maximize value for *creditors* and not the shareholders currently represented by Plaintiffs in this action. *See* Apton Decl. Ex. 6, Decl. of Mark Goodman in Support of Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief, Case No. 24-11519-CTG (Bankr. D. Del.), ECF No. 6 (July 10, 2024), ¶ 28 ("The Petitioners are fiduciaries and officers of the Grand Court. As Joint Official Liquidators of Farfetch Limited, their duties are to: (a) collect, realize and distribute the assets of Farfetch Limited to its creditors and, if there is a surplus, to equity holders …").

In *In re Delphi Corp.*, the court addressed a similar situation with a bankrupt issuer. *See* No. 05-MD-1725, 2007 WL 518626, at *6-7 (E.D. Mich. Feb. 15, 2007). There, the plaintiffs argued that "without discovery of documents already made available to other litigants and the federal authorities, they will be unfairly disadvantaged in pursuing litigation and settlement strategies." *Id*. at *6. The court agreed, explaining that the plaintiffs faced "'being left with nothing' if this litigation does not keep pace with the bankruptcy and the SEC action." *Id*. at *7. The court found that the plaintiffs adequately demonstrated that the discovery sought was

- 13 -

necessary to prevent undue prejudice and granted their motion for partial modification of the discovery stay. *Id*. at *8.

The requested discovery is essential to Plaintiffs, particularly as it relates to their ability to make informed decisions regarding pursuing litigation and settlement strategies to benefit the Class due to the limited fund available. *See LaBranche*, 333 F. Supp. at 184; *see also Bank of Am.*, 2009 WL 4796169, at *3 (finding undue prejudice where "[d]iscovery is moving apace in parallel litigation"). Plaintiffs "will suffer undue prejudice in having to defer such decisions." *LaBranche*, 333 F. Supp. 2d at 184; *see also Singer v. Nicor, Inc.*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) (finding that a partial lifting of the PSLRA stay was necessary "to prevent the securities plaintiffs from being left with nothing if their litigation did not keep pace with the bankruptcy and other proceedings"); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (holding that "[w]ithout discovery of documents already made available to government entities, Plaintiffs would be unfairly disadvantaged in pursuing litigation and settlement strategies").

As the Court has not yet ruled on the pending motion to dismiss, it will likely be many months before discovery commences. By that time, the Cayman Proceeding will be significantly advanced and may even be resolved, potentially leaving a Class in this securities class action without monetary recourse. Congress enacted the PSLRA "to minimize the incentives for plaintiffs to file frivolous securities class actions." *WorldCom*, 234 F. Supp. 2d at 305. That purpose is not furthered where, like here, litigation premised on the same underlying events is proceeding unencumbered in another forum.

Further, as Plaintiffs already have highlighted, Surpique Holdings Limited (which owns Surpique, which controls the bankrupt Farfetch's assets) is in the process of being dissolved. To

- 14 -

date, Plaintiffs have not received any assurances from Surpique that it has the appropriate policies in place to preserve any information potentially relevant to this case. Absent the requested relief and any guarantees from Surpique, Plaintiffs may never be able to obtain the information sought if it is not produced now. Indeed, Surpique already has lost access to the virtual data room that was created for the sale of Farfetch to Coupang. *See* Apton Decl. Ex. 7, Decl. of Ryan Goldstein in Support of Motion of the Foreign Representatives for Entry of an Order to Conduct Discovery from Surpique L.P., Case No. 24-11519-CTG (Bankr. D. Del.), ECF No. 68 (Dec. 3, 2024), at ECF No. 68-3 at 3 (Surpique "claims not to have access to" "documents from the virtual data room used as part of the marketing of the Farfetch business"). While Surpique may claim that it will be able to preserve all relevant documents, it already has failed to do so.

## IV.    CONCLUSION

"The PSLRA is a shield intended to protect security-fraud defendants from costly discovery requirements, not to be a sword with which defendants can destroy the plaintiffs' ability to obtain information from third parties who are otherwise willing to disclose it." *In re Flir Sys., Inc. Sec. Litig.*, No. Civ. 00-360-HA, 2000 WL 33201904, at *3 (D. Or. Dec. 13, 2000) (internal citations omitted). Defendants' and Surpique's arguments subvert this principle and, on that basis, their arguments against Plaintiffs' request should be rejected. Plaintiffs respectfully request that the Court grant Plaintiffs limited relief from the PSLRA discovery stay pursuant to 15 U.S.C. §78u-4(b)(3)(B) to serve document subpoenas on Farfetch.

[*Signature blocks on following page*]

- 15 -

Dated: May 1, 2025

Respectfully submitted,

LEVI & KORSINSKY, LLP

/s/ *Adam M. Apton*
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
aapton@zlk.com

*Counsel for Co-Lead Plaintiff Fernando Sulichin and Co-Lead Counsel for the Class*

   -and-

Lucas E. Gilmore (admitted *pro hac vice*)
Reed R. Kathrein (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
lucasg@hbsslaw.com
reed@hbsslaw.com

   -and-

Nathan Emmons (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4957
Facsimile: (708) 628-4950
nathane@hbsslaw.com

*Counsel for Co-Lead Plaintiff Yuanzhe Fu and Co-Lead Counsel for the Class*

- 16 -