# EXHIBIT 1



**IN THE GRAND COURT OF THE CAYMAN ISLANDS**                    FSD 30 of 2024 (JAJ)

**FINANCIAL SERVICES DIVISION**

**IN THE MATTER OF THE COMPANIES ACT (2023 REVISION)**

**AND IN THE MATTER OF FARFETCH LIMITED**

---

**WINDING-UP PETITION**

---

To the Grand Court

THE HUMBLE PETITION of:

I.    Wilmington Trust, National Association, of 1100 North Market Street, Wilmington, Delaware 19890-1605, United States (the **"Petitioner"**), shows that:

**A.    INTRODUCTION**

1.    The Petitioner presents this petition (the **"Petition"**) for the winding up of Farfetch Limited (the **"Company"**) pursuant to Section 92(d) of the Companies Act (2023 Revision) (the **"Act"**), on the grounds that, for all the reasons which are particularised below, the Company is currently or will imminently become unable to pay its debts and, accordingly, is insolvent. Further, or in the alternative, the Petitioner seeks a winding-up order against the Company pursuant to Section 92(e) of the Act, on the basis that it is just and equitable that the Company be wound up.

2. The Petitioner has standing to petition because (a) amounts are due, and unpaid, under the 2027 Notes (as defined below), which the Company has acknowledged it cannot pay, (b) as trustee under the 2027 Indenture (as defined below) (in such capacity, the "**Trustee**"), the Petitioner has the right, on behalf of the holders of the 2027 Notes, to pursue any available remedy to enforce the provisions of the 2027 Indenture and the 2027 Notes, and (c) it therefore presents this Petition in the capacity as a creditor of the Company.

## B.    FACTUAL BACKGROUND

### I.    The Parties

**The Company**

3. The Company was incorporated under the laws of the Cayman Islands on 15 May 2018 as an exempted company with limited liability and registration number 336922 pursuant to the Act.

4. The registered office of the Company is at Walkers Corporate Limited, 190 Elgin Avenue, George Town, Grand Cayman, Cayman Islands.

5. The Company is the ultimate holding company of a corporate group (the "**Farfetch Group**"), with intermediate holding and operating companies in the United Kingdom, the United States, and other jurisdictions. The Farfetch Group was founded in the United Kingdom by José Neves as an online marketplace for the sale of luxury goods. Mr Neves has, and at all material times had, effective control of the Company via a dual-class share structure, under which he holds 77% of shareholder voting rights despite holding only 15% of its total issued shares. Following the mass resignation of the Company's independent directors in December 2023 (see paragraph 11 below), Mr Neves is currently the only director of the Company.

6. Following expansion and a number of acquisitions, the business of the Farfetch Group now comprises a global retail platform for the luxury fashion industry, a number of other e-commerce platforms, a number of fashion and beauty product labels, and a London department store. The Farfetch Group is operated primarily from the United Kingdom.

7. From 21 September 2018 until 2 January 2024, the Company was listed on the New York Stock Exchange (the "**NYSE**") with the ticker FTCH. The Company's market capitalisation peaked in

2

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

FSD2024-0030    Page 2 of 16    2024-02-02

early 2021 at approximately US$24 billion, at the time of the global boom in online shopping and luxury spending as a result of the COVID-19 pandemic.

8. Since its incorporation, the Company has conducted several rounds of funding including through the issuance of convertible senior notes to investors, in order to raise capital for the business of the Farfetch Group. These convertible notes include the 3.75% convertible senior notes due in 2027 (the "**2027 Notes**"), issued under an Indenture dated 30 April 2020 (the "**2027 Indenture**"), pursuant to which the Petitioner was appointed as Trustee. The Company also issued 0% convertible senior notes due 2030 (the "**2030 Notes**", and together with the 2027 Notes, the "**Notes**").

9. The assets of the Company include two intercompany loans between it (as lender) and Farfetch UK Limited ("**FF UK**") as borrower, being:

9.1. a US$400 million loan dated 30 April 2020 that is repayable no later than 1 May 2027 (in which the proceeds of the 2027 Notes were on-lent to FF UK); and

9.2. a US$650 million loan dated 17 November 2020 that is repayable no later than 15 November 2030 (in which the proceeds of the 2030 Notes were on-lent to FF UK) (together, the "**Intercompany Loans**").

10. The Company is also the 100% direct parent of Farfetch Holdings plc ("**FF PLC**"), which is the principal holding company within the Farfetch Group. By way of press release dated 31 January 2024, it was announced that Coupang Inc. ("**Coupang**") had acquired the assets of FF PLC.

11. On or about 18 December 2023, all of the independent directors of the Company resigned, being:

11.1. Dana Evan, appointed on 12 August 2015;

11.2. David Rosenblatt, appointed on 25 July 2017;

11.3. Diane Irvine, appointed in August 2020;

11.4. Gillian Tans, appointed in August 2020;

11.5. Stephanie Horton, appointed in August 2020; and

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

11.6.    Victor Luís, appointed in August 2020.

12.    These resignations left Mr Neves as the sole remaining director of the Company.

**The Petitioner**

13.    The Petitioner is the Trustee of the 2027 Notes appointed pursuant to the terms of the 2027 Indenture with the right to pursue any available remedy to enforce the provisions of the 2027 Indenture and the 2027 Notes in accordance with the terms of the 2027 Indenture, the 2027 Notes and applicable law. The 2027 Indenture and the 2027 Notes are stated within their terms to be governed by New York law.

II.    **The December 2023 Announcement**

14.    On 18 December 2023, the Company issued a press release (the "**December 2023 Announcement**") stating that:

14.1.    The Farfetch Group needed additional liquidity, in order to remain a going concern;

14.2.    FF PLC and certain of its subsidiaries, had entered into as borrowers and/or guarantors a committed first lien delayed draw term loan facility in an aggregate principal amount of US$500 million (the "**Bridge Loan Facility**") with Athena Topco LP ("**Athena Topco**"), a Delaware limited partnership entity owned by Coupang and funds managed and/or advised by Greenoaks Capital Partners LLC, as lender (the loans drawn on the Bridge Loan Facility from time to time, collectively, the "**Bridge Loans**");

14.3.    The Company, FF PLC and various of their direct and indirect subsidiaries, Athena Topco and an ad hoc group of lenders (the "**Term Loan AHG**") holding in excess of 80% of outstanding term loans owed by FF PLC (the "**Term Loans**") under an existing credit agreement of FF PLC and certain of its subsidiaries dated 20 October 2022 (as amended on 7 April 2023, 11 August 2023 and 18 December 2023) (the "**Term Loan Facility**" and the lenders thereunder, the "**Term Loan Lenders**") had entered into a transaction support agreement (the "**Transaction Support Agreement**") supporting the sale of the assets of FF PLC to Athena Topco (the "**Coupang Sale**"); and

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

4

14.4.   in the absence of any competing transaction, the Coupang Sale would be implemented through an English-law pre-pack administration process, subject to the receipt of requisite regulatory clearances by Athena Topco, by no later than 30 April 2024.

15.   The Transaction Support Agreement was made publicly available by the Company as part of its disclosures to the United States Securities and Exchange Commission (the "**SEC**"). From the Transaction Support Agreement, it appears that the terms of the Bridge Loan Facility include that:

15.1.   Athena Topco has agreed to fund the Bridge Loans on an as needed basis to fund ordinary course working capital, operations and/or expenses of FF PLC and its direct and indirect subsidiaries, and the Company, in accordance with an agreed financial plan (including specified limits for particular entities and heads of spending);

15.2.   interest on the Bridge Loans accrues at a rate of 12.5% per annum, compounding monthly in payment-in-kind interest;

15.3.   the Bridge Loans would become immediately due and payable:

15.3.1.   if the Coupang Sale was not consummated prior to the end of the exclusivity period set out in the Transaction Support Agreement (i.e., 30 April 2024);

15.3.2.   in the event that a competing transaction was signed in relation to FF PLC's assets pursuant to the marketing process;

15.3.3.   upon an event of default and acceleration under the Bridge Loan Facility; or

15.3.4.   in the event of a termination of the Transaction Support Agreement.

16.   Each of the events set out in paragraph 15.3 is a multiple on invested capital ("**MOIC**") event for the purposes of the Transaction Support Agreement (a "**MOIC Event**"). Upon the occurrence of a MOIC Event, the Bridge Loans must be repaid at a price equal to 1.95x of the $500 million committed amount (irrespective of whether drawn or undrawn), plus accrued and unpaid interest, save that in the event of a liquidation of FF PLC and certain of its subsidiaries, Athena Topco shall receive the sum of 1.95x of the then-outstanding principal amount of Bridge Loans with the principal amount being paid on a pari passu basis with the Term Loans and an amount

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

representing 0.95x of the then outstanding principal amount of the Bridge Loans ranking junior to the Term Loans.

17. Likewise, under the terms of the Transaction Support Agreement, the Term Loan Facility is to be amended such that:

17.1. FF PLC is required to prepay the Term Loans with the net proceeds of any non-ordinary course assets sale (including the sale of various real estate assets);

17.2. FF PLC is required to deposit the amount received in Italian VAT receivables in respect of the 2022 and 2023 financial years up to an aggregate amount of US$125 million into a blocked and secured account to be applied in prepayment of the Term Loans on an agreed schedule;

17.3. a cross-default provision causes a default under the Term Loan Facility upon any default under the Bridge Loan; and

17.4. a 1.95x MOIC will become immediately due and payable on the full amount outstanding under the Term Loans upon the occurrence of any MOIC Event prior to the closing of the Coupang Sale, provided that, in the event of a liquidation of FF PLC, the Term Loan AHG shall receive the sum of (i) the then-outstanding principal amount of Term Loans on a pari passu basis with the Bridge Loans plus (ii) the product of 0.95 multiplied by the then-outstanding principal amount of Term Loans, with such additional amount ranking on a junior basis to the Bridge Loan.

18. Further, the Transaction Support Agreement requires the Company, FF PLC, FF UK, Athena Topco and the Term Loan AHG (amongst others) to support and implement the Coupang Sale, in the following way:

18.1. JP Morgan would undertake a marketing process to ascertain whether there was any other party who wished to make a competing bid for the assets of FF PLC (a "**Competing Transaction**");

18.2. in the event of a Competing Transaction, FF PLC must pay Athena Topco a termination fee of US$20 million, in addition to the MOIC payment set out above;

18.3. on consummation of the Coupang Sale;

6

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

18.3.1.  the Bridge Loans (to the extent funded) will be exchanged by Athena Topco for the assets of FF PLC, and Athena Topco will make various commitments to make contributions to the funding of the Farfetch business;

18.3.2.  the Term Loan AHG will receive consent fees of 7.5% of the outstanding principal amount of each Term Loan AHG member's Term Loan holdings as of the date of the Transaction Support Agreement and payment of their fees and expenses with respect to the Transaction Support Agreement, the Coupang Sale and related amendments to the Term Loan Facility, in respect of which US$35 million of the proceeds from the Bridge Loan have been allocated; and

18.3.3.  one or more obligors under the Term Loans will make an offer to repurchase 10% of the outstanding principal amount of the Term Loans at par, pro rata amongst the lenders of the Term Loans;

18.4.    the Company will provide FF PLC and various subsidiaries, including FF UK, a broad suite of releases, including releases of the Intercompany Loans, for no consideration.

19.   The Company has confirmed that the effect of the Coupang Sale is that it expects that holders of its Class A and B ordinary shares and its convertible notes (including the 2027 Notes) will not recover any of their outstanding investments in the Farfetch Group.

20.   It does not appear that any proper marketing process was run for the business of the Farfetch Group, prior to the December 2023 Announcement. For the reasons set out above, the terms of the Transaction Support Agreement, the Bridge Loan Facility, and the amendments to the Term Loan Facility make it highly unlikely that any Competing Transaction could have ever gone ahead, not least because that would require the payment of over US$1 billion to Athena TopCo (now known as Surpique LP) (and/or related entities) and the Term Loan Lenders as a result of the artificially constructed MOIC structure.

21.   It now appears that the Coupang Sale has been implemented as of 30 January 2024 as confirmed by way of the Company's SEC filing of Form 6-K dated 31 January 2024.  It is understood that the Coupang Sale has proceeded in accordance with the December 2023 Announcement and the terms of the Transaction Support Agreement. Again, it does not appear that any proper

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

marketing process was run between the December 2023 Announcement and execution of the Coupang Sale.

22.    In summary:

22.1.    The Coupang Sale appears to be a sale agreed to without any proper process to market the relevant business.

22.2.    The Coupang Sale has now been consummated. As per the terms of the Transaction Support Agreement, Surpique LP (formerly, Athena TopCo) has received the whole of the value of the Farfetch Group, and the Term Loan Lenders (or, in some cases, the Term Loan AHG) will have received early repayment and payment of a very material consent fee.

22.3.    However, at the same time, the other creditors of the Farfetch Group, including holders of the 2027 Notes, will receive no return on their investments, and instead hold worthless debt in a company that will be liquidated.

22.4.    Likewise, the shareholders of the Company will lose the whole of their investment.

### III.    The Company's Insolvent Financial Position

23.    As a listed entity, the Company was required by the rules of the NYSE to provide regular updates regarding its financial position. In the most recent of those updates, made on 17 August 2023 (as part of its Q2 2023 earnings release), the Company stated to the market that it expected to deliver a positive adjusted EBITDA and free cash flows for 2023, that it expected to have over US$800 million of cash or equivalents by the end of 2023, and was targeting approximately US$400 million of EBITDA by 2025.

24.    However, on 28 November 2023, the Company announced that it would not be announcing its Q3 2023 earnings results as scheduled, and would instead be providing "*a market update in due course*".

25.    As set out above, in the December 2023 Announcement, the Company stated that absent the Bridge Loan Facility, it would not have been able to remain a going concern. As set out above, on consummation of the Coupang Sale, the Company stated that it still would not be able to continue as a going concern, that it expects that holders of its Class A and B ordinary shares and

8

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

its convertible notes (including the 2027 Notes), will not recover any of their outstanding investments in the Company, and that the Company will be delisted from the NYSE and liquidated following the consummation of the Coupang Sale.

26.   No explanation was provided by the Company in the December 2023 Announcement, or has been provided subsequently, as to how the Company's financial position deteriorated from expecting positive free cash flows to substantial doubt as to its ability to continue as a going concern in the space of only four months.

27.   On 20 December 2023, the NYSE filed a Form 25 (*Notification of Removal from Listing and/or Registration under Section 12(b) of the Securities Exchange Act of 1934)* with the SEC by which the NYSE reported that the NYSE had complied with its rules to strike the Company's Class A shares (the "**Ordinary Shares**") from listing and/or withdraw registration of the Ordinary Shares on the NYSE. On 12 January 2024, the Company filed a *Post Effective Amendment No 1 to Form S-8* with the SEC in which it stated that the NYSE had delisted its Ordinary Shares effective 2 January 2024.

28.   On 24 January 2024, the Company issued a Fundamental Change Notice (the "**2027 Fundamental Change Notice**") with respect to the 2027 Notes, pursuant to the terms of the 2027 Indenture. On the same date, the Company issued a Fundamental Change Notice with respect to the 2030 Notes (the "**2030 Fundamental Change Notice**" and together the "**Fundamental Change Notices**").

29.   As the Company was obliged to do under the terms of the 2027 Notes and the 2030 Notes (as applicable), the Fundamental Change Notices stated that holders of the 2027 Notes or the 2030 Notes, as applicable, could require the Company to repurchase their Notes.

30.   At the same time as issuing the Fundamental Change Notices, the Company issued a Cash Settlement Election Notice (the "**Cash Settlement Election Notice**") that stated that the Company was electing to repurchase any Notes in cash.

31.   However, both the Fundamental Change Notices and the Cash Settlement Election Notice stated that the Company could not repurchase the Notes in cash either now or after the consummation of the Coupang Sale. The Fundamental Change Notices each stated (emphasis added):

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

*"As of the date of this Fundamental Change Notice, <u>the Company does not have</u> <u>sufficient funds with which to repurchase Notes, if any, submitted for repurchase</u> <u>pursuant to this Fundamental Change Notice...the Company does not expect that it</u> <u>will have sufficient funds to repurchase the Notes submitted for repurchase even</u> <u>following the consummation of</u> [the Coupang Sale]."*

32.    Similarly, the Cash Settlement Election Notice stated that:

*"the Company does not anticipate being able to repurchase any Notes and current investors in the Notes should not expect to recover their outstanding investments in the Notes."*

33.    On 25 January 2024, certain holders of the 2027 Notes issued a notice of default and acceleration to the Company and the Trustee (the **"2027 Notice of Default and Acceleration"**) in accordance with the terms of the 2027 Indenture. The effect of the 2027 Notice of Default and Acceleration was that the principal, interest, and any premium due under the Indenture with respect to the 2027 Notes became immediately due and payable. As at the date of this Petition, the amounts due under the 2027 Notes remain unpaid, in an amount of approximately US$404 million.

34.    On 30 January 2024 at 3:21 p.m. (GMT), FF PLC filed a notice of intention in the High Court of England & Wales to appoint an administrator in order to effect the Coupang Sale by way of a pre-pack administration.

35.    On 31 January 2023 at 9:00 AM (GMT), Coupang released a press announcement stating it had *"completed the acquisition of the assets of global online luxury company [FF PLC]"*. On the same day, the Company filed a Form 6-K with the SEC confirming the consummation of the Coupang Sale (the **"31 January 2024 Report"**). In the 31 January 2024 Report, the Company confirmed that it *"expects that holders of its Class A and B ordinary shares and its convertible notes will not recover any of their outstanding investments in Farfetch, and Farfetch expects to be liquidated."*

36.    It is clear from the December 2023 Announcement, the Fundamental Change Notice, the Cash Settlement Election Notice and 31 January 2024 Report that:

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

10

36.1.    the Company does not currently have sufficient funds with which to repay any amounts due and payable on the 2027 Notes, much less the full amount due on them; and

36.2.    the Company does not anticipate that it will, in the future, have sufficient funds with which to repay any amounts due and payable on the 2027 Notes, much less the full amount due on them.

37.    Accordingly, the Company is unable to pay its debts within the meaning of section 92(d) of the Act, or alternatively, the Company will imminently and inevitably be unable to do so.

## IV.    Serious Deficiencies in the Company's Governance and Management Require Urgent Investigation

38.    By way of the Coupang Sale, the Company has effectively written-off over US$1 billion of debt obligations owed to it by way of the Intercompany Loans. The Company has also been deprived of its ownership and interests in FF PLC and, therefore, indirectly, the subsidiaries of FF PLC and the Farfetch business as a whole.

39.    The Company has not provided any justification or explanation for agreeing to enter into the Transaction Support Agreement (including how doing so is said to be in the interests of the Company or its creditors), by which it agreed to support the Coupang Sale and to release the Intercompany Loans. This is despite:

39.1.    the Coupang Sale being a distressed sale of the Farfetch business in circumstances where, as recently as August 2023, the Company and its business appeared to be in good financial health;

39.2.    value-destructive steps have been taken prior to the December 2023 Announcement;

39.3.    the Company's statements that there has been a *"robust marketing process"*, whereas there has been no evidence that the Company properly marketed the Farfetch business prior to entering into the Transaction Support Agreement;

39.4.    the Coupang Sale being on egregious terms, which terms destroy all value for the Company's creditors, does not represent the best available value, and in effect

11

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

FSD2024-0030                    Page 11 of 16                    2024-02-02

prevented the pursuit or consummation by the Company of any alternatives to the Coupang Sale; and

39.5.    the Company and its subsidiaries having forced through the Coupang Sale on an accelerated timetable, thereby preventing any sufficient marketing process from having taken place following the December 2023 Announcement.

40.    In this context, the position of Mr Neves raises serious concerns that require urgent investigation:

40.1.    As set out above, from at least the date of the December 2023 Announcement, Mr Neves has been the sole remaining director of the Company, all independent directors of the Company having resigned on or around 18 December 2023, without any replacements having been appointed.

40.2.    Mr Neves is also a director of a number of the direct and indirect subsidiaries of the Company, including FF UK (which is the borrower under the Intercompany Loans that are to be released for no consideration). Indeed, the Transaction Support Agreement was executed by Mr Neves on behalf of both the Company, and a number of its subsidiaries, including FF UK.

40.3.    Further, Mr Neves publicly announced his support for the Coupang Sale, and by necessary implication for the capture of the whole of the value of the Farfetch Group by Athena Topco to the detriment of the Company, and its creditors and shareholders.

40.4.    It also appears from public statements made by Mr Neves that he will remain involved with or in control of the business of the Farfetch Group following consummation of the Coupang Sale, notwithstanding the liquidation of the Company. The details of any incentive to do so have not been disclosed.

40.5.    From the information which is available, and in the absence of any information being provided by the Company which may suggest otherwise, it appears that Mr Neves has struck a bargain to transfer the business and value of the Farfetch Group to Surpique LP and the Term Loan AHG, in exchange for him remaining involved with or

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

12

in control of the business which he founded, at the expense of the Company and its stakeholders.

41.    In light of the above, and further and in the alternative to the Company's insolvency, it is just and equitable that the Company be wound up pursuant to section 92(e) of the Act, so that independent liquidators can take control of the Company, investigate the circumstances of its apparent rapid and unexplained failure, and manage the Company's affairs in the interests of its creditors.

## C.    GROUNDS ON WHICH A WINDING-UP ORDER IS SOUGHT

### I.    Insolvency

42.    As set out above, the 2027 Notes are now due and payable in the amount of approximately US$404 million, the Company has not paid that amount, and the Company has said that it cannot currently pay that amount and that it does not expect to be able to pay any of that amount in the future, including as a result of the consummation of the Coupang Sale.

43.    Accordingly, the Company is unable to pay its debts and should be wound up pursuant to section 92(d) of the Act.

### II.    Just and equitable

44.    Further, and in the alternative, in circumstances where the reasons for the Company's failure are completely opaque, the Company has disclaimed its previous guidance and failed to issue any new or replacement guidance, the Company has entered into unjustified value-destructive steps (including the Coupang Sale), and the Company currently does not have a functioning or independent board of directors, there is a real and urgent need for independent liquidators to be appointed by the Court in order to:

44.1.    allow a substantive and independent investigation into the Company's affairs to be carried out so as to determine the cause(s) of the Company's extremely rapid failure, the resignation of all but one of its directors, and the conduct of the Company's governance and management both before and after their resignation, including the circumstances and bona fides of the Company's entry into the Transaction Support Agreement for no apparent corporate benefit to the Company; and

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

44.2.    take control of the Company, and manage its affairs in the interests of its creditors, which appear not to have been taken into account to date.

45.    Further, the Petitioner considers that it is necessary that the Company be placed into the hands of qualified and independent liquidators in order to:

45.1.    unwind or prevent the dissipation, misuse or misapplication of the Company's remaining assets, pending the investigations outlined above;

45.2.    seek the Court's guidance, direction and assistance in relation to the above issues; and

45.3.    allow proceedings to be brought to recover any assets of the Company which have been misappropriated, including FF PLC and the operating subsidiaries and other assets which it holds if the liquidators form the view that such proceedings are in the interests of the Company.

46.    In such circumstances, it is also just and equitable that the Company be wound up pursuant to section 92(e) of the Act.

**YOUR PETITIONER THEREFORE HUMBLY PRAYS THAT:**

1.    The Company be wound up by the Court under the provisions of the Act.

2.    Alexander Lawson and Christopher Kennedy of Alvarez & Marsal be appointed as Joint Official Liquidators of the Company with the power to act jointly and severally.

3.    The Joint Official Liquidators shall not be required to give security for their appointment.

4.    In addition to their powers prescribed in Part II of the Third Schedule to the Act which are exercisable without sanction of this Court, the Joint Official Liquidators may also without further sanction or intervention from this Court:

4.1.    exercise the following powers set out in Part I of the Third Schedule to the Act;

4.1.1.    to carry on the business of the Company so far as may be necessary for its beneficial winding up;

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

14

4.1.2.   to engage staff (whether or not as employees of the Company) to assist in the performance of their functions; and

4.1.3.   to engage attorneys and other professionally qualified persons to assist in the performance of their functions.

4.2.   take any such action as may be necessary or desirable to obtain the recognition of their appointment in any other relevant jurisdictions and to make applications to the courts of such jurisdictions for that purpose,

and for the avoidance of doubt the powers bestowed on the Joint Official Liquidators may be exercised by them within and outside the Cayman Islands.

5.   The costs of the Petitioner of and incidental to the Petition be paid forthwith from the assets of the Company as an expense of the liquidation, to be taxed on the indemnity basis if not agreed with the Joint Official Liquidators.

6.   Such other orders and directions may be made as the Court thinks fit.

Dated this 1st day of February 2024

*Campbells LLP*
_____
**Campbells LLP**
Attorneys-at-Law for and on behalf of the Petitioner

**It is intended that this Petition be served on:**

**1) The Clerk of the Court, FSD Registrar**

**2) Farfetch Limited**

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)

### Notice of Hearing

TAKE NOTICE THAT the hearing of this Petition will take place at the Law Courts, George Town, Grand Cayman, Cayman Islands on 5 April 2024 at 10 am/pm.

Any correspondence or communication with the Court relating to the hearing of this Petition should be addressed to the Registrar of the Financial Services Division of the Grand Court at PO Box 495, George Town, Grand Cayman KY1-1106, Cayman Islands; Tel: 345 949 4296.

16

THIS WINDING-UP PETITION is filed by Campbells LLP, Attorneys-at-Law for and on behalf of the Petitioner, whose address for service is Floor 4, Willow House, Cricket Square, PO Box 866, George Town, Grand Cayman KY1-1103 (MGM/SKE/14215-42769)