# EXHIBIT 6

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| Farfetch Limited (in Official Liquidation), | Case No. 24-11519-CTG |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF RYAN M. GOLDSTEIN IN SUPPORT OF MOTION OF THE
FOREIGN REPRESENTATIVES FOR ENTRY OF AN ORDER TO CONDUCT
DISCOVERY FROM SURPIQUE L.P. PURSUANT TO 11 U.S.C. 542(E), 1507(A),
1521(A)(4), 1521(A)(5), FED. R. BANKR. P. 2004,
<u>AND LOCAL RULE 2004-1</u>**

I, Ryan M. Goldstein, do hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

1.      I am an attorney duly licensed to practice law in the States of New York and Texas and admitted *pro hac vice* in the United States Bankruptcy Court for the District of Delaware. I am a Partner at Reid Collins & Tsai LLP ("**<u>Reid Collins</u>**"), counsel to Foreign Representatives Alexander Lawson and Christopher Kennedy of Alvarez & Marsal Cayman Islands Limited, in their joint capacity as the duly authorized foreign representatives (the "**<u>Foreign Representatives</u>**") of Farfetch Limited (the "**<u>Company</u>**") in the above-captioned matter.

2.      I submit this declaration in support of the *Motion of the Foreign Representatives for Entry of an Order to Conduct Discovery from Surpique L.P. Pursuant to 11 U.S.C. 542(e), 1507(a), 1521(a)(4), 1521(a)(5), Fed. R. Bankr. P. 2004, and Local Rule 2004-1* filed contemporaneously herewith (the "**<u>Motion</u>**").[1]

3.      Attached as **Exhibit 1** hereto is a true and correct copy of a letter from Surpique's

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1

counsel at Kirkland & Ellis ("**Kirkland**") to the Foreign Representatives dated July 23, 2024.

4. Attached as **Exhibit 2** hereto is a true and correct copy of a letter from the Foreign Representatives to Kirkland dated August 1, 2024.

5. Attached as **Exhibit 3** hereto is a true and correct copy of an email thread between Reid Collins and Kirkland containing messages dated between September 16 and December 3, 2024.

6. Attached as **Exhibit 4** hereto is a true and correct copy of a letter from Kirkland to Reid Collins dated October 23, 2024.

7. On October 23, 2024, I participated in a telephonic meet-and-confer with Surpique's counsel at Kirkland. On November 8, 2024, I participated in a follow-up telephonic meet-and-confer with Surpique's counsel at Kirkland.

8. During the meet-and-confer sessions, Surpique's counsel confirmed that Surpique maintains access to the Farfetch server. But Surpique's counsel only committed to produce a narrow set of what Surpique characterizes as "books and records." Surpique never described the scope of that narrow production. More importantly, Surpique refused to agree to our request that it produce historic documents and communications maintained on the Farfetch server, including internal Farfetch communications, Farfetch communications with its outside advisors, and Farfetch communications with third parties.

2

Pursuant to Section 1746 of Title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  December 3, 2024
      Austin, Texas

_____
RYAN M. GOLDSTEIN

# EXHIBIT 1

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022
United States

Josh Greenblatt, P.C.
To Call Writer Directly:
+1 212 446 4869
josh.greenblatt@kirkland.com

+1 212 446 4800

Facsimile:
+1 212 446 4900

www.kirkland.com

July 23, 2024

**By E-mail**

Christopher Kennedy
Alvarez & Marsal
2nd Fl., Flagship Building, 42 Seafarers Way
PO Box 2507
George Town, Grand Cayman KY1-1104
Cayman Islands
T: +1 345 745 6700

Dear Mr. Kennedy:

As you know, we are counsel to Surpique and its affiliates. We write regarding the JOLs' motion for Chapter 15 recognition of the Cayman liquidation proceeding filed in the United States Bankruptcy Court for the District of Delaware on July 10, 2024, and further to our recent correspondence regarding your indemnity requests.

Given our clients' role on the liquidation committee of Farfetch Limited, we are concerned by the JOLs' decision to expend limited estate resources seeking Chapter 15 recognition at this stage and by your overt focus on exploiting United States bankruptcy procedure to pursue litigation paths before your investigation in Cayman is complete. Indeed, while Chapter 15 is often used to afford a foreign debtor a breathing spell imposed by the automatic stay under the U.S. bankruptcy code, here the JOLs' Chapter 15 papers make clear that you are primarily seeking recognition in order to try to contrive and assert claims against Surpique and its owners.[1] This transparent focus on litigation at the outset of the Chapter 15 process is particularly surprising given your admission that—despite incurring well in excess of $1.3m in disclosed expenses to date—the JOLs' "ongoing

---

[1] While we understand and appreciate the JOLs' desire to stay ongoing litigation in the United States, it is clear that the primary focus of the JOLs' Chapter 15 submission is on investigating and trying to assert new claims. *See In re: Farfetch Limited (in Official Liquidation)*, 24-11519-CTG, Dkt. 4 (July 10, 2024) at 2 & n.2 (noting that for "claims . . . based on the Coupang Sale, the parties to the sale are located in Delaware, including Coupang, Athena TopCo [i.e., Surpique], and Greenoaks"), 18 (JOLs "will seek to make Rule 2004 requests, issue subpoenas, conduct examinations and engage in other discovery activity [and] . . . may also decide to commence actions against third parties"), 21 (JOLs "seek production of documents"); *id.*, Dkt. 7 at 2, 12, 20 (declaring intention to engage in discovery related to JOLs' "pursuit of . . . claims," "like those pursuant to [Cayman Companies Act] section 146 for dispositions at an undervalue, and section 147 for fraudulent trading"); *see also id.*, Dkt. 3 at 2, 11-12 (declaring intention to "engage in other discovery activities" related to "causes of action" and to "pursu[it] [of] claims").

Austin  Bay Area  Beijing  Boston  Brussels  Chicago  Dallas  Hong Kong  Houston  London  Los Angeles  Miami  Munich  Paris  Riyadh  Salt Lake City  Shanghai  Washington, D.C.

# KIRKLAND & ELLIS LLP

Christopher Kennedy
July 23, 2024
Page 2

investigations"[2] in Cayman are not yet close to complete.  As part of these investigations, the JOLs have *already* served broad requests for documents and information on Surpique and others.  And our clients have repeatedly made clear that they will respond to these requests so long as the JOLs provide adequate assurance that information provided will not be used to advance the interests of private litigants, including those represented by Pallas Partners ("Pallas").  As you know, Pallas first sought to block our clients' economic rescue of Farfetch on behalf of an ad hoc group of noteholders, then made a series of baseless threats and demands to Surpique and its owners following the transaction on behalf of that same group, then initiated the Cayman liquidation proceeding—resulting in the JOLs' appointment—and now remains involved in your investigation (indeed, Pallas has sought reimbursement of at least $250,000 in fees for purported work for the JOLs).  Yet despite these obvious conflicts, and ample correspondence on the issue, the JOLs have been unwilling or unable to separate from Pallas or to provide unequivocal assurance that information provided will not be used by Pallas and others to advance private litigation interests.[3]

If anything, therefore, the JOLs' focus on manufacturing claims against Surpique and its owners through Chapter 15 only further confirms our clients' concern that the JOLs have lost sight of their obligation to act in the best interest of *all* Farfetch Limited creditors, and are instead focused on the narrow litigation-first agenda pushed by Pallas since before the Farfetch transaction.  To preserve any semblance of independence, the JOLs must promptly address our clients' concerns.  To that end, please provide answers to the following simple inquiries no later than **July 25, 2024**:

1.  Apart from the generic reference in the First Report to Creditors, did the JOLs—whether on their own or through advisors—notify any member of the Farfetch Limited liquidation committee regarding the plan to seek recognition of the Cayman proceeding through Chapter 15 prior to filing the Chapter 15 papers?  If so, which member(s)?

2.  Apart from the generic reference in the First Report to Creditors, did the JOLs—whether on their own or through advisors—notify any creditor of Farfetch Limited

---

[2]  Minutes, First Creditors Meeting in the Wind Up of Farfetch Limited (May 30, 2024), at 2.

[3]  *See, e.g.*, February 28, 2024 Surpique Letter to JOLs; March 21, 2024 JOLs Letter to Surpique; March 29, 2024 Surpique Letter to JOLs; April 12, 2024 JOLs Letter to Surpique; April 24, 2024 Surpique Letter to JOLs; April 29, 2024 JOLs Letter to Surpique; May 2, 2024 JOLs Letter to Surpique Affiliates; May 13, 2024 Surpique Letter to JOLs; May 21, 2024 JOLs Letter to Surpique; May 24, 2024 Surpique Letter to JOLs; June 3, 2024 JOLs Letter to Surpique; June 12, 2024 Surpique Letter to JOLs; June 21, 2024 JOLs Letter to Surpique; July 3, 2024 Surpique Letter to JOLs; *see also, e.g.*, June 25, 2024 C. Kennedy Email to A. Crawford and earlier correspondence in email thread.

# KIRKLAND & ELLIS LLP

Christopher Kennedy
July 23, 2024
Page 3

regarding the plan to seek recognition of the Cayman proceeding through Chapter 15 prior to filing the Chapter 15 papers? If so, which creditor(s)?

3. Did the JOLs—whether on their own or through advisors—consult with Pallas, whether formally or informally, regarding the plan to seek recognition of the Cayman proceeding through Chapter 15?

4. We note that the JOLs have never invoiced or disclosed any expenses incurred by Reid Collins or any other United States legal counsel. Accordingly, please provide the expenses incurred to date by the JOLs' Delaware and any other United States counsel, including Reid Collins. If Reid Collins is operating under a mixed-fee, contingency, or other alternative arrangement—as this law firm advertises that they "almost always" do—please confirm the details regarding the arrangement for any services that firm has or will provide.

5. Additionally, we are still waiting for any detail from the JOLs regarding the expenses incurred to date by Pallas, the circumstances of the $250k retainer that you invoiced, the nature of Pallas's ongoing engagement with the JOLs, and the services, if any, that Pallas continues to provide (whether in the United States or elsewhere). These reasonable details were omitted from your recent correspondence. Please provide them along with responses to the questions above.

If you are unwilling to provide any of this information, please explain why. While we await your response, we are reviewing your July 11, 2024 request for additional reimbursement.

Surpique and its affiliates reserve all rights and waive none.

Sincerely,

Josh Greenblatt, P.C.

3

# EXHIBIT 2



**Alvarez & Marsal Cayman Islands Limited**
2nd Floor, Flagship building
142 Seafarers Way
PO Box 2507
George Town
Grand Cayman KY1-1104
Cayman Islands
Phone: +1 345 745 6700

**Via email only**: josh.greenblatt@kirkland.com

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
United States

1 August 2024

Dear Mr. Greenblatt,

**Farfetch Limited (In Official Liquidation) (the "Company")**

We refer to your letter dated 23 July 2024 (the "**23 July Letter**") and to the previous correspondence between us, and between the JOLs and Maples and Calder as your clients' Cayman Islands counsel.

The JOLs do not intend to respond to every individual point raised in the 23 July Letter, the purpose of which is transparently to seek to disrupt the liquidation of the Company, in an attempt to shield Surpique from the JOLs' investigation of the Company's collapse, including the transfer of its assets to Surpique, which it is their duty to conduct. Failure to respond in detail below to any particular point in the 23 July Letter is not an acceptance by the JOLs that that point is valid or meritorious.

**The JOLs' Investigation and Petition for Chapter 15 Recognition**

The JOLs have a positive duty "*to the whole body of shareholders, and to the whole body of creditors, and to the Court, to make themselves thoroughly acquainted with the affairs of the Company*".[1] The JOLs were specifically sanctioned by the Grand Court of the Cayman Islands in the Winding Up Order which commenced the Company's liquidation, dated 12 February 2024, to seek recognition of their appointment in the United States. That is, in circumstances where the Company had been listed on the NYSE, it issued United States denominated bonds, it was already subject to litigation in the United States, a significant number of its former directors were based in the United States, and it had assets in the United States, the Grand Court, of which the JOLs are Officers, recognized from the outset of the liquidation that obtaining recognition in the United States was an obvious and necessary step for the JOLs to take in order to comply with their duties. Put simply, the circumstances of the Company were and are such that seeking recognition in the United States by means of Chapter 15 was necessary, and obviously necessary, from the commencement of its liquidation, and the order of the Grand Court sanctioning the JOLs to seek recognition in the United States is entirely dispositive of the issue.

Further, in circumstances where the Company was stripped of assets, and left with over US$1 billion in liabilities to creditors alone, the duties of the JOLs and the business of the liquidation necessarily include

---

[1] *In re Contract Corporation, Gooch's Case* [1871] 12 LR Ch App 207

fully investigating whether the conduct of the Company's business by those in control of it prior to the liquidation, including the transfer of its assets, gives rise any claims which the JOLs might pursue on behalf of the Company. In the circumstances set out above, significant aspects of such an investigation must necessarily take place in the United States, and therefore require the JOLs to seek the powers available following recognition under Chapter 15. By way of example only, such powers would enable the JOLs to take steps to compel the return of the Company's property, which your clients, or their affiliates, have to date refused to return voluntarily, as the JOLs are duty-bound to do.[2]

However, the JOLs' duty to thoroughly investigate the Company's affairs in no way requires them to pre-judge whether any claims may exist against any particular parties, and they have not done so. The JOLs are independent Officers of the Grand Court and are subject to the supervision of that Court and their paramount duties are to that Court. Those duties require them to fully investigate all claims which may be available to the Company, whether against former directors or officers, service providers, shareholders, third parties, or, indeed, creditors. The JOLs have sought Chapter 15 recognition so that they can comply with their duty to investigate potential claims, regardless of whom those claims may be against. Your suggestion that the JOLs are acting other than independently, or that seeking Chapter 15 recognition could reasonably be construed as an attempt to prefer certain creditors over others, is baseless and incorrect.

All creditors of the Company were aware, or could have with reasonable diligence discovered, from February 2024 that the JOLs were specifically authorized by the Grand Court to seek Chapter 15 recognition, and in any event were informed in clear and unambiguous terms of the JOLs' intentions in April 2024. As set out above, it has at all times been obvious that such recognition would be required for the JOLs to comply with their duties in respect of the liquidation. The JOLs were under no obligation to separately inform the Liquidation Committee, or any members of it individually (including those of your clients who sit on that committee), of the precise timing of when they would do so. Delaying the Chapter 15 application for that purpose, and incurring the additional costs to the Company's estate which would have arisen from doing so, would not have been for the benefit of the Company, or its creditors as a whole.

The role of the Liquidation Committee is to act as a sounding board in respect of significant liquidation issues, its role is not to micro-manage the JOLs and they have no power to approve or direct the actions of the JOLs.[3] In circumstances where the Grand Court had already approved the application for recognition, the timing of the filing of the Chapter 15 application is not a significant step in the liquidation that the JOLs considered warranted consultation with the Liquidation Committee.

**Information Requests**

Your letter conflates Surpique and those of your clients which have filed proofs of debt in the Company's liquidation, and which sit on its Liquidation Committee. Surpique is not a creditor or otherwise a stakeholder of the Company, has no interest in the Company's liquidation, and has no standing to make requests of the JOLs.

In respect of your other clients, the members of a Liquidation Committee of a Cayman Islands company do not individually have standing to request that the JOLs provide information to the Liquidation Committee, and nor do individual creditors in their capacity as such.[4] Only the Liquidation Committee

---

[2] See Order 26, rule 3(1) of the *Companies Winding Up Rules (2023 Consolidation).*

*3 Re Herald SPC* (Unreported, 1 April 2021, Kawaley J)

[4] *In Re Sextant Strategic Global Water Fund Offshore Limited* (Unreported, 26 May 2011, Jones J).



itself, acting collectively, can make such a request.[5] To the extent that the requests in your letter are made on behalf of Farfetch UK Limited and Farfetch China Holdings Limited in their capacities as individual members of the Liquidation Committee (and not on behalf of Surpique, which is not clear), those entities also lack standing to make the requests.

Further, as a matter of Cayman Islands law, members of the Liquidation Committee serve in a representative and fiduciary capacity with respect to the creditors of the Company as a whole.[6] That is, members of the Liquidation Committee owe fiduciary duties to all creditors of the Company, whom they represent. Both Farfetch UK Limited, and Farfetch China Holdings Limited, have submitted to the jurisdiction of the Cayman Islands,[7] and by accepting appointment to the Liquidation Committee became subject to those duties.

That your letter refers only to Surpique and affiliates, and does not distinguish between Surpique, which is not a creditor of the Company or a member of its Liquidation Committee, and your clients who are members of the Liquidation Committee, strongly suggests that the latter are not in fact seeking to act in the interests of the Company's creditors as a whole, despite their fiduciary duty to do so. Rather, it appears that Surpique is seeking to use entities which it controls to interfere with the JOLs' conduct of the liquidation, for its own purposes, and that those entities have acquiesced in doing so, rather than complying with their fiduciary duties.

The JOLs are not required to comply with any request for information which is frivolous or unreasonable.[8] In circumstances where the information requests in the 23 July Letter appear to be made for or on behalf of Surpique so as to frustrate the JOLs' conduct of the liquidation, and not in furtherance of the Liquidation Committee's fiduciary duty to the creditors as a whole, they are clearly unreasonable.

For these reasons, and consistent with their duties to the creditors as a whole, the JOLs decline to provide the information you have requested. Your clients who are creditors of the Company will receive reports from the JOLs in due course, and the JOLs will of course comply with information requests by the Liquidation Committee as required by and subject to the *Companies Winding Up Rules*.

**Your clients**

Your Letter, and the conduct of your clients to date in relation to the liquidation, lead the JOLs to the inference that your client is seeking to avoid proper scrutiny of Surpique's acquisition of the Company's assets, and to impede the JOLs' investigations of the Company's affairs. To date, your clients have, in breach of section 138 of the Companies Act (2023 Revision), failed to return to the JOLs the property of the Company, including the whole of the contents of its servers.

Your client has also sought to interpose itself into the contractual indemnity arrangement put in place prior to the Company's liquidation to which it is not a party, and in that artificial role has arbitrarily applied

---

[5] *Ibid.*

[6] *In Re Saad Investment and Fiance Company Ltd #5* (Unreported, 23 July 2010, Smellie CJ).

[7] *Rubin v Eurofinance SA [2013] 1 AC 236* where Collins LJ said that parties: "…*should not be allowed to benefit from the insolvency proceeding without the burden of complying with the orders made in that proceeding*". We note also that your clients have engaged Cayman Islands counsel to take active steps for them in relation to the liquidation, which further confirms their submission to the jurisdiction of the Cayman Islands.

[8] Order 9, rule 4(2)(a) of the *Companies Winding Up Rules (2023 Consolidation)*.



discounts to the JOLs' fees and the fees of Campbells LLP, refused to pay fees incurred by Pallas LLP and despite having admitted the (improperly discounted) claim has failed to make payment. By tying contractually obligated payments to its objections to the involvement of Pallas LLP and the JOLs' document production requests it is clear that your client is seeking to improperly exercise economic control or influence over the conduct of the liquidation. Your client's approach to the liquidation is further demonstrated by your client's specious objection to the JOLs' application for Chapter 15 recognition in the United States, as previously sanctioned by the Grand Court

The JOLs will continue to comply with their duties to the Company, to its creditors as a whole, and to the Grand Court, and as such will continue to thoroughly investigate the Company's affairs, and any claims which the Company may have against any person.

Yours sincerely,

_____

**Christopher Kennedy**
**Joint Official Liquidator**

Christopher Kennedy and Alexander Lawson are authorised to act as JOLs in accordance with the Companies Act (2023 Revision). The JOLs act as agents of the Company only and do so without personal liability.



# EXHIBIT 3

| | |
|---|---|
| **From:** | Ryan Goldstein |
| **Sent:** | Tuesday, December 3, 2024 4:57 PM |
| **To:** | Monroe, Kenneth; Robert LaCroix |
| **Cc:** | Farfetch; Greenblatt, Josh; Luze, John R.; Lamothe-Cadet, Amanda |
| **Subject:** | RE: Farfetch/Surpique LP |

Counsel,

We have formally conferred twice by phone and engaged in lengthy correspondence over the past two months. During this process, Surpique has repeatedly refused to describe the narrow set of "books and records" that it claims it is willing to produce, and has repeatedly rejected the Foreign Representatives' request that it agree to produce a far broader set of documents and communications, including internal and external Farfetch emails that Surpique now possesses and controls. The parties appear to be no closer to reaching an agreement on an appropriate scope of production than when we started to confer. Accordingly, and consistent with the Recognition Order, the Foreign Representatives will be seeking relief in the Bankruptcy Court.

Best regards,
Ryan

**Ryan M. Goldstein**, *Partner*

# reid | collins

---

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website** | **bio**

---

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

---

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Tuesday, November 26, 2024 3:00 PM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

In connection with our offer to produce documents to you on a voluntary basis, we had hoped to understand any objection your client has to the substantive terms of the Local Rule 9018(f) stipulation. Because we do not recall you providing any detail on that issue on our November 8 call, we asked you below. You responded that the stipulation "would inappropriately limit the use of the documents." Could you please explain how the draft that we shared does that? Perhaps whatever concerns you have could be accounted for in edits, whether to the Rule 9018(f) stipulation or a broader agreement.

Relatedly, as noted in my email on Tuesday, November 19, we understand that you have outstanding disputes about the scope and meaning of that protective order with your counterparties to it. Do those disputes remain unresolved? Please provide us with an update.

After this Thanksgiving holiday week, we would welcome an additional opportunity to meet and confer regarding your requests, as well as your and our concerns with respect to the draft confidentiality stipulation and protective order. As relevant to your requests, we welcome you sharing in advance any provisions of the Cayman Companies Act or any Cayman cases that support your position concerning the scope of books and records to which the JOLs would be entitled under Cayman law. We have repeatedly tried to get clarity on this with you but thus far have been unsuccessful in getting the JOLs to meaningfully identify books and records or narrow their requests. And as relevant to confidentiality, we invite you to disclose in advance the substance of your concerns regarding the terms of the Rule 9018(f) stipulation, as well as the status of your discussions with other parties concerning the protective order that you shared.

We hope that our next meet-and-confer will clarify the outstanding issues and appropriate next steps.

Best,
Ken

**Kenneth Monroe**
_____

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501
_____

kenneth.monroe@kirkland.com

---

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Wednesday, November 20, 2024 11:06 AM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

I am not sure why you keep sending emails that attempt to reframe what we discussed during our meet-and-confer calls or that try to paint us as somehow not acting in good faith. In any event, as we have now told you several times, the Rule 9018-1(f) stipulation—which you sent to us just hours before our last call—is not acceptable because it would still require the parties to negotiate a broader protective order and because it would inappropriately limit the use of the documents. We sent you a protective order, and from your email below, it appears that there are three issues with it. If you have actual suggested edits, please provide them.

In terms of the substance, we are glad to hear that Surpique is "prepared to make an immediate, voluntary production of documents." Please describe the full scope of this immediate, voluntary production. What specific categories of documents does it include? We understand from our last call that the scope of this production is different from what you described in your October 23 letter, where you offered to coordinate to review and produce "documents from the virtual data room used as part of the marketing of the Farfetch business," given that Surpique now claims not to have access to those documents.

And, based on our prior discussions, we understand that the production would also exclude (i) Farfetch's historic email communications with third-parties, which are now in the possession of Surpique and not the JOLs; (ii) Farfetch's historic internal email communications, which are now in the possession of Surpique and not the JOLs;

2

(iii) Surpique's own communications in the lead-up to the transaction; and (iv) anything that Surpique unilaterally determines is not a "book and record" of Farfetch.

We've already conferred on these topics several times, but if you think it would be helpful to confer again, please let me know.

Best regards,
Ryan

**Ryan M. Goldstein**, *Partner*

# reid | collins

--------------------------------------------------

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website** | **bio**

--------------------------------------------------

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

--------------------------------------------------

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Tuesday, November 19, 2024 5:55 PM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

Thank you for consulting with your client about the draft Rule 9018(f) stipulation that we sent you on November 8. We are surprised that it was not acceptable—we intended and drafted it to be simple and straightforward. We do not recall you raising any concerns regarding its content during our call, and you have not described anything substantive below. Can you please let us know what your client's objections to the terms of the Rule 9018(f) stipulation are? As you know, once we have an appropriate confidentiality agreement in place, we are prepared to make an immediate, voluntary production of documents as part of our ongoing willingness to find a mutually acceptable resolution of your requests.

As for the protective order you sent, it does not work for us as drafted. Among other reasons, it includes an overly restrictive definition of Confidential Information in Paragraph 1, includes an unsatisfactory framework for designation disputes in paragraph 5, and too loosely frames the restrictions on permitted uses and recipients in paragraph 6. In addition, we understand that you and the former United States directors and officers of Farfetch Limited may now disagree about the scope and meaning of the version approved by the Court. We are happy to suggest edits once there is more clarity (so that we do not merely complicate things further inadvertently).

While you work to resolve confidentiality concerns with other parties, we will continue reviewing additional documents to add to our planned voluntary production set. Surpique reserves all rights and waives none.

Best,
Ken

**Kenneth Monroe**

--------------------------------------------------

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

kenneth.monroe@kirkland.com

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Wednesday, November 13, 2024 11:15 AM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

We never agreed to execute or revise the draft Rule 9018(f) stipulation. Rather, we told you during the call, and again in Rob's email below, that we would review it with our clients, and either send revisions or send a revised draft protective order that incorporated changes received from other Rule 2004 witnesses. For the reasons we discussed during the call, we do not see the benefit of the Rule 9018(f) stipulation, which is not workable as drafted and which would still require the parties to agree to a protective order.

Attached to this email is a copy of the protective order that the JOLs agreed to with the D&Os (and which reflects changes that the D&Os' counsel proposed to the prior draft that we sent you). Surpique can join the protective order by filling out and signing Exhibit A. Please let us know if that works on your end, or if you would like to schedule another meet-and-confer to discuss.

Thanks,
Ryan

**Ryan M. Goldstein**, *Partner*

# reid | collins

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website** | **bio**

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Tuesday, November 12, 2024 8:13 PM
**To:** Robert LaCroix <rlacroix@reidcollins.com>; Ryan Goldstein <rgoldstein@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

4

We disagree with your account. We simply write to confirm that, as we discussed and noted below, we await your return of an executed or revised Rule 9018(f) stipulation, as well as a revised draft of your draft proposed protective order.

Best,
Ken

**Kenneth Monroe**

---

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

---

kenneth.monroe@kirkland.com

**From:** Robert LaCroix <rlacroix@reidcollins.com>
**Sent:** Friday, November 8, 2024 5:35 PM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>; Ryan Goldstein <rgoldstein@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

Thank you for meeting and conferring with us this afternoon. Your description of the parties' prior correspondence and of the call itself is not accurate. Suffice it to say, we disagree with your various characterizations below.

The JOLs continue to seek the documents and communications described in the draft Rule 2004 subpoena, including *all* of the Company's books and records. We and the JOLs have provided *examples* of categories of documents that form part of the Company's books and records, but we have made clear that those examples were "among" the Company's books and records, which included those documents "without limitation." We have already told you, based on our consultation with the JOLs and their Cayman counsel, that the scope of "books and records" under Cayman law is broad. We have explained this to you on numerous occasions, including again on the call today, but you continue to feign confusion. And you have offered nothing to show that the JOLs' understanding is wrong, beyond your say-so. We also explained on the call today that the Cayman court has already sanctioned the JOLs' pursuit of relief in the Chapter 15 case, contrary to your suggestion that the JOLs go back to the Cayman court to seek additional sanction. And we again explained during today's call that the JOLs are entitled to the full scope of Rule 2004 discovery in this Chapter 15 proceeding, regardless of Surpique's argument about the scope of "books and records" under Cayman law.

On today's call, Surpique refused to commit to producing any documents beyond the narrow, unspecified categories that it views as the Company's books and records, including, for example, emails between Farfetch Limited and its outside advisors concerning Project Athena, leading up to the closing of that transaction. It will be difficult for us to make any additional progress if Surpique is unwilling to offer a concrete position on the production of email communications.

As discussed, in order to facilitate Surpique's production of the limited set of documents described in your email below, we will follow up with either edits to Surpique's draft 9018-1(f) stipulation or a revised draft of the protective order.

Thanks,
Rob

5

**Rob LaCroix,** *Associate*

reid | collins
512.647.6118 *(Direct)*

---

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Friday, November 8, 2024 3:23 PM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

Thank you for meeting and conferring with us this afternoon regarding Surpique LP. As Surpique has consistently explained since the JOLs first contacted us earlier this year, and as reiterated in my email and on our call today, Surpique remains ready and willing to make a voluntary production of documents. Going forward, we hope that you will have more productive conversations with us about the scope of such voluntary productions.

Based on your representations on our October 23 call, we rightly believed that you would send a discrete list of the "books and records" that the JOLs believe they are legally entitled to—not that they may simply request—from Surpique under Cayman Islands law. That understanding was consistent with the direct representations of JOL Chris Kennedy following the Chapter 15 hearing on August 5, 2024. As you know, the goal of the list was to arrive, in good-faith negotiation, at a mutually agreeable voluntary production. To the date of this email, Surpique has still not received a discrete list of requested documents, but instead sweeping categories unmoored from any understanding of or citation to Cayman law. Your email did not foster a productive discussion.

Nevertheless, in light of the JOLs' ongoing failure to narrow and operationalize their requests, we prepared an initial production of documents that constitute "books and records" under Cayman law, as well as more, in a show of good faith. That set of documents is ready for production. Includes nearly all of the purported "books and records" (your client's own words) that your client originally requested on March 21, 2024. As we have always indicated, we will need to ensure that proper confidentiality measures are in place so that documents that we provide are handled appropriately. To that end, we shared with you prior to today's call a standard Local Rule 9018(f) confidentiality stipulation to provide some assurance while we finalize a broader arrangement with you. On our call, you represented that you will confer with your client and confirm whether it is acceptable to them.

As we have made clear, we will also need a more comprehensive confidentiality agreement in place before providing any additional, sensitive documents beyond this initial production. We reviewed the draft, 14-page protective order that you shared on November 5. Unfortunately, that draft has issues and does not afford sufficient protection. Further, you confirmed that other recipients of the JOLs' request likewise found that the draft was unacceptable to them. On our call today, you represented that, following your conversations with those other parties and reconciliation of their edits and comments, you will send us a revised draft for our consideration.

We look forward to receiving your client's acceptance of the Rule 9018(f) stipulation and a revised draft of the protective order. Surpique reserves all rights and waives none.

Thanks,
Ken

**Kenneth Monroe**

---

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

kenneth.monroe@kirkland.com

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Friday, November 8, 2024 1:21 PM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

As you know, Surpique has been prepared to make a production of documents that will assist the JOLs in legitimate activities in the winding up of Farfetch Limited. Despite your misleading statements below, we have never received a discrete list of books and records that Chris Kennedy represented that he was interested in. That has frustrated our attempts to arrive at a mutually acceptable voluntary production.

Nevertheless, I explained in my November 1 email that we would undertake to coordinate the production of documents that constitute "books and records" of Farfetch Limited under Cayman law, as well as more, in a show of good faith while we work out the scope of any further voluntary production. To that end, we have prepared an initial document production set that we will immediately produce to you. As I also explained in my November 1 email, we are happy to consider follow-ups consistent once you have reviewed that production. And we are proactively preparing other documents for production.

For the reasons detailed at length in communications with you and the JOLs themselves, we will need confidentiality protections in connection with information that we share. This is not unusual, and other recipients of the JOLs' broad and duplicative requests have likewise confirmed that they need such protections. To that end, attached please find a very simple and straightforward agreement stipulating to confidentiality protections pursuant to Local Rule 9018-1(f). We expect that there should be no issue with you and the JOLs executing this stipulation as an interim measure while we work through more comprehensive confidentiality protections.

We look forward to receiving an executed copy so that you may immediately receive the production. We look forward to discussing on our call this afternoon.

Surpique reserves all rights and waives none.

Thanks,
Ken

**Kenneth Monroe**

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

kenneth.monroe@kirkland.com

**From:** Monroe, Kenneth
**Sent:** Wednesday, November 6, 2024 10:53 AM
**To:** 'Ryan Goldstein' <rgoldstein@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>

**Cc:** Robert LaCroix <rlacroix@reidcollins.com>; Farfetch <farfetch@reidcollins.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Ryan,

We are available on Friday at 3pm. I sent a calendar invite, and we will speak to you then.

Thanks,
Ken

**Kenneth Monroe**

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

kenneth.monroe@kirkland.com

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Wednesday, November 6, 2024 9:52 AM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>
**Cc:** Robert LaCroix <rlacroix@reidcollins.com>; Farfetch <farfetch@reidcollins.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Ken,

You (and Josh in his prior email) seem to be ignoring that we did send you a list of categories of documents that the JOLs view as "books and records." The list was prefaced with a discussion of the fact that, based on our consultation with Cayman counsel and the JOLs, "books and records" do not reduce neatly to a list but instead include "all documents and communications related to the Company's affairs, in whatever form maintained." Surpique can disagree that this describes the Company's "books and records" under Cayman law, but it will be hard for us to have a productive conversation if you insist on pretending that we have not done exactly what Surpique requested. You are not "waiting on" anything from us.

Rather than conferring with us regarding what materials Surpique is actually willing to produce, you have instead accused us of lying to you, "retrading" on our discussions, and "playing games." From our perspective, it's hard to see this as anything but a continuation of Surpique's strategy of manufacturing delays while insisting in strident terms that it is engaging with the JOLs in good faith. The fact remains that Surpique has failed for many months to produce a single document to the JOLs.

The topic that we would like to discuss at the meet-and-confer remains the same: What categories of documents and information is Surpique agreeing to produce what categories of documents and information is Surpique refusing to produce?

We're available on Friday at 10:00 or 3:30 ET for the rescheduled meet-and-confer. Let me know which time works on your end.

Thanks,
Ryan

**Ryan M. Goldstein**, *Partner*

# reid | collins

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300

Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website** | **bio**
------------------------------------------------------------
AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

---

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Tuesday, November 5, 2024 8:24 PM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>; Greenblatt, Josh <josh.greenblatt@kirkland.com>
**Cc:** Robert LaCroix <rlacroix@reidcollins.com>; Farfetch <farfetch@reidcollins.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Ryan,

To be clear, and as you know, we put a provisional date on the calendar tomorrow for scheduling convenience. We did so with the expectation that you would finally follow through with the discrete list of books and records that the JOLs promised three months ago, and that you promised on our call. Like your client, you then then failed to follow. We are still waiting on the list of requested books and records that would help promote a productive conversation. We have observed as much.

Nevertheless, and in a continued demonstration of Surpique's ongoing good faith, we represented that we will go ahead and undertake a voluntary production of books and records under Cayman law, and more, for your review upon executing an appropriate confidentiality agreement. You just now sent a draft protective order. From a cursory look (that is all we could do), the draft has issues that the parties will need to work through in good faith. We are ready and willing to meet and confer to that end, with the goal of making an immediate production of documents following execution of an agreement.

As for the unknown other topics that you apparently wish to discuss, it would be helpful if you could identify what they are, so that we can prepare and have a productive discussion.

You have provided no reason why you cannot meet on Monday. And if Monday does not work, we can find a time to meet on Friday. Please provide us times that work for you. If you refuse to meet and confer on those dates, please let us know.

Best,
Ken

**Kenneth Monroe**
━━━━━━━━━━━━━━━━━━━━
**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571    **M** +1 857 505 4928
**F** +1 617 385 7501
━━━━━━━━━━━━━━━━━━━━
kenneth.monroe@kirkland.com

---

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Tuesday, November 5, 2024 8:48 PM
**To:** Greenblatt, Josh <josh.greenblatt@kirkland.com>
**Cc:** Robert LaCroix <rlacroix@reidcollins.com>; Monroe, Kenneth <kenneth.monroe@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda

9

<amanda.lamothecadet@kirkland.com>
**Subject:** Re: Farfetch/Surpique LP

In consultation with our clients and their other counsel, we described the scope of Cayman "books and records" in our prior email, as you specifically requested. In any event, as we discussed during our last meet and confer, the Foreign Representatives are not limited to "books and records" in Rule 2004 discovery.

I take it from your response that Surpique is not going forward with tomorrow morning's call?

**Ryan M. Goldstein**, *Partner*

# reid | collins

------------------------------------------------------------

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website** | **bio**

------------------------------------------------------------

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

---

**From:** Greenblatt, Josh <josh.greenblatt@kirkland.com>
**Sent:** Tuesday, November 5, 2024 7:40 PM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Cc:** Robert LaCroix <rlacroix@reidcollins.com>; Monroe, Kenneth <kenneth.monroe@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Monroe, Kenneth <kenneth.monroe@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** Re: Farfetch/Surpique LP

You're just playing games. Your clients are the JOLs. What do they think books and records are under Cayman law?  Thanks.

Josh Greenblatt, P.C.
-----------------------------------------------------
KIRKLAND & ELLIS LLP
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4869
**M** +1 917 414 5895
-----------------------------------------------------
josh.greenblatt@kirkland.com

> On Nov 5, 2024, at 8:35 PM, Ryan Goldstein <rgoldstein@reidcollins.com> wrote:

Josh - your colleague emailed us on Friday night and asked us to respond before Wednesday morning's call—which we then did. If you all want to cancel tomorrow's meet and confer (which has been on the calendar for two weeks), that's fine, but we will proceed accordingly.

**Ryan M. Goldstein**, *Partner*

# reid | collins

------------------------------------------------------------

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website | bio**

------------------------------------------------------------

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

---

**From:** Greenblatt, Josh <josh.greenblatt@kirkland.com>
**Sent:** Tuesday, November 5, 2024 7:24:55 PM
**To:** Robert LaCroix <rlacroix@reidcollins.com>
**Cc:** Monroe, Kenneth <kenneth.monroe@kirkland.com>; Ryan Goldstein <rgoldstein@reidcollins.com>; Farfetch <farfetch@reidcollins.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Monroe, Kenneth <kenneth.monroe@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** Re: Farfetch/Surpique LP

You completely retraded your express agreement to provide us a limited list of books and records in the first instance. Now you've dropped a proposed agreement on us the night before without time to review.  Stop trying to make a record and start acting in good faith and we may get somewhere.

Josh Greenblatt, P.C.
-------------------------------------------------------
KIRKLAND & ELLIS LLP
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4869
**M** +1 917 414 5895
-------------------------------------------------------
josh.greenblatt@kirkland.com

On Nov 5, 2024, at 8:20 PM, Robert LaCroix <rlacroix@reidcollins.com> wrote:

Ken,

We have had tomorrow's call on the calendar for two weeks. We are still planning to confer tomorrow regarding the broader issues surrounding Surpique's discussion. If you need more time with the protective order that's fine, but there are plenty of

11

other topics that we need to cover beyond that. We can discuss schedules for a call on the protective order next Monday on the protective order when we speak tomorrow.

The JOLs also reserve all rights.

Thanks,
Rob

**Rob LaCroix,** *Associate*

reid | collins
512.647.6118 *(Direct)*

---

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Tuesday, November 5, 2024 7:00 PM
**To:** Robert LaCroix <rlacroix@reidcollins.com>; Ryan Goldstein <rgoldstein@reidcollins.com>; Farfetch <farfetch@reidcollins.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Rob,

Thanks for proposing a draft just now, which we will need more than overnight to review before any productive discussion. Our schedules are somewhat flexible on Monday, if you want to propose windows that would work for you.

We obviously disagree with the account in your email below. Surpique reserves all rights and waives none.

Thanks,
Ken

**Kenneth Monroe**

---

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

---

kenneth.monroe@kirkland.com

---

**From:** Robert LaCroix <rlacroix@reidcollins.com>
**Sent:** Tuesday, November 5, 2024 7:06 PM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>; Ryan Goldstein <rgoldstein@reidcollins.com>; Farfetch <farfetch@reidcollins.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Ken,

Thank you for the email. Contrary to your insinuations below, we are coordinating with the JOLs' Cayman counsel with respect to the scope of "books and records" under Cayman law. In any event, as we have previously explained, the scope of "books and records" under Cayman law has no bearing on the JOLs' rights to the requested documents under Rule 2004 as Foreign Representatives in the Chapter 15 case. We offered a descriptive list of books and records in good faith and in response to Surpique's request. You apparently disagree with the JOLs' view of Cayman law. That is fine. We will continue to work with Surpique in good faith on the scope of whatever "books and records" Surpique is willing to produce, while reserving all rights, including to seek documents and communications that go beyond Surpique's narrow definition of "books and records."

To that end, please find attached a draft protective order for the production of documents in the Chapter 15 case. Please let us know if this works for Surpique.

We look forward to conferring with you tomorrow morning.

Thanks,
Rob


**Rob LaCroix,** *Associate*

reid | collins
512.647.6118 *(Direct)*

---

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Friday, November 1, 2024 10:33 AM
**To:** Robert LaCroix <rlacroix@reidcollins.com>; Ryan Goldstein <rgoldstein@reidcollins.com>; Farfetch <farfetch@reidcollins.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

We are disappointed that the JOLs have again failed to provide the discrete list of books and records to which they believe they are both entitled under Cayman law and are requesting from Surpique. The failure to do so is particularly remarkable given your agreement to do so just a few days ago during our October 23 call. As memorialized in our October 23 letter following that call, you told us that you would consult with the JOLs regarding "what they believe constitute the books and records of Farfetch Limited that they are legally entitled to under Cayman Islands law, and that you will send us that discrete list in advance of our next discussion." 10/23/24 Surpique Letter to Reid Collins. The goal was to arrive at a mutually agreeable voluntary production.

Your email does not advance that goal in the slightest. Instead, you take the position, without citing anything, that the JOLs are entitled under Cayman law to virtually everything that even pertains to Farfetch Limited and any subsidiary it once owned. See 10/25/24 Reid Collins Email to Surpique ("'books and records' is defined broadly under

13

Cayman law to include all documents and communications related to the Company's affairs, in whatever form maintained," whether or not owned by a different entity, and that "the affairs of that company [may] include the affairs of its subsidiaries"). This position suggests that you did not consult with your client and Cayman counsel regarding Cayman law. Among other issues, your response confuses documents and communications that the JOLs might request as part of their investigation with the proprietary books and records that a third party such as Surpique would be statutorily obliged to provide. And your position apparently seeks to obliterate the legal separateness between distinct entities. This cannot be what the JOLs intended and, in any event, does not advance the parties' discussions regarding an actionable voluntary production. Without a reasonable list of requested documents—something significantly more tailored than the 81 requests in your draft Rule 2004 requests and the sweeping categories below—we are concerned that meeting and conferring with you again would be fruitless.

With that said, and consistent with our prior communications dating back months, we will undertake to coordinate the production of documents that constitute "books and records" under Cayman law, as well as more, in a show of good faith. We are happy to consider follow-ups consistent with Cayman law once you have reviewed that production. Before releasing any production, we will of course need to ensure that a proper confidentiality agreement is in place so that documents and information that we provide are handled appropriately. We look forward to your response in advance of the November 6 meet-and-confer that we had placed on the calendar during our last call.

Surpique reserves all rights and waives none.

Best,
Ken

**Kenneth Monroe**

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

kenneth.monroe@kirkland.com

---

**From:** Robert LaCroix <rlacroix@reidcollins.com>
**Sent:** Friday, October 25, 2024 10:04 PM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>; Ryan Goldstein <rgoldstein@reidcollins.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Counsel,

Thank you for meeting and conferring with us on the morning of Wednesday, October 23, 2024. We are in receipt of your letter dated that same day, following the call. We won't rehash the various points you make in that letter regarding the history of Surpique's and the JOLs' discussions. The

14

correspondence speaks for itself. Although Surpique claims that it "is and remains ready and willing to help coordinate the production" of documents to the JOLs, Oct. 23 Surpique Ltr. at 1, the JOLs still have not received a single document from Surpique. That said, we share your hope that Surpique and the JOLs can come to a "mutually agreeable arrangement" for Surpique's voluntary production of documents. *See id.*

To briefly recap where we left things regarding next steps, as you acknowledge in your letter, Surpique indicated that it would be willing to make a voluntary production of the books and records of Farfetch Limited (the "Company") in Surpique's possession, custody, or control, with the scope of that voluntary production to be determined through continued discussion. To facilitate those discussions, you requested that the JOLs provide a "list of documents that constitute the books and records of Farfetch Limited to which the JOLs believe they are entitled under Cayman law." *Id.* at 3.  We have provided a list below, without waiver of the JOLs' rights, including to seek documents from Surpique or other third parties beyond Company books and records.

Regarding the production of the Company's books and records, we appreciate that Surpique has suggested several categories of documents in its October 23 letter that it is willing to start producing on a rolling basis: "(i) director and officer insurance policies for Farfetch Limited; (ii) Farfetch Limited board minutes spanning multiple years; (iii) Farfetch Limited board materials; and (iv) Farfetch Limited financials included in the board materials." Oct. 23 Surpique Ltr. at 3. The letter also mentions that Surpique is willing to review and produce "additional documents" including "documents from the virtual data room used as part of the marketing of the Farfetch business or other financials." *Id.*

In addition to the list set forth above, it is the JOLs' position that "books and records" is defined broadly under Cayman law to include all documents and communications related to the Company's affairs, in whatever form maintained. As a matter of Cayman Islands law, the JOLs have positive duties to investigate the Company's affairs and the causes of its failure. They are required to thoroughly pursue that investigation wherever it leads, and the Cayman Court has held that such powers and duties require that they be permitted to examine any document of Farfetch Limited that might advance their investigation. Further, as a matter of Cayman Islands law, where audited financial statements of a Company are consolidated with those of its subsidiaries, as was the case for Farfetch Limited, the affairs of that company include the affairs of its subsidiaries, whether wholly or partly owned. Likewise, to the extent that any company was an agent for Farfetch Limited, as a matter of Cayman Islands law its affairs are those of Farfetch Limited itself, save in respect of wholly independent and separate operations. Finally, under Cayman Islands law, the JOLs displace and in effect step into the shoes of the relevant company, and act as its agents, such that privilege of that company cannot be asserted against them.

15

Moreover, as we discussed on the call, the JOLs do not agree that the Cayman definition of "books and records" or Cayman law generally limits the JOLs' rights in the Chapter 15 proceedings. Nor do we accept Surpique's characterization of what documents are "necessary" for the JOLs to fulfill their fiduciary duties. *Cf.* Oct. 23 Surpique Ltr. at 1. Suffice it to say that Surpique's cramped reading of the Bankruptcy Code is inaccurate, and the JOLs reserve all rights to seek documents and communications beyond those that constitute the Company's books and records.

With that preface, here are some categories of documents and communications that are among the books and records of Farfetch Limited under Cayman law, with some examples of each category of materials listed parenthetically:

- Governing documents (including each of the following for the Company and its direct and indirect subsidiaries: articles of incorporation and organization, bylaws and operating agreements, corporate resolutions).
- Board materials (including each of the following for the Company and its direct and indirect subsidiaries: minutes, presentations to the board, other materials given to the board).
- Accounting and financial records (including each of the following for the Company, its direct and indirect subsidiaries, and on a consolidated basis, as applicable: general ledger; audited and unaudited financial statements—and any drafts thereof—including income statements, profit and loss statements, statements of cash flows, balance sheets, statements of accounts payable and accounts receivable, tax records, inventory records, asset registers, and vendor invoices).
- Legal and operational records (including each of the following for the Company and its direct and indirect subsidiaries: intellectual property records, litigation records, insurance policies, human resource and payroll records, tax and regulatory filings, material contracts and agreements).
- All communications and correspondence concerning the Company and all its direct and indirect subsidiaries (including emails, letters, Slack or other instant messages, etc.)

For each of the categories above, although the JOLs are entitled to receive the full scope of the Company's documents and communications in Surpique's possession, custody, or control, the JOLs would be willing to limit the date range of documents sought to documents dated on and after January 1, 2019, as indicated in the JOLs' draft Rule 2004 requests. The JOLs are willing to discuss further limited date ranges for communications and correspondence.

While the JOLs will need all the Company's books and records (as described above) to fulfill their duties, there are certain categories that they have more

16

immediate need for, which are set out below. Unless otherwise stated, we adopt the same defined terms as used in the JOLs' draft Rule 2004 requests.

Documents and Communications for the period dated on and after January 1, 2023 pertaining to Farfetch and the Farfetch Group for the following requests:

<u>Governance</u>
1. Minutes of any board/special committee/sub-committee meetings and associated materials.
2. Documents and Communications from Farfetch's CEO, CFO or representative of finance department of any company in Farfetch Group to the Board/Management.
3. Departure of Elliot Jordan as CFO of Farfetch.
4. Resignation of directors from October 2023 to present date.

<u>Internal Reporting</u>
1. Internal and management accounts and financial performance and metrics for each business unit.
2. Projections/cashflow forecasts including review and approval of headroom model.
3. Cashflow, cash position and liquidity including detail of cash expenditures.
4. Consideration of liquidity issues and ah-hoc funding requirements (one off borrowings and capital contributions)
5. Assessment to continue as a going concern and PwC's assessment of same.

<u>External Reporting</u>
1. Creation, review and issuance of quarterly earnings reports.
2. PwC's work in relation to 2022 audit and interim reporting.
3. Decision not to announce Q3 2023 results including any external advice received from any advisor.
4. Negative financial repercussions of not announcing Q3 2023 results.

<u>Project Athena and Coupang Sale</u>
1. Steps taken by Farfetch's CEO, CFO and Management to address liquidity issues.
2. Decision to create a Special Committee.
3. Project Athena including the virtual data room that was established.
4. Valuation of the Farfetch Business for the purposes of any sale.
5. Consideration of alternative options to Coupang Sale and the reasons for ultimately rejecting these alternative options.
6. Enter into and close the Coupang Sale.
7. Legal advice concerning Project Athena, Coupang Sale and/or Board's fiduciary duties by Surpqiue, Latham, Mourant Ozannes (Cayman) or any other firm or company.

17

8. Advice concerning Project Athena and Coupang Sale by Evercore, JP Morgan, AlixPartners, Brunswick LLC or any other firm or company.
9. Intercompany Subordination Agreement and associated releases as part of Coupang Sale.

We look forward to continuing to attempt to reach a reasonable resolution with Surpique at our next meet-and-confer on November 6. The JOLs reserve all rights.

Sincerely,

**Rob LaCroix,** *Associate*

reid | collins
512.647.6118 *(Direct)*

---

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Wednesday, October 23, 2024 12:54 PM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Ryan,

Thank you for meeting and conferring today. Please see the letter attached.

Best,
Ken

**Kenneth Monroe**

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

kenneth.monroe@kirkland.com

---

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Tuesday, October 15, 2024 3:48 PM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Yes – that works. I will send out a calendar invite. If you send any written objections or responses in advance of the call, we will review them.

18

-Ryan

**Ryan M. Goldstein**, *Partner*

# reid | collins

---------------------------------------------------------

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website | bio**

---------------------------------------------------------

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

---

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Tuesday, October 15, 2024 2:33 PM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Hi Ryan,

I hope you had a nice holiday weekend. I was just about to email you. 10:30am next Wednesday, October 23 would work for our side, if it still works for yours.

Thanks,
Ken

**Kenneth Monroe**

---------------------------------

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

---------------------------------

kenneth.monroe@kirkland.com

---

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Tuesday, October 15, 2024 3:26 PM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Ken – we never heard back from you. Do any of the windows below work for you?

Thanks,
Ryan

19

**Ryan M. Goldstein**, *Partner*

# reid | collins

---

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website** | **bio**

---

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

---

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Thursday, October 10, 2024 8:48 AM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Ken,

I've listed below some times that work for us that week – please let us know what works on your end and I can send around a calendar invite. Given the delays in scheduling the meet-and-confer, it might make sense for you to send any written objections or responses to the draft requests in advance.

- Monday, 10/21: 2:00 or 5:00 ET
- Tuesday, 10/22: all day
- Wednesday, 10/23: 9:00-11:30 ET

Thanks,
Ryan

**Ryan M. Goldstein**, *Partner*

# reid | collins

---

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website** | **bio**

---

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

---

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Wednesday, October 9, 2024 7:29 PM

20

**To:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Ryan,

Yes, that's right. Unfortunately, the proposed times on Monday do not work. If you could provide your team's windows of availability later that week, we can circle back with one that works on our end.

Thanks,
Ken

**Kenneth Monroe**

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

kenneth.monroe@kirkland.com

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Wednesday, October 9, 2024 1:37 PM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Ken,

I assume the all-partner meeting continues through that Friday? If so, how about Monday, Oct. 21 at 10:00 or 11:00 ET?

Thanks,
Ryan

**Ryan M. Goldstein**, *Partner*

# reid | collins

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website | bio**

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Wednesday, October 9, 2024 12:27 PM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Ryan,

Thanks for checking in. We look forward to meeting and conferring regarding the requests directed to Surpique. Unfortunately, next Wednesday and Thursday do not work because of the all-partners meeting taking place then. What is your availability the following week?

Thanks,
Ken

**Kenneth Monroe**

---

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571 **M** +1 857 505 4928
**F** +1 617 385 7501

---

kenneth.monroe@kirkland.com

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Wednesday, October 9, 2024 11:24 AM
**To:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Ken,

I am checking in on scheduling the meet-and-confer for the 2004 request directed to Surpique. Will you be in a position to confer on Wednesday or Thursday of next week?

Thanks,
Ryan

**Ryan M. Goldstein**, *Partner*

# reid | collins

---

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300

Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website | bio**

--------------------------------------------------------

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

---

**From:** Monroe, Kenneth <kenneth.monroe@kirkland.com>
**Sent:** Monday, September 30, 2024 9:06 AM
**To:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Cc:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** RE: Farfetch/Surpique LP

Ryan,

We are in receipt of your message and will be in touch with times to confer.

To be sure, we strongly disagree with various assertions and characterizations below, and Surpique and its affiliates reserve all rights.

Best,
Ken

**Kenneth Monroe**

--------------------------------

**KIRKLAND & ELLIS LLP**
200 Clarendon Street, Boston, MA 02116
**T** +1 617 385 7571   **M** +1 857 505 4928
**F** +1 617 385 7501

--------------------------------

kenneth.monroe@kirkland.com

---

**From:** Ryan Goldstein <rgoldstein@reidcollins.com>
**Sent:** Thursday, September 26, 2024 2:26 PM
**To:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Angela Somers <asomers@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>; Monroe, Kenneth <kenneth.monroe@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Luze, John R. <john.luze@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Josh,

Thank you for the email. We do think that it is consistent with Judge Goldblatt's recognition order and the parties' prior discussions for us confer on these issues prior to any motion (if needed) and order by the Bankruptcy Court. Indeed, the recognition order provides that "absent an agreement between the parties," a motion will be filed, and the JOLs represented to the Court that they would comply with the local rules requiring a meet and confer. Let us know once you have completed your review of the requests and are prepared to confer on them. If you'd

23

like to send specific objections to specific requests in advance of conferring, we will review them and use them to help guide our discussion.

The JOLs are entitled to the requested documents under Cayman law, U.S. law, or both. As you know, Surpique took the position that the JOLs have no jurisdiction over them in the Cayman Islands, and to date, Surpique has not provided a single document to the JOLs. Since the Winding Up Order permitted the JOLs to seek discovery by way of Chapter 15 recognition, the JOLs are now pursuing this avenue. The JOLs have not abandoned their rights in any proceeding – rather, the JOLs are in the position they are in today, including having to serve a Rule 2004 notice of examination, because Surpique has not provided any documents in any proceeding. The JOLs are seeking, through the Rule 2004 request, documents to which they are entitled under U.S. law, including both books and records of Farfetch Limited and other relevant documents and communications in Surpique's possession. Given the requests that are set forth in the Rule 2004 notice, we expect that Surpique can satisfy all existing document requests by meaningfully responding to the Rule 2004 subpoena.

Please let me know if there are good times to confer next week.

Best regards,
Ryan

**Ryan M. Goldstein**, *Partner*

# reid | collins

-------------------------------------------------------------

Reid Collins & Tsai LLP
1301 S Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
512.647.6100 *(Main)*
512.647.6125 *(Direct)*
**website | bio**

-------------------------------------------------------------

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

---

**From:** Greenblatt, Josh <josh.greenblatt@kirkland.com>
**Sent:** Monday, September 23, 2024 5:23 PM
**To:** Angela Somers <asomers@reidcollins.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>; Monroe, Kenneth <kenneth.monroe@kirkland.com>; Lamothe-Cadet, Amanda <amanda.lamothecadet@kirkland.com>; Luze, John R. <john.luze@kirkland.com>
**Subject:** RE: Farfetch/Surpique LP

Angela:

We acknowledge your request to meet and confer, as well as your draft Rule 2004 notice.  As you are aware, pursuant to Judge Goldblatt's August 5 order, any effort to serve Surpique with Rule 2004 discovery is only proper subject to a separate motion and order by the Bankruptcy Court.  Our client reserves all rights.  In the meantime, while not required, we are reviewing your 81 separate

requests (some with subparts) and will be happy to discuss once our initial review is complete.  To be clear, however, we are concerned by the JOLs' approach and apparent lack of candor since seeking Chapter 15 recognition.

For starters, we are unclear on whether, and to what extent, the JOLs continue to actually pursue the Cayman investigation that formed the basis for their Chapter 15 filing.  As you know, prior to the Chapter 15, Surpique and its affiliates repeatedly made clear their willingness to assist the JOLs in obtaining the books and records of Farfetch Limited in the Cayman proceeding.  In connection with this offer, our clients asked that the JOLs institute basic safeguards against misuse of the information for private litigation by Pallas Partners or others.  The JOLs repeatedly resisted these requests finally provided assurances only in an apparent effort to obtain the release of indemnity funds (after the Chapter 15 had been initiated).  But the JOLs never took our clients up on the offer to provide information in the Cayman process.  Instead – despite telling the Bankruptcy Court that your clients were seeking discovery in the Cayman investigation – the JOLs now purport to seek extraordinarily overbroad and overreaching Rule 2004 discovery.  This approach suggests that the JOLs have either abandoned the Cayman proceeding in favor or a Rule 2004 claims-mining exercise or intend to seek to subject our clients to multiple overlapping disclosure requests.  Either is improper.

More concerning, the JOLs apparent intent to seek expansive and litigation-focused Rule 2004 discovery is at odds with your client's approach to us following the Chapter 15 hearing on August 5.  As you may know, following the hearing, your client approached us to express interest in "resetting" the parties' relationship and made clear that the JOLs only wish to obtain certain discrete items, including the core "books and records" of Farfetch Limited.  Your client said that the JOLs would send a list of discrete requests for such documents, and we said we would respond once received.  We then confirmed this discussion in our letter to the JOLs dated August 14 and reminded the JOLs to send a discrete list of requests to us.  Neither you nor your clients responded, and we never received that discrete and targeted request.  Instead, despite requesting a "reset" your clients resumed their adversarial posture, baselessly accusing Surpique of having "proactively withheld" indemnity funds while our client was in fact working diligently to ensure the release of these funds (indeed, the next day, your client expressed "apologies" because the JOLs had in fact received the funds at issue).

After receiving the indemnity funds, the JOLs took additional actions that seem squarely at odds with any claim that the Cayman proceeding is continuing.

**First,** the JOLs immediately canceled a meeting of the Liquidation Committee.  As you know, the Liquidation Committee is responsible for advising and overseeing the JOLs and the Farfetch Limited liquidation proceedings.  That meeting was statutorily required to occur by the end of August 2024, and the JOLs had already postponed it by several weeks in violation of the Cayman statutory requirement.  The JOLs also failed to provide their first written report to the

25

Liquidation Committee disclosing their activities—again in violation of the Cayman statutory requirement.  The JOLs provided no new date for the meeting or report but admitted that their failure to abide by their statutory obligations was due to their accommodation of the *noteholder* members of the Liquidation Committee.  Indeed, while the JOLs and their counsel have been interacting with the noteholders, the JOLs have provided the Farfetch entities owned by Surpique—equal members of the Liquidation Committee—absolutely no substantive information.

**Second,** you sent over your draft 81 requests for documents.  While we are continuing to review and will circle back for a time to discuss, an initial review of the requests suggests that they are inconsistent with the purpose of Chapter 15 and that the JOLs are seeking burdensome disclosure of information that is clearly privileged, irrelevant, duplicative of documents and information already in their possession, held only by third parties or otherwise outside of Surpique's possession, and is otherwise far beyond the books and records belonging to the entity that your clients are winding up.

All of this raises significant concerns and questions regarding the JOLs' posture in both the Cayman proceeding and the Chapter 15.  Accordingly, prior to a meet-and-confer, please respond to the following questions:

> i.     Are the JOLs abandoning any document requests that they made to Surpique and any of its affiliates at any date prior to your Monday, September 16 email (the "Cayman Requests")?
>
> ii.     Do the JOLs intend to seek documents in the Chapter 15 that they would not be entitled under Cayman law?
>
> iii.     In particular, are the JOLs seeking documents that go beyond the "books and records" belonging to Farfetch Limited?

i.     We will await your response and then coordinate on a time to discuss your draft 81 requests.  Thanks.

Josh Greenblatt, P.C.

KIRKLAND & ELLIS LLP
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4869
**M** +1 917 414 5895

josh.greenblatt@kirkland.com

**From:** Angela Somers <asomers@reidcollins.com>
**Sent:** Monday, September 16, 2024 5:38 PM
**To:** Greenblatt, Josh <josh.greenblatt@kirkland.com>; Luze, John R. <john.luze@kirkland.com>
**Cc:** Farfetch <farfetch@reidcollins.com>; Robert LaCroix <rlacroix@reidcollins.com>
**Subject:** Farfetch/Surpique LP

Josh and John:

Attached please find a Rule 2004 request and draft notice for discussion at a meet and confer between the parties in accordance with Local Rules. Kindly let us know when you are available to discuss.

Thank you.

Regards,

**Angela J. Somers**, *Partner*

# reid | collins

---------------------------------------------------------------------
Reid Collins & Tsai LLP
420 Lexington Avenue
Suite 2731
New York, New York 10170
212.344.5200 *(Main)*
212.344.5208 *(Direct)*
516.983.1760 *(Cell)*
**Web** | **Bio** | **Vcard**
---------------------------------------------------------------------

AUSTIN | DALLAS | NEW YORK | WASHINGTON, D.C. | WILMINGTON

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of the multi-national law firm Kirkland & Ellis LLP and/or its affiliated entities. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 4

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Josh Greenblatt, P.C.
To Call Writer Directly:
+1 212 446 4869
josh.greenblatt@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

October 23, 2024

**By E-mail**

Ryan M. Goldstein
Reid Collins & Tsai LLP
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Email: rgoldstein@reidcollins.com
Tel.: (512) 647-6100

Angela J. Somers
420 Lexington Avenue, Suite 2731
New York, New York 10170
Tel: (212) 344-5200
Email: wreid@reidcollins.com
cboneau@reidcollins.com
asomers@reidcollins.com

Counsel:

As you know, we are counsel to Surpique LP ("Surpique") and its affiliates. We write following our discussion today regarding the Joint Official Liquidators' (the "JOLs," the "Foreign Representatives," or "you") draft Notice of Requests to Surpique LP Under Bankruptcy Rule 2004, and further to our prior correspondence regarding the JOLs' request for information. Following our call, we are hopeful that we can arrive at a mutually agreeable arrangement regarding the voluntary production of documents and avoid the burden and expense of court involvement. We appreciate your confirmation on the call that you will be consulting with the JOLs and will detail for us what they believe constitute the books and records of Farfetch Limited that they are legally entitled to under Cayman Islands law, and that you will send us that discrete list in advance of our next discussion.

As Surpique explained when the JOLs first contacted us earlier this year, and as we reiterated again today, Surpique is and remains ready and willing to help coordinate the production of information necessary for the JOLs' liquidation of Fartfetch Limited. You will recall that on March 29, 2024, our client offered—voluntarily and without any judicial involvement—to discuss your client's Cayman requests for information and "gather and provide (i) Board minutes of Farfetch Limited dating from October 23, 2023; (ii) Board resolutions of Farfetch Limited dating

Austin  Bay Area  Beijing  Boston  Brussels  Chicago  Dallas  Hong Kong  Houston  London  Los Angeles  Miami  Munich  Paris  Riyadh  Salt Lake City  Shanghai  Washington, D.C.

# KIRKLAND & ELLIS LLP

Reid Collins
October 23, 2024
Page 2

from October 23, 2023, (iii) Board agendas of Farfetch Limited dating from October 3, 2023; and (iv) the Transaction Support Agreement executed by Farfetch Limited." Ltr. From Surpique to JOLs dated Mar. 29, 2024 at 2. On April 26, 2024, we again informed you that Surpique "remain[ed] willing to provide information actually needed by the JOLs for your investigation and unavailable from other sources." Ltr. From Surpique to JOLs dated Apr. 26, 2024 at 6. On August 5, 2024, immediately following the Chapter 15 hearing, JOL Chris Kennedy suggested an informal and more collaborative approach to gathering the documents necessary to carry out the JOLs' duties and expressed to my colleagues Kenneth Monroe and Jack Luze that the JOLs are seeking only the "books and records" of Farfetch Limited. We invited the JOLs in that discussion and in writing to "send us a list of the specific books and records" so that we could begin our voluntary and expeditious review and production. Ltr. From Surpique to JOLs Aug. 14, 2024 at 1. We never heard from you on those requests and our offer of a voluntary production. Given your clients' ongoing entanglement with Pallas Partners (counsel for private litigants who have been lobbing threats at Surpique and others since before the transaction closed), in connection with Surpique's offers of assistance, we also requested that the JOLs provide adequate assurances regarding the confidentiality and proper use of any information provided by our client. Your clients refused to provide this assurance without reservation or qualification.

Instead of accepting Surpique's offers to assist with an efficient and cost-effective collection and production of necessary documents, your clients resorted to wasteful litigation. Your clients initiated a process in federal court in the United States, purporting to pursue a mandate far outstripping their prescribed role under applicable Cayman law. Your clients also resorted to filing a similar action in the United Kingdom, where they seek similarly broad and duplicative relief as sought in the Cayman Islands and United States. As the JOLs have appeared to understand, relevant Cayman law entitles them only to the books and records belonging to the company under liquidation. Yet your clients instead doubled down on a litigious path and issued to Surpique—and many other third parties—respective lists of 80+ sweeping requests for documents, including documents that you today conceded do *not* constitute the books and records of Farfetch Limited. *See* Notice of Request to Surpique LP under Bankruptcy Rule 2004, Appendix A. Your clients are not entitled to and do not need these documents need to carry out their legitimate duties in winding up Farfetch Limited. For example, a large share of the requests to Surpique demand that it provide documents from a five-year span from January 2019 through February 2024, including communications between Surpique and third parties. And as evidenced by the many *hundreds* of requests for documents and testimony to numerous other third parties beyond Surpique, your clients' attempt to circumvent the limits of applicable Cayman law through foreign proceedings has resulted in overreaching and duplicative processes that would prove burdensome and time-consuming for both the JOLs and the recipients of your extremely broad requests.

During our meet-and-confer today, we reiterated our willingness to assist you with obtaining the books and records of Farfetch Limited. In particular, we offered and remain willing

2

## KIRKLAND & ELLIS LLP

Reid Collins
October 23, 2024
Page 3

and ready to coordinate the production of the core set of books and records of Farfetch Limited. We also offered to provide you more than you would be entitled to in the Chapter 15, which only permits discovery relief "*necessary* to effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or interests of the creditors." 11 U.S.C. § 1521(a)(4). While reserving all rights and subject to our further discussions regarding confidentiality and other issues, starting immediately, we would be willing to help coordinate the production of documents on a rolling basis materials that include, without limitation: (i) director and officer insurance policies for Farfetch Limited; (ii) Farfetch Limited board minutes spanning multiple years; (iii) Farfetch Limited board materials; and (iv) Farfetch Limited financials included in the board materials. We are also willing to coordinate regarding the review and production of additional documents, such as documents from the virtual data room used as part of the marketing of the Farfetch business or other financials. We are also further willing to work with you to identify additional documents that you do not have.

Notwithstanding the JOLs' failure to follow through pursuant to our discussion with Chris Kennedy on August 5, we appreciate your representation today that you will coordinate with the JOLs and send us the list of documents that constitute the books and records of Farfetch Limited to which the JOLs believe they are entitled under Cayman law before our next discussion.

As we explained today, we hope that the JOLs will pursue a wise, cost-efficient, and non-adversarial path. If you ultimately instead pursue the path of court action and litigation, we will vigorously oppose your efforts to misuse the bankruptcy code and bankruptcy courts of the United States in pursuit of overbroad discovery that would impose extraordinary and unjustified burdens on Surpique, as well as numerous other parties. As previewed in Surpique's Objection and Reservation of Rights in response to your Motion for Recognition and Additional Relief, the relief that you seek against Surpique is entirely inappropriate and unavailable under the bankruptcy code. *See* Dkt. 20. Pursuant to the Court's August 8, 2024 order, any motion to serve Surpique must be a separate motion, and Surpique will oppose any such motion that seeks relief beyond what is appropriate under the relevant statutory framework. For the sake of your client and the wise and efficient use of estate funds for the benefit of creditors, we hope that you will choose to work together on a reasonable scope of a voluntary production in lieu of wasteful litigation that will avoid burdening us, you, and the scarce resources of the Court.

We look forward to you sending the discrete list mentioned above ahead of our next meet-and-confer to negotiate a reasonable resolution without court involvement.

Surpique and its affiliates reserve all rights and waive none.

3

# KIRKLAND & ELLIS LLP

Reid Collins
October 23, 2024
Page 4

Sincerely,

Josh Greenblatt, P.C.