P4AKFARC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FERNANDO SULICHIN, et al.,

                    Plaintiffs,

            v.                              23 CV 10982 (ER)

FARFETCH LIMITED, et al.,

                                            Telephone Conference

                    Defendants.

------------------------------x
                                            New York, N.Y.
                                            April 10, 2025
                                            11:50 a.m.

Before:

                        HON. EDGARDO RAMOS,

                                            District Judge

                            APPEARANCES

LEVI & KORSINSKY LLP
      Attorneys for Plaintiffs
BY:  ADAM M. APTON

      -AND-

HAGENS BERMAN SOBOL SHAPIRO LLP.
BY:  LUCAS E. GILMORE

LATHAM & WATKINS LLP
      Attorneys for Defendants
BY:  JASON C. HEGT

REID COLLINS & TSAI LLP
      Attorneys for Official Liquidators of Farfetch Ltd.
BY:  RYAN M. GOLDSTEIN

P4AKFARC

(The Court and all parties present telephonically)

(Case called)

MR. APTON:  Good morning, your Honor.  This is Adam Apton, Levi & Korsinsky, for plaintiffs.

THE DEPUTY CLERK:  And counsel for defendants?

MR. HEGT:  Good morning, your Honor.  Jason Hegt, from Latham & Watkins, for the individual defendants.

THE DEPUTY CLERK:  And counsel for the Cayman action?

MR. GOLDSTEIN:  Good morning, your Honor.  This is Ryan Goldstein, of Reid Collins & Tsai, on behalf of the Joint Official Liquidators of Farfetch Ltd., nonparties in this action.

THE COURT:  Good morning to you, all.

This matter is on for a conference.  I note, for the record, that it is being conducted by telephone.

Mr. Apton, let me begin with you.  Why don't you bring me up to date.  What has gone on?

MR. APTON:  Well, your Honor, this is Adam Apton.

What has gone on to date is that the Cayman Islands action, which I can refer to as the liquidators, I suppose, has been pursuing the company's successor, this entity called Surpique, owned by, I think, another company called Coupang, which is a publicly traded company.  The liquidator has been pursuing Surpique for documents so it can bring a claim.  And these documents are highly relevant for our purposes because

P4AKFARC

the claims that we understand liquidators are going to bring will overlap considerably with the claims we currently have pending against the individual defendants.

We are, the plaintiffs, are deeply concerned that, absent the discovery we're seeking, which is really just whatever Surpique provides the liquidators, we want a copy of. Without that, we're going to be left behind.  And we're dealing with wasting assets here.  So if and when we get to a point where this case is up for, let's say, settlement negotiations, or even later than that, let's say we get a judgment at trial, what money is left at that point?

So we want to make sure that that prejudice does not fall on our clients.  So we just want to stay up to date.  So we just want a copy of whatever Surpique provides to the liquidator.

THE COURT:  Mr. Goldstein, let me turn to you next. Why don't you tell me procedurally what's going on with respect to the Cayman action.  It's not a procedure that I'm familiar with.  So what's going on?  How does it affect my life?

MR. GOLDSTEIN:  Thank you, your Honor.  That is a fair question, and so I'll try to start with the basics, and then I'm happy to answer any questions.

So, our clients, the joint liquidators, are going through the liquidation in the Cayman Islands — that's the main proceeding — and it's sort of the equivalent of a U.S.

P4AKFARC

Chapter 11 bankruptcy proceeding.  Creditors appear there, they put in proofs of claim, and issues are resolved in that Cayman proceeding.

The liquidators have also obtained recognition in the United States under Chapter 15, which allows for a U.S. bankruptcy court to serve as an ancillary court to assist a foreign proceeding.  That is an action now pending, the Chapter 15 proceeding, in the District of Delaware, before Judge Goldblatt.

The joint liquidators, in connection with that Chapter 15 proceeding, are authorized to take certain actions in the United States, including seeking documents under Rule 2004, which typically applies in a bankruptcy case.

So, as part of their investigation, the liquidators are seeking documents from Surpique, as we say it.  Surpique is the buyer of the Farfetch assets, including Farfetch documents and communications.  So this is a liquidation where the joint liquidators, coming in, do not have access to Farfetch's historical documents.  Those are currently in the possession of Surpique.

That process has required multiple motions before Judge Goldblatt, who then authorized the issuance of the subpoena and who is supervising Surpique's compliance with the subpoena.  It's at an early stage.  I think something has been lost in translation.  Surpique has produced to the joint

P4AKFARC

liquidators only 200 documents to date.

The main production that I think the class plaintiffs are referring to was a production by Latham, as former counsel to Farfetch, of privileged materials that Latham is in possession of that were produced to the joint liquidators, who are currently standing in the shoes of Farfetch Ltd. Those materials would not be subject to discovery in any third-party action, like this class action.

So, vis-a-vis Surpique, we're at an early stage. The joint liquidators are at an early stage of the investigation, have not filed any claims against Surpique or anyone else, either in the United States or in the Cayman Islands. And in some respects, we're behind the class action plaintiffs, who already have a claim on file and a motion to dismiss briefing.

So, as we set forth in our letter to your Honor, we take no position on the lifting of the PSLRA stay. We did want to point out that the bankruptcy stay that the Chapter 15 court has imposed does shield the different liquidators from discovery in the class action. I saw the class plaintiffs' reply. It looks like they are now seeking a subpoena directed to Surpique, so that may have resolved that issue.

I think that's a fair sort of summary of where things stand, but I'm happy to answer any questions for your Honor.

THE COURT:  Is Surpique a United States entity?

MR. GOLDSTEIN:  Surpique is a U.S.-based L.P.  That is

P4AKFARC

why we are, the joint liquidators, are seeking the documents within the contours of the Chapter 15 proceeding.

It is a joint venture between several companies, some with U.S. operations, some with operations abroad, but Surpique itself is a Delaware-registered entity.

THE COURT:  Okay.

Are they subject, if you know — I know that you don't represent them — to the PSLRA stay in this case?

MR. GOLDSTEIN:  I don't represent them.  That would be Kirkland & Ellis, who I've spent many hours conferring with.  I defer to the parties in the case on the contours of the stay.

My understanding is that it applies to both discovery and third-party discovery.  This is a situation where Surpique is in possession of Farfetch Ltd. documents by virtue of buying the assets, and the Rule 2004 discovery is focused on those historic Farfetch Ltd. documents.

I'm sure Kirkland would have something to say about a third-party subpoena served on Surpique in this securities class action, so I don't want to speak for Surpique, but that's at least my understanding.

THE COURT:  They've done that, to your understanding, right?  The plaintiffs have directly subpoenaed Surpique?

MR. GOLDSTEIN:  Well, the joint liquidators or the plaintiffs in the class action?

THE COURT:  The plaintiffs in the class action.

P4AKFARC

MR. GOLDSTEIN:  As I understand it, through their most recent letter, the April -- that was filed a day or two ago, they're now asking to lift or to file a motion seeking permission to lift the PSLRA stay that automatically bars discovery in a securities class action to allow them to serve a subpoena now on Surpique seeking a copy of the materials that Surpique is in the process of, and at the early stage of, providing to the joint liquidators.

THE COURT:  I guess I've never handled a securities case that was a separate bankruptcy track, but let me turn to Mr. Hegt.

Am I pronouncing your name correctly?  Is it Hegt?

MR. HEGT:  Yes, your Honor.  Thank you.

THE COURT:  What's going on, from your perspective?

MR. HEGT:  Yeah, I think I can probably unpack some of this for the Court.

So, this was originally presented as a request to lift the PSLRA discovery stay to serve a subpoena on the joint liquidators.  The PSLRA discovery stay operates automatically by statute.  The text says:  "In any private action under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion unless the Court finds, upon motion of any party, that particularized discovery is necessary to preserve evidence or prevent undue prejudice to that party."

So that's where we started, with the automatic stay

P4AKFARC

from the statute and a request to lift the stay in order to serve a subpoena on the liquidators.

In the reply letter that was filed, I believe, Tuesday, the plaintiffs pivoted that request and said they now wish to serve a subpoena on Surpique.  Surpique -- no subpoena has been served.  This is just about whether the discovery stay can be lifted.

There were a few other points, which I can sort of run through, but starting with the reply letter and the question your Honor raised about party versus nonparty discovery, the stay applies equally to parties and nonparties.  The plaintiffs cite a case, *In re: Flir Systems*, from Oregon, from about 25 years ago, that allowed discovery of a nonparty despite the PSLRA stay.  That's not the governing -- we believe, the prevailing view.  Judge Conner, in *Faulkner v. Verizon*, which was cited in our letter, explained in detail why that *Flir* decision was wrong and is an outlier.  Among other reasons, the *Flir* court appears to have missed the governing precedent.

And Judge Conner cited a string of cases at page 404 of the *Verizon* decision explaining that the plain text applies to all discovery with no distinction between parties and nonparties, and because the statute is clear, no further inquiry was needed.

So, I think in response to your Honor's question, the party versus nonparty, the automatic stay applies to everyone.

P4AKFARC

In terms of -- I think burden was an issue.  Just going through plaintiffs' reply letter and some of the comments just now, there was some discussion about burden, and I think Mr. Goldstein hit the nail on the head, which is, this is not an instance where it's just press a button and send a production over.  I imagine if Surpique knew this was filed against them, and, again, if their request only pivoted in their reply letter, but I imagine if Surpique knew this was going to be against them, they would have said there's actually a substantial burden because they would need to go through and pull out from the production given to the liquidators anything that's privileged.  The liquidators are entitled to see the company's privileged files; these class plaintiffs are not.

Your Honor also asked a question about whether Surpique is a U.S. entity.  And there was some confusion about this because plaintiffs' letter attached a filing from the United Kingdom.  There is a Surpique entity — and, again, I don't represent them either, so I'm no expert on their structure — but there is a Surpique entity in the United Kingdom.  That's the entity that is apparently in wind-down pursuant to the letter, Exhibit C, to plaintiffs' letter.  That's Surpique Holdings Ltd.  That's not the entity in Delaware, that's not the entity that has the documents.  In fact, the plaintiffs' opening letter indicates that that is Surpique L.P., a Delaware partnership.  That's why

P4AKFARC

Mr. Goldstein filed his motion in Delaware against Surpique L.P.

So, long story short, they have the documents. The documents aren't going anywhere. We just, in an abundance of caution, actually just picked up the phone after we saw the letter, and called Surpique's counsel and asked them if there was any concern in this regard. And they pointed us to a public announcement explaining why the English entity is being wound down, said there is no issue about the documents, but that if anyone was concerned, they would agree in writing to hold the documents for -- we're talking about what time, but they had said up to three years as a starting place. I understand plaintiffs' counsel did not reach out, but we called them yesterday, and they said they would do that. So, if that's a concern, I think that can be resolved.

But more to the point --

THE COURT: As far as you know, Surpique has all of Farfetch's documents, and they're not going anywhere?

MR. HEGT: Correct. Surpique bought -- what effectively happened here was Surpique bought the Farfetch operating entities and has all of their documents. The entity that Surpique did not buy was the publicly traded holding company. It had no business, no operations, no assets, other than owning the operating companies, and that entity is in liquidation in the Cayman Islands. So, essentially, you have a

P4AKFARC

corporate family that got divorced. Part of it went to Surpique, and part of it is in liquidation in the Caymans.

THE COURT: Okay.

Mr. Apton, let me get back to you. It sounds like the documents that you're seeking aren't going anywhere. So, to the extent your concern or your interest in lifting the stay was that the documents might disappear, that appears not to be an issue.

So, are you saying that what you are more concerned about is that not the documents themselves that you seek, but the assets of the former Farfetch may be dissipated prior to the time that you're able to get some sort of resolution?

MR. APTON: Your Honor, this is Adam Apton.

I wouldn't agree that the documents aren't going anywhere. Mr. Hegt has made some representations based on a phone call I'm not sure if he had or didn't have or was going to have with counsel, someone at K&E, Kirkland & Ellis.

The reality is that these documents are already once removed from Farfetch. The liquidators have had a tremendously tough time trying to get these documents. The documents that they currently seek may exist, they may not. We don't know, they haven't been produced yet. So, I can't just agree, based on what we've heard today, that these documents are not at risk of being lost over the next year, two years, three years, who knows how long.

P4AKFARC

To your Honor's point about the assets, that is definitely a concern, but I think, if I may, the better way to look at this is, Farfetch, as we know it, as the defendants had it, does not exist anymore.  We're dealing with insurance assets at this point.  I don't know exactly how much is at play, but if the liquidator -- and as Mr. Goldstein was trying to convey to the Court, I think what he says needs to be put into context.  The liquidators' interests and our plaintiffs' interests are somewhat adverse to each other because we're both looking to pursue the same bucket of assets.

If the liquidators get there first, there may be nothing left for plaintiffs, the class plaintiffs, at the end of the day.  And so to prevent that happening, what we're looking to do is simply get a copy of what Surpique is providing in the context of that Rule 2004 discovery in the bankruptcy proceedings.

We're not looking to lift the discovery stay completely — it's just a partial modification to the discovery stay — and we're not pivoting widely from what we first asked for, your Honor.  In order to avoid any objections or concerns from the liquidators, we said, fine, we don't need to subpoena the liquidator, we can just serve the subpoena on Surpique.

THE COURT:  Have you done so?

MR. APTON:  No, your Honor.  No, we haven't done so because we need your Honor's permission to do so.  So, if your

P4AKFARC

Honor would grant --

THE COURT:  So, you want to move -- you say it's a partial stay, but you essentially will be asking for everything that Surpique has, correct?

MR. APTON:  Just what they provide the liquidator. And based on the Surpique's responses to the liquidator so far, it does not appear as though Surpique is going to be producing privileged information that they need to cull through in order to ready it for our eyes.

I do think it would be quite simple, very, very -- although Mr. Hegt may dispute this, it's a simple, quick copy, send.  Everything that Surpique gives to the liquidators, we just want a copy of.  That's it.

THE COURT:  What I want to hear from Surpique --

MR. HEGT:  Your Honor --

THE COURT:  -- is your motion, Mr. Apton?

MR. APTON:  I'm sorry, your Honor?  I didn't hear you. Someone interrupted.

THE COURT:  Yes.

Surpique is not a party to this case.  So, you move to lift the partial stay.  I take it, Mr. Hegt, you would oppose that motion, but shouldn't we also hear from Kirkland & Ellis if they are the ones who represent Surpique?

MR. HEGT:  Yes, your Honor, I think if we were to have motion practice on this, the target of a subpoena should be

P4AKFARC

heard from.  I think where we are now is, first, the target has shifted a little, but, more, it's a general case management issue, and the parties to the case, we would oppose it as well.

I think, in part — and it's gotten a little bit lost today — we're having all this discussion about sort of are the documents going anywhere, right, and I think there's a way to solve for that quite easily.  We could, I suspect quite easily, get something in writing.  Surpique is owned by Coupang, which is a Delaware-based, New York Stock Exchange-listed company. The documents are not going in a duffle bag to some jurisdiction overnight.  But more to the point, there's not a basis here to lift the discovery stay to begin with. Plaintiffs letter says the reason they want these documents is so that they can amend to find a, quote, viable claim.  I'm not sure I have ever seen a clearer admission that the current claim is not viable.  That's just plainly not enough to lift the stay.  The desire to rummage around to find a claim is exactly what the PSLRA stay was designed to guard against.

And relatedly, to the sort of wasting assets point — we noted this in our letter — there's no overlap.  The claims in this case relate to statements that the company made going back to as early as February of 2022.  The liquidators, as we understand it, is investigating the circumstances of the sale to Surpique in December of '23 and January of '24.  The individual insureds here understand that there's different

P4AKFARC

insurance applicable to the case here and to claims that Mr. Goldstein might bring related to the sale.  So they're not in competition with one another.

I think what's really happening here is that the plaintiffs — it's their words, not mine — want to amend to find a, quote, viable claim.  And that's separate and apart from who has the documents and where are they going, which, as I said, we can resolve readily.  It's just not a basis to lift the stay at all.

MR. APTON:  Your Honor, this is Adam Apton.

Mr. Hegt is misquoting, mischaracterizing our request for discovery.  I believe he's referring to footnote 1, which we simply say, if the request for discovery is granted, we would likely need to amend, given the amount of relevant information we would be receiving.  We're not looking to do this in order to search for a viable claim.

I think Mr. Hegt would agree with that.

THE COURT:  I also note that there is a fully briefed motion to dismiss this action.

Is that right, Mr. Hegt?

MR. HEGT:  Yes, your Honor.

And I think we have pointed out in our opening letter that the case was delayed a few times on the front end.  And we point that out not to cast aspersions on anyone — in fact, I think we probably agreed to those extensions — but we list the

P4AKFARC

reasons it was delayed, and it was because plaintiffs were looking for this evidence or that evidence. And what ended up being filed, we think there's no claim there, and our clients are just -- you know, they have an interest in trying to move on and move forward.

So, the notion of wait for this Delaware entity to produce discovery to the liquidators, and then these plaintiffs will go through it and we're going to start over, we think it's contrary to the PSLRA. There's no claim as of today, and that's, in our view, the end of the discussion.

THE COURT: Okay.

MR. APTON: Your Honor, if I may — this is Adam Apton — may I add one more comment?

THE COURT: Sure.

MR. APTON: With respect to the PSLRA and what its intent is and what it stands for, there are a number of cases — and we cite them in our opening letter — that stand for granting the precise relief that we're asking for. *Bank of America*, for one, from this district, Judge Chin, when he was still a district court judge, he decided that one, and it's very analogous to the situation we have here, where there's a parallel investigation going on and the class plaintiffs were at risk of prejudice. And Judge Chin allowed that partial modification of the discovery stay in order to get access to those documents being provided in the course of that

P4AKFARC

investigation.

THE COURT: That was an investigation, not a bankruptcy, if you know?

MR. APTON: It was an investigation being conducted by regulatory agencies, so similar to the liquidator here, who's doing an investigation for similar claims that we have.

THE COURT: Okay.

So, this is what I'll do. Mr. Apton, I'll let you make your motion. It will be done on the following schedule: The motion will be due on May 1; the response will be due on May 22; and any reply will be due on May 29.

With that, is there anything else that we should do today, Mr. Apton?

MR. APTON: Your Honor, again, Mr. Apton.

No. Thank you for the opportunity to make this motion. We appreciate it.

THE COURT: Mr. Hegt?

MR. HEGT: Your Honor, just to clarify — this is Mr. Hegt — it is your intent that the motion should be served on the nonparty from whom the documents are sought and that they should respond, as well?

THE COURT: I would welcome a response by Surpique.

MR. HEGT: Okay. Thank you.

THE COURT: Anything else from you, Mr. Goldstein?

MR. GOLDSTEIN: No. Thank you, your Honor.

P4AKFARC

THE COURT:  Okay.  In that event, we are adjourned.
Stay well.

COUNSEL:  Thank you, your Honor.

(Adjourned)