**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FARFETCH LIMITED SECURITIES LITIGATION | Case No.: 1:23-cv-10982-ER-KHP [rel 1:24-cv-00532-ER] |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF LAW OF NON-PARTY SURPIQUE L.P. IN OPPOSITION TO**
<u>**PLAINTIFFS' MOTION TO MODIFY THE PSLRA DISCOVERY STAY**</u>

Joshua Greenblatt, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Email: josh.greenblatt@kirkland.com

Kenneth P. Monroe (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7571
Email: kenneth.monroe@kirkland.com

*Counsel for Non-Party Surpique L.P.*

Dated: May 22, 2025

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 2

    A.  Surpique Acquires the Farfetch Business, and Farfetch Limited Enters Liquidation. ...................................................................................................... 2

    B.  U.S. Chapter 15 Proceeding and the JOLs' Rule 2004 Subpoena ......................... 3

    C.  This Securities Case and the PSLRA Stay .............................................................. 5

III.  LEGAL STANDARD ............................................................................................. 6

IV.  ARGUMENT ......................................................................................................... 7

    A.  Plaintiffs' Motion Is Unripe. ................................................................................... 8

    B.  Plaintiffs Fail to Show Undue Prejudice ................................................................. 9

    C.  Plaintiffs Fail to Show That the Proposed Discovery Is Necessary to Preserve Evidence. .............................................................................................. 11

    D.  Plaintiffs Fail to Show That Their Proposed Subpoena Is Particularized. .............. 14

    E.  Plaintiffs' Subpoena Would Impose a Tremendous Burden on Surpique. ............... 17

V.  CONCLUSION ....................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
   294 B.R. 39 (Bankr. S.D.N.Y. 2003) ........................................................................8

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   No. 09 MDL 2058 (DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ...............17

*In re Bennett Funding Group, Inc.*,
   203 B.R. 24 (Bankr. N.D.N.Y. 1996) .......................................................................3

*In re Carnegie Int'l Corp. Sec. Litig.*,
   107 F. Supp. 2d 676 (D. Md. 2000) ...........................................................................8

*In re Fannie Mae Sec. Litig.*,
   362 F. Supp. 2d 37 (D.D.C. 2005) .............................................................................7

*Faulkner v. Verizon Commc'ns, Inc.*,
   156 F. Supp. 2d 384 (S.D.N.Y. 2001) ............................................................. *passim*

*In re GMR Securities Litigation*,
   2012 WL 5457534 (S.D.N.Y. Nov. 8, 2012) ...........................................................17

*In re Initial Pub. Offering Sec. Litig.*,
   236 F. Supp. 2d 286 (S.D.N.Y. 2002) .....................................................................10

*Jiang v. Chirico*,
   No. 23 CIV. 1258 (PGG), 2024 WL 3104817 (S.D.N.Y. June 24, 2024) ...............11

*In re LaBranche Sec. Litig.*,
   333 F. Supp. 2d 178 (S.D.N.Y. 2004) .....................................................................20

*Mori v. Saito*,
   802 F. Supp. 2d 520 (S.D.N.Y. 2011) ..........................................................14, 15, 17

*Podany v. Robertson Stephens, Inc.*,
   350 F. Supp. 2d 375 (S.D.N.Y. 2004) .......................................................................7

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*,
   No. 96 CIV. 7590 (DAB), 1998 WL 67672 (S.D.N.Y. Feb. 18, 1998) .....................9

*In re Refco, Inc.*,
   No. 05 CIV. 8626 (GEL), 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006) ..............9, 10

*In re Smith Barney Transfer Agent Litig.*,
   No. 05 CIV. 7583 (WHP), 2006 WL 1738078 (S.D.N.Y. June 26, 2006) .........................7, 10

*In re Teleglobe Communications Corp.*,
   493 F.3d 345 (3d Cir. 2007)...................................................................................................19

*In re Vivendi Universal, S.A. Securities Litigation*,
   381 F. Supp. 2d 129 (S.D.N.Y. 2003)................................................................................6, 14

**Statutes**

11 U.S.C. § 1521(a)(4).................................................................................................................3

11 U.S.C. § 362(d) .....................................................................................................................18

11 U.S.C. § 1501..........................................................................................................................3

15 U.S.C. § 78u-4 .............................................................................................................. *passim*

**Rules**

Fed. R. Bankr. P. 2004 ....................................................................................................... *passim*

Fed. R. Civ. P. 26.......................................................................................................................18

Fed. R. Civ. P. 37.........................................................................................................................8

Fed. R. Civ. P. 45.......................................................................................................................18

Fed. R. Evid. 502(d).....................................................................................................................4

iii

## I.    INTRODUCTION

Non-party Surpique, L.P. ("Surpique") respectfully submits this opposition to Plaintiffs' motion to lift the automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* ECF No. 60 (the "Motion"). The Motion—which seeks to lift the stay specifically to serve a sweeping document subpoena against Surpique—is a transparent and futile attempt to circumvent Congress's carefully crafted mandate.

Plaintiffs have not satisfied their heavy burden to justify lifting the stay for three principal reasons. *First*, Plaintiffs are simply wrong on the facts. Surpique and the evidence that it holds are not going anywhere. Plaintiffs would have learned that if they had simply conferred with Surpique before burdening it and the Court with motion practice. In any event, *Defendants'* own preservation obligations are sufficient to maintain the PSLRA stay pending the Court's resolution of Plaintiffs' motion to dismiss, which was filed more than nine months ago.

*Second*, Plaintiffs' attempts to articulate why their proposed subpoena is necessary to avoid causing them undue prejudice are either far too speculative or instead reveal the improper motives that led Congress to impose the stay in the first place. Plaintiffs' speculation that some other party will beat them to a judgment on the merits is belied by the fact that no one but Plaintiffs themselves have filed any claim. As for their true motivations, Plaintiffs cannot lift the stay in order to conduct a fishing expedition for unspecified evidence that they hope might allow them to fix their deficient complaint or coerce a settlement from Defendants.

*Third*, Plaintiffs' proposed open-ended subpoena falls far short of the PSLRA's particularity requirement and would impose a tremendous burden on non-party Surpique. Plaintiffs seek all documents produced in response to an 81-request subpoena that is not limited by the claims, defenses, or class period in this securities case. Furthermore, Plaintiffs' request

1

would impose a significant cost on Surpique, including because of the need to conduct a highly complex review of privileged documents.

Because Plaintiffs fall far short of satisfying their burden to lift the PSLRA's mandatory stay of discovery, the Court should deny the Motion.

## II.    BACKGROUND

### A.    Surpique Acquires the Farfetch Business, and Farfetch Limited Enters Liquidation.

At the end of 2023, the Farfetch business was facing financial and liquidity pressures that threatened to shutter the luxury e-commerce business and destroy thousands of jobs. Following a robust marketing process, the Farfetch business was able to survive when Surpique, a Delaware company backed by experienced e-commerce operators, offered a liquidity lifeline followed by a comprehensive transaction. On January 30, 2024, Surpique acquired the material assets of Farfetch Holdings PLC pursuant to a lawful insolvency sale in the United Kingdom, which was approved by independent administrators (the "Transaction"). However, Surpique did not acquire Farfetch Limited, a holding company in the Cayman Islands with no operations of its own that sat above Farfetch Holdings PLC.

Immediately following the Transaction, on February 2, 2024, creditors to Farfetch Limited filed a petition in the Cayman Islands to wind up that entity. ECF No. 61-1. On February 9, 2024, the Cayman court granted the petition and appointed two Joint Official Liquidators ("JOLs") to oversee the Cayman liquidation. *In re: Farfetch Limited (in Official Liquidation), Debtor in a Foreign Proceeding*, No. 21-11519-CTG (Bankr. D. Del. July 10, 2024), Dkt. ("Bankr. Dkt") 1 at ¶ 3. The JOLs are tasked with investigating the financial and liquidity issues experienced by Farfetch Limited and the circumstances of the sale of the Farfetch

2

business to Surpique.  The Cayman court permitted the JOLs to seek recognition in the United States of their appointment as official Cayman liquidators.  *Id.* ¶ 5.

**B.    U.S. Chapter 15 Proceeding and the JOLs' Rule 2004 Subpoena.**

On July 10, 2024, the JOLs filed a motion in the U.S. Bankruptcy Court for the District of Delaware ("Bankruptcy Court") for recognition of the Cayman liquidation as a foreign main proceeding and the JOLs as Farfetch Limited's foreign representatives under Chapter 15 of the United States Bankruptcy Code.  *See* Bankr. Dkt. 4. Chapter 15 authorizes a U.S. court to recognize foreign insolvency proceedings and provide assistance, including discovery, in the United States. 11 U.S.C. § 1501 *et seq*. On August 5, 2024, the Bankruptcy Court granted recognition and allowed the JOLs to pursue certain discovery.  *See* Bankr. Dkt. 46.

Following their recognition, the JOLs served Rule 2004 subpoenas against various third parties located in the United States.  Federal Bankruptcy Rule 2004 authorizes the bankruptcy court to "order the examination of any entity" by the debtor concerning its acts, conduct, property, liabilities and financial condition, as well as any other matter that may affect the administration of the debtor's estate.  *See* Fed. R. Bankr. P. 2004; *see also* 11 U.S.C. § 1521(a)(4).  Rule 2004 is only available in non-adversarial proceedings.  Fed. R. Bankr. P. 2004; *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996).  Recipients of these subpoenas include Farfetch Limited's former outside counsel and directors.  Sizable document productions followed.[1]

The JOLs have also served a sweeping Rule 2004 subpoena against Surpique, as the parent company of the go-forward Farfetch business.  ECF No. 61-4.  That subpoena contains 81 separate requests for production of documents covering more than five years.  *Id.*  Following

---

[1]    Plaintiffs are wrong when they assert that "Surpique produced over 16,000 documents responsive to the JOLs' subpoena."  ECF No. 60 at 7.  *Other* parties have produced those documents, not Surpique.

motion practice, the Bankruptcy Court ruled that the JOLs may not receive any documents from Surpique beyond those (i) that Farfetch Limited or its subsidiaries once held or (i) to which Farfetch Limited remains legally entitled following the Transaction.  *See* Bankr. Dkt. 119. Following a clarifying ruling on March 12, 2025, Surpique has made initial productions totaling 269 documents, consisting principally of Farfetch Limited's core books and records.  No emails or custodial files have been produced yet.  Greenblatt Decl. ¶ 3.

In the interim, Surpique and the JOLs have engaged in negotiations concerning the full scope of a custodial review in response to the Rule 2004 subpoena.  *Id.* ¶ 4.  Those negotiations have not yet concluded but appear to be coalescing on an agreed search protocol yielding a population of well over 100,000 documents.  *Id.*  Because the parties have not yet reached agreement on the scope of the custodial review, Surpique has not yet reviewed documents pursuant to it or discussed a timeline for the resulting production.  Given the significant size and inevitable complexity of the review,[2] Surpique does not expect the production to be complete until mid-to-late summer.  *Id.* ¶ 5.

Today, the Cayman and US insolvency proceedings have not led to any potential claims.[3] According to the JOLs' representations to this Court, the "[t]he joint liquidators are at an early stage of the investigation, [and] have not filed any claims against Surpique or anyone else . . .

---

[2]   Given the special questions of privilege and confidentiality arising from the production of documents from Surpique (the new parent of the go-forward Farfetch business) to the JOLs (who now stand in the shoes of former parent company Farfetch Limited), the Bankruptcy Court entered a Stipulated Confidentiality and Protective Order governing Surpique's productions to the JOLs.  *See* Bankr. Dkt. 129. The Protective Order preserves privileges held by Farfetch Limited and its subsidiaries, including their privilege as joint clients, pursuant to Federal Rule of Evidence 502(d).  Bankr. Dkt. 129-1.  The Protective Order also generally restricts the JOLs from disseminating the productions to third parties and precludes them from doing anything that would waive the privilege that Farfetch Limited and its subsidiaries hold jointly.  *Id.*

[3]   The JOLs have represented that they "have made no decision on whether to pursue claims against Surpique . . . former officers or directors of the Company, or any other party."  Bankr. Dkt. 66 ¶ 33.  The JOLs confirmed the same to Surpique's counsel.

[I]n some respects, we're behind the class action plaintiffs, who already have a claim on file and a motion to dismiss briefing." *See* April 10, 2025 Hr'g Tr. at 5:9-14.

#### C.   This Securities Case and the PSLRA Stay.

In contrast to the JOLs' exploratory insolvency proceedings in the Cayman Islands and United States, Plaintiffs in the above-captioned case have been litigating the merits of their securities fraud claims for nearly a year and a half.

On October 20, 2023—more than three months before the close of the Transaction involving Surpique, and before Surpique even made an offer to acquire the Farfetch business— shareholders of Farfetch Limited filed securities fraud claims in the U.S. District Court for the District of Maryland. The shareholders named Farfetch Limited, director and chief executive officer José Neves, Farfetch Group President Stephanie Phair, and chief financial officer Elliot Jordan ("Individual Defendants") (collectively, "Defendants"). *See Ragan v. Farfetch Limited et al.*, No. 8:23-cv-02857-MJM (D. Md. 2023).[4] The shareholders in the Maryland action claimed that Defendants made false and misleading statements to investors regarding Farfetch's financial condition between March 9, 2023 and August 17, 2023 in violation of the Securities Exchange Act. *See Ragan*, No. 8:23-cv-02857-MJM, Dkt. 1. On December 19, 2023, separate Farfetch Limited shareholders filed a similar complaint, and the two securities cases were consolidated in this Court. *See* ECF Nos. 1 (the "Original Complaint"), 23.

On June 21, 2024, before this Court issued any decision, Plaintiffs filed a Consolidated Class Action Complaint that extended the beginning of the class period, covering statements made between February 24, 2022 and December 17, 2023. *See* ECF No. 34. On September 11, 2024, the Director Defendants moved to dismiss the consolidated complaint, triggering the

---

[4]   These individuals have all since departed the Farfetch business.

PSLRA's mandatory stay of discovery pending resolution of the motion to dismiss. *See* ECF No. 44. That motion was fully briefed in December 2024 and remains pending. ECF No. 50.

On March 13, 2025, Plaintiffs filed a letter motion requesting leave to file a motion to lift the PSLRA stay so that they could serve a subpoena on the JOLs (as representatives of Defendant Farfetch Limited). ECF No. 52. The motion sought "a copy of whatever discovery the liquidator has already received and/or will receive in the future" from Surpique, *id.*, in connection with the JOLs' Rule 2004 subpoena to Surpique in the Bankruptcy Court. ECF No. 52-2.

Plaintiffs then changed course abruptly and without explanation. For the first time in their reply on the letter motion, Plaintiffs stated that they now sought relief to lift the PSLRA stay in order "to serve a subpoena on *Surpique*"—which is not and has never been a party to this litigation. ECF No. 58 (emphasis added). Despite targeting Surpique, Plaintiffs copied only "[a]ll counsel of record" and failed to put non-party Surpique on notice. *See id.* Following a conference before this Court on April 10, 2025, which proceeded without Surpique, the Court granted Plaintiffs leave to file the motion. *See* April 10, 2025 Hr'g Tr. at 17:8-9.

On May 1, 2025, Plaintiffs filed their Motion to Modify the PSLRA Discovery Stay to seek **all** documents produced by Surpique to the JOLs in connection with the Bankruptcy Court proceedings, without any limitation on time period, subject matter, or anything else. ECF No. 60. Plaintiffs apparently do not seek to serve any discovery requests on any Defendants.

## III.    LEGAL STANDARD

Congress enacted the PSLRA "to prevent plaintiffs from filing . . . frivolous lawsuits and using [them] as a vehicle 'in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint.'" *In re Vivendi Universal, S.A. Securities Litigation*, 381 F. Supp. 2d 129, 129-30 (S.D.N.Y. 2003) (quoting S. Rep. No. 104-98, at 14).

The PSLRA mandates that, in securities actions, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).  The statute thus creates "a strong presumption that *no* discovery should take place until a court has affirmatively decided that a complaint does state a claim under the securities law."  *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004).  This presumption prevents plaintiffs in securities class action from using "the expensive discovery process as leverage to coerce defendants into settling meritless claims."  *In re Smith Barney Transfer Agent Litig.*, No. 05 CIV. 7583 (WHP), 2006 WL 1738078, *1 (S.D.N.Y. June 26, 2006).  Plaintiffs' burden is a "heavy one."  *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005).

To rebut the presumption, plaintiffs must show that the requested "discovery is required to . . . preserve evidence" or "prevent undue prejudice to plaintiffs."  *In re Smith Barney Transfer*, 2006 WL 1738078, at *1.  In addition, the PSLRA further requires that "plaintiffs' [contemplated] discovery requests be 'particularized' for the stay to be lifted."  *Id.* (quoting 15 U.S.C. § 78u-4(b)(3)(B)).  Finally, even if a plaintiff satisfies these requirements, courts deny motions to lift the stay where the proposed discovery would unduly burden the producing party. *See Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 405 (S.D.N.Y. 2001).

IV.    ARGUMENT

The Court should deny the Motion as a premature and baseless attempt to circumvent the PSLRA.  *First*, Plaintiffs never conferred with non-party Surpique before moving for relief. *Second*, Plaintiffs fail to show undue prejudice because they do not—and cannot—show that the requested discovery is necessary to prevent prejudice from any imminent settlements or

7

judgments against Defendants. *Third*, Plaintiffs cannot show that the requested discovery is necessary to preserve evidence. *Fourth*, Plaintiffs fail to show that the discovery they request is particularized; it is instead sweeping and open-ended. *Finally*, granting Plaintiffs' Motion would impose a tremendous, costly burden on non-party Surpique. [5]

### A.    Plaintiffs' Motion Is Unripe.

For good reason, Rule 37 requires that a party may move to compel discovery only "[o]n notice to . . . all affected persons." Fed. R. Civ. P. 37(a)(1). The motion must include a certification "that the movant has in good faith conferred or attempted to confer with the person or party failing to make . . . discovery in an effort to obtain it without court action." *Id.* The plain purpose of this rule—and Individual Practice of Judge Ramos 2(A)(i), which requires "strict adherence" to Rule 37, as well as Local Rule 37.2—is to avoid burdening the parties and Court with motion practice over discovery disputes before the interested parties have even discussed the issues and focused any resulting disagreements for judicial intervention. [6]

Here, Plaintiffs filed their letter motions, attended a conference before this Court, and obtained leave to seek relief with respect to Surpique *weeks* before initiating any contact with Surpique—Plaintiffs' discovery target. ECF No. 53, 58. Plaintiffs contacted Surpique, via a pro forma email with no substance, for the first time a mere two days before the Motion—solely to

---

[5]    There is no dispute that Surpique has standing to oppose the Motion. *See, e.g., In re Adelphia Commc'ns Corp.*, 294 B.R. 39, 44 (Bankr. S.D.N.Y. 2003) (holding that non-party was within the "class of persons and entities who were intended to be protected by the PSLRA" and had standing); *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 680 (D. Md. 2000) (holding that PSLRA's "protective stay provision applies to *all* discovery, including that of third parties"); *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 404 (S.D.N.Y. 2001) ("[T]he PSLRA does not distinguish between discovery of non-parties and parties."). Indeed, Surpique is most impacted by the instant Motion, and in granting Plaintiffs leave to file, this Court confirmed that it "would welcome a response by Surpique." April 10, 2025 Hr'g Tr. at 17:22.

[6]    For efficiency and fairness, these fundamental rules should be followed regardless of whether the contemplated motion seeks to compel discovery, or instead seeks to circumvent the PSLRA's mandatory stay to commence discovery. *See supra* note 5 (collecting cases holding that nonparties are interested, protected parties under PSLRA).

provide notice that a filing was imminent.  Greenblatt Decl. ¶ 6.  Plaintiffs' Motion contains no Rule 37 certification or similar discussion whatsoever.  ECF Nos. 59, 60.  And for good reasons: Plaintiffs never even attempted to confer with Surpique to engage in a "live exchange of ideas and opinions," or understand the facts underlying their motion before burdening Surpique and the Court with motion practice.  *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 CIV. 7590 (DAB), 1998 WL 67672, at *2 (S.D.N.Y. Feb. 18, 1998) (internal quotations omitted).  The Court should deny the Motion as premature.

### B.    Plaintiffs Fail to Show Undue Prejudice.

In any event, the Court should deny Plaintiffs' Motion as a transparent end-run around the PSLRA.  Plaintiffs fall well short of their heavy burden to show that the requested discovery is "necessary to prevent "undue prejudice."  *See* 15 U.S.C. § 78u-4(b)(3)(B).

***First***, Surpique joins the arguments raised in the opposition brief filed by the Individual Defendants contemporaneously with this opposition.  To the extent that the Court finds the Individual Defendants lack standing, Surpique incorporates those same arguments herein.

***Second***, and more particularly, the mandatory PSLRA stay cannot be lifted through speculation alone.  *In re Refco, Inc.*, No. 05 CIV. 8626 (GEL), 2006 WL 2337212, *3 (S.D.N.Y. Aug. 8, 2006) ("Mere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay is necessary to prevent undue prejudice, that would otherwise result." (cleaned up)).  Plaintiffs assert that they will be unduly prejudiced because they and the JOLs are competing for fixed assets from insurance policies, and that discovery has already begun in the Bankruptcy Court.  *See* ECF No. 60 at 13.  But Plaintiffs never connect the dots between the discovery they seek, the proceedings' respective procedural postures, and the likely consequences of making Surpique's productions available to Plaintiffs.  If anything,

9

Plaintiffs want to lift the stay in order to obtain discovery that they speculate might provide them leverage to extract a settlement—all before even pleading a successful claim. That is precisely the scenario that Congress sought to preclude through the PSLRA. *In re Smith Barney*, 2006 WL 1738078, *1.

Plaintiffs' argument is anathema to the PSLRA. Precedent from this Court confirms that "Plaintiffs' inability to gather evidence for settlement negotiations or to plan a litigation strategy is not evidence of undue prejudice." *In re Refco*, 2006 WL 2337212, at *2. Indeed, "delay is an inherent part of every stay of discovery required by the PSLRA." *In re Initial Pub. Offering Sec. Litig.*, 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002). "The discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions." *In re Refco, Inc.*, 2006 WL 2337212, at *2. Courts "may not second-guess that judgment." *Id.*

Moreover, even if a settlement or judgment in favor of the JOLs could constitute cognizable undue prejudice in some circumstances, that theoretical possibility is far too speculative and remote here. Because the JOLs have not even filed any claims, a judgment on any such unknown claims cannot be imminent. Rather, the JOLs recently represented to this Court that they are still at an "early stage" of their investigation and *behind* relative to the securities Plaintiffs in this case. *See* April 10, 2025 Hr'g Tr. at 4:24. And even if the JOLs someday file claims against the Individual Defendants, it is pure speculation to suggest that any such hypothetical claims could survive the pleading stage, let alone proceed to a merits judgment before the JOLs. And it is even more speculative that any such judgment would come quickly. Plaintiffs should at least wait to see if any claims are filed before speculating that they will lose a race to the finish line of a final judgment.

10

Similarly, because the JOLs have not even identified any potentially viable claims to assert, they have not even created the possibility of settling them.  This fact pattern falls far short of the showing that would be required to lift a PSLRA stay.  For example, in *Jiang v. Chirico*, this Court denied a motion to lift a PSLRA stay notwithstanding the possibility that plaintiffs would be competing with another group of plaintiffs in a different litigation for a limited pool of funds, explaining that plaintiffs had not shown that harm was "sufficiently imminent."  No. 23 CIV. 1258 (PGG), 2024 WL 3104817, at *7 (S.D.N.Y. June 24, 2024).  To reach that conclusion, the Court relied on plaintiffs' failure to present evidence that the other parties were engaged in settlement discussions.  *Id.*  So, too, here.  Plaintiffs do not suggest even a hint of any settlement discussions, let alone evidence that a settlement is imminent.

Thus, Plaintiffs have failed to show that the requested discovery is "necessary" to prevent imminent undue prejudice.  *See* 15 U.S.C. § 78u-4.

## C. Plaintiffs Fail to Show That the Proposed Discovery Is Necessary to Preserve Evidence.

Plaintiffs also fail to show that lifting the stay is "necessary to preserve evidence."  *See id.*

Plaintiffs' Motion begs a central question: Why are they seeking to lift the PSLRA stay in order to pursue discovery against a *non-party*, Surpique, instead of the Defendants against whom they are bringing claims?  The Motion has no answer.  It remains a mystery why non-party Surpique has been dragged into this case at all, and Defendants are clearly the relevant parties.

Surpique, of course, has its own obligations to preserve documents in connection with the Rule 2004 subpoena served by the JOLs (on behalf of Defendant Farfetch Limited).  So Plaintiffs' proposed additional subpoena—which goes no further than the JOLs' Rule 2004 subpoena—cannot, logically, be necessary to preserve anything. Moreover, because the

11

subpoena that Plaintiffs seek to serve on Surpique requests a copy of "all non-privileged documents *already produced or to be produced*" by Surpique to the JOLs, ECF No. 61-3, Plaintiffs' own subpoena necessarily assumes that any responsive documents *must* enter the possession of the JOLs—*i.e.*, Defendant Farfetch Limited—to fall within the scope of the subpoena. And as a Defendant who has been sued in the above-captioned case, Farfetch Limited has its *own obligations*, under the PSLRA, to preserve evidence relevant to Plaintiffs' claims against it.[7] And the same is true for the Individual Defendants. Thus, Defendants' own preservation obligations are sufficient. For this reason alone, the Court should deny the Motion.

Moreover, if Plaintiffs were genuinely concerned about preserving evidence—notwithstanding Defendants' own obligations under the PSLRA—they could simply request that Surpique independently preserve the documents that are produced to the JOLs. Plaintiffs did not do so. If they had asked, Surpique would have confirmed that it will indeed preserve those documents. In any event, Surpique confirms the same now and hereby undertakes that, for a period of three years, it will preserve all documents it produces to the JOLs in response to the Rule 2004 subpoena. Greenblatt Decl. ¶ 7. Further, Surpique would also be willing to revisit its ongoing preservation obligations in three years if Plaintiffs' claims remain pending. *Id.* This undertaking is more than sufficient to resolve Plaintiffs' purported concern that the proposed subpoena is "necessary" to preserve the evidence it contemplates. ECF No. 60 at 8.

Finally, Plaintiffs' purported concern that Surpique or the Farfetch business will somehow disappear is entirely speculative. To suggest that the sky is falling, Plaintiffs seize on what is nothing more than an administrative paperwork error (which, again, could have been

---

7   *See* 15 U.S.C. § 78u-4(b)(3)(C) ("During the pendency of any stay of discovery pursuant to this paragraph . . . any ***party*** to the action with actual notice of the allegations contains in the complaint shall treat all documents . . . as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure." (emphasis added))

12

clarified without burdening the Court if Plaintiffs sought to meet and confer in good faith as required). Plaintiffs assert that "Surpique Holdings Limited—the parent entity—has begun the process of dissolution, and with Farfetch no longer operating, further delay risks the permanent loss of documents." ECF No. 60 at 3. Not true. Surpique's UK parent, Surpique Holdings Limited, was briefly listed on a UK regulatory website as the subject of a dissolution proceeding, beginning as of April 15, 2025. ECF No. 58-1; Greenblatt Decl. ¶ 8.[8] But that public notice was only triggered because Surpique Holdings inadvertently missed a statutory filing deadline. Greenblatt Decl. ¶ 8. Surpique Holdings quickly identified the paperwork error and completed the required filing on May 2, 2025. *Id.* ¶ 9. The compulsory dissolution proceeding was cancelled the next day. *Id.* Surpique and Surpique Holdings are not being dissolved. *Id.* ¶ 10.

Surpique and Surpique Holdings are solvent entities that are, in turn, held by ultimate beneficial owner, Coupang, Inc., which has helped begin a turnaround of the Farfetch business and finances. And Coupang is itself a solvent public company incorporated in Delaware and traded on the New York Stock Exchange. Greenblatt Decl. ¶ 11. Thus, the status of Surpique and its affiliates poses no risk—let alone an imminent one—of undue prejudice to Plaintiffs.

Next, Plaintiffs speculate that "Surpique has *already* lost documents it previously had access to; specifically, documents that previously existed in a virtual data room that, as of earlier this year, are no longer available." ECF No. 60 at 3 (bolding omitted). Plaintiffs' purported fears are again unfounded. Under the PSLRA, "[a] party alleging that discovery is necessary to preserve evidence must . . . make a specific showing that the loss of evidence is imminent as

---

[8] Because this administrative error occurred more than a month *after* Plaintiffs sought leave to file this Motion, Plaintiffs' disappearance argument is nothing more than a post-hoc rationalization meant to salvage their already baseless arguments in support of lifting the PSLRA stay. *See* ECF No. 52 (March 13, 2025 letter motion from Plaintiffs seeking leave to move to lift the PSLRA stay).

opposed to merely speculative." *Mori v. Saito*, 802 F. Supp. 2d 520, 524 (S.D.N.Y. 2011) (quoting *In re Vivendi,* 381 F. Supp. 2d at 130). Plaintiffs fail to make any such showing here.

In reality, Surpique has possession of the virtual data room documents—the only documents invoked by the Motion—and has preserved them in the event that a reproduction to Plaintiffs should prove necessary. Greenblatt Decl. ¶ 12. Further, the JOLs—on behalf of Defendant Farfetch Limited—have themselves confirmed that it possesses these very same virtual data room documents and has a duty under the PSLRA to preserve them as the Defendant that Plaintiffs have sued. *Id.*; *see* 15 U.S.C. § 78u-4(b)(3)(C); *see also In re Vivendi*, 381 F. Supp. 2d at 130 (denying motion to lift PSLRA stay where "defendants have . . . made the representation that they have copies of all the documents . . . and that they must and will be preserved"). Thus, Plaintiffs have made no showing of a risk that documents could be lost—let alone a "specific showing" of an "imminent" loss. *See Mori*, 802 F. Supp. 2d at 524.[9]

For these reasons, Plaintiffs fail to show that lifting the stay to serve their proposed subpoena on Surpique is "necessary to preserve evidence." *See* 15 U.S.C. § 78u-4(b)(3)(C).

### D.    Plaintiffs Fail to Show That Their Proposed Subpoena Is Particularized.

The Court should also deny the Motion because it does not concern a "particularized" discovery request. Independently from showing that lifting the stay is necessary to prevent undue prejudice or the loss of evidence, the PSLRA additionally mandates that Plaintiffs make "the required showing that their requests are 'particularized'" before the stay can be lifted. *Mori*, 802 F. Supp. 2d at 525 (quoting 15 U.S.C. § 78u–4(b)(3)(B)). "A request is considered particularized . . . when it is directed at specific persons and identifies specific types of evidence

---

9    Moreover, although not implicated by Plaintiffs' Motion, there is a litigation hold in place covering many scores of Farfetch custodians. Greenblatt Decl. ¶ 13.

14

that fall within its scope." *Id.* (internal quotations omitted).  Plaintiffs' proposed subpoena is the opposite of particularized.

The shapeless and sweeping directive in Plaintiffs' subpoena seeks the production of "[*a*]*ll* non-privileged documents already produced or to be produced to Farfetch's Joint Official Liquidators." *See* ECF 61-03 (emphasis added).  The aimless request is not limited by any subject matter, cause of action, relevant persons, claims, time period (such as the Class Period in this case), or anything other than *all* documents that Surpique may elect or be compelled to produce, to an entirely different party in an entirely different proceeding for any reason.  Unsurprisingly, this Court has denied requests to lift the PSLRA stay where, as here, plaintiffs seek "all documents already produced or to be produced in the future." *See, e.g.*, *Faulkner*, 156 F. Supp. 2d at 405.

Plaintiffs' subpoena is so broad and open-ended that not even they know what information it requests.  In fact, today, that information *cannot* be known.  Surpique and the JOLs have not yet to come to ground on the negotiated scope of production in response to the subpoena.  Greenblatt Decl. ¶¶ 4-5.  Accordingly, Surpique has not yet even begun a review of the custodial documents pursuant to that protocol.[10]  *Id.*

Plaintiffs' subpoena is plainly not tailored to the particular claims at issue in their securities case.  Notwithstanding Plaintiffs' assertion that the discovery they would receive is "[c]ore" to those securities claims, *see* ECF No. 60 at 10,[11] the JOLs' subpoena—and therefore

---

[10]   Further, the JOLs have a motion pending in the Cayman court seeking even broader discovery, beyond Farfetch's own historical documents.  The outcome of that motion may affect the scope of any supplemental productions in the Chapter 15 proceeding.

[11]   *See* ECF No. 60 at 10 (Plaintiffs observing that the JOLs' subpoena covers, on its face, "Farfetch's SEC filings; the creation of Farfetch's consolidated financial statements or any financial projections; the sale of Farfetch's assets to Coupang; financial information and results of Farfetch's financial reporting for Q3 and Q4 2023," and similar documents).

Plaintiffs' subpoena—sweeps much more broadly.  Plaintiffs' subpoena effectively incorporates by reference the JOLs' ***entire overbroad 81-request subpoena.***  That Rule 2004 subpoena was issued by a debtor in a bankruptcy context that the JOLs have characterized as a permissible "fishing expedition."  *Compare* JOLs' Rule 2004 Motion, Bankr. Dkt. 66 at 17 ("[F]oreign representatives are permitted to use the full scope of Rule 2004, which is well accepted to be a fishing expedition and can even involve discovery into potential causes of action.") *with* Plaintiffs' Letter Motion, ECF No. 52 at 1 ("The PSLRA's automatic discovery stay was designed to prevent fishing expeditions in meritless securities cases.").[12]  In contrast to Federal Rule of Civil Procedure 26, the JOLs have emphasized that Bankruptcy Rule 2004 does not even limit them to evidence relevant to *any* potential cause of action, let alone the pre-Transaction public statements that form the basis for Plaintiffs' particular securities claims.  *See* Dkt 66 at 17-21.  Similarly, whereas Plaintiffs' Consolidated Complaint focuses on Farfetch's representations to shareholders during a Class Period of February 24, 2022 to December 17, 2023 (which predates the Transaction), the JOLs seek documents covering a time period of more than five years, beginning January 2019 and through the date of the transaction in January 2024.  ECF No. 61-4.

Because Plaintiffs seek open-ended discovery that is plainly irrelevant to the claims that they have presented to this Court, it is by definition not particularized.  *See Faulkner*, 156 F. Supp. 2d at 404 (holding that plaintiffs failed the PSLRA's particularity requirement where

---

[12]  *See, e.g.*, ECF No. 61-4 (JOLs' subpoena to Surpique) (requesting, among the 81 requests, a "copy of the complete [Farfetch] server," communications "concerning [the Transaction]" regardless of subject matter, and information that would only be relevant to the JOLs and Farfetch Limited's creditors, not shareholders).

they sought production of "all documents" that had been or would be produced in a breach of contract action, where many would be irrelevant to their securities fraud claims).[13]

Thus, the Court should deny the Motion because it fails the PSLRA's particularity requirement.  *See Mori*, 802 F. Supp. 2d at 525.

### E.        Plaintiffs' Subpoena Would Impose a Tremendous Burden on Surpique.

As shown above, the Court should deny the Motion because Plaintiffs have failed to show that maintaining the stay is necessary to avoid undue prejudice, necessary to preserve evidence, or seeks particularized discovery.  But even if Plaintiffs had made those showings— they have not—the Court should independently deny the Motion because of the tremendous burden it would impose on non-party Surpique.

In line with PSLRA's purpose of preventing "'unnecessary imposition of discovery costs on defendants,' . . . those courts who have decided to lift the stay have done so in part because the limited discovery request *would not* impose additional discovery costs on the defendants." *See Faulkner*, 156 F. Supp.2d at 405 (quoting H.R. Conf. Rep. No. 104-369, at 32) (internal citations omitted) (emphasis added)).[14]  This same logic applies to non-parties like Surpique.

---

[13]   Even in negotiations, the JOLs sought 48 custodians spanning a period of more than five years and requested the use of 200 search terms.  That grab was a non-starter.  But it illustrates the overbreadth of the shadow discovery that Plaintiffs seek, in violation of the PSLRA.  This case is nothing like the *Bank of America* case repeatedly cited by Plaintiffs, where the court found that "Plaintiffs are *not* seeking this discovery now merely to engage in a *fishing expedition*," and confirmed that "[a] string of requests, even a string of individually particularized requests—is not sufficiently particularized at the outset."  *Cf. In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) (emphasis added).  Nor is Plaintiffs' request like the other cases they cite, which concern a "closed universe of materials" or documents "already assembled and produced."  *See* ECF No. 60 at 9 (citations omitted).

[14]   Plaintiffs are correct that the producing party's burden may be relevant to this Court's analysis.  But that factor does not help them.  That is because courts do not treat the lack of a burden in isolation as a justification to lift the stay.  *See, e.g.*, *In re GMR Securities Litigation*, 2012 WL 5457534, at *2 (S.D.N.Y. Nov. 8, 2012) (noting that because plaintiffs failed to show undue prejudice, the court did not need to address whether plaintiffs' request was particularized and whether the defendants and non-party would be burdened); *see also* 15 U.S.C. § 78u–4(b)(3)(B).

17

The burden on Surpique of complying with Plaintiffs' subpoena warrants denying the Motion for several reasons.

*First,* any burden imposed on Surpique is particularly heightened because of its status as a non-party, and *Defendants* in this case would have access to the documents contemplated by Plaintiffs' subpoena, or the core documents in which Plaintiffs say they are interested. To prevent unduly burdensome and duplicative non-party discovery, this Court has prohibited securities plaintiffs from obtaining documents from non-parties where they could seek those same materials from a party to the underlying litigation. *Faulkner*, 156 F. Supp.2d at 405 ("[I]f we decided to lift the stay, we would require the party to this action . . . to produce the requested information."). Thus, to the extent that the stay is lifted at all, it should be lifted solely for Plaintiffs to serve particularized requests for evidence against the Defendants. For example, the JOLs (on behalf of Farfetch Limited) would necessarily have and preserve whatever Surpique produces to them—the documents that are the very subject of the Motion. The Court should not permit Plaintiffs to attempt to strengthen their claims against Defendants by imposing costs upon a non-party, in lieu of obtaining those very same documents from Defendants.[15]

*Second*, putting aside the impropriety of favoring third-party discovery over party discovery, the Federal Rules of Civil Procedure simply do not entitle Plaintiffs to the documents contemplated by their vastly overbroad subpoena. *See* Fed. R. Civ. P. 45, 26(a)(1). If the subpoena were issued, non-party Surpique would be forced to expend significant sums of its own resources preparing a motion to quash despite Plaintiffs' failure to plead any successful claims.

---

[15]    To the extent that a separate stay imposed by the Bankruptcy Court is an obstacle to obtaining discovery from the JOLs, as representatives of Defendant Farfetch Limited—though the Motion makes no such argument, thereby forfeiting it—Plaintiffs should seek to lift that stay, rather than burden non-party Surpique. *See* ECF No. 39 ("This Court shall retain jurisdiction with respect to . . . any request by any person or entity for relief from the provisions of this Order."); 11 U.S.C. § 362(d) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause.").

That is not what Congress intended.  Further, to the extent that there was a subset of documents Plaintiffs might have some legitimate interest in at this stage, Surpique would be forced to negotiate a supplemental search and review protocol with Plaintiffs that isolates those documents from the much broader production made to the JOLs under Rule 2004.  Although Plaintiffs have failed to articulate what information they are looking for, those costs would undoubtedly be significant.

*Finally*, even if Surpique wished to simply reproduce any productions to the JOLs on a wholesale basis, purely as an expedient to avoid the costs above, Surpique would *still* be forced to incur exorbitant costs.

Contrary to the fiction that Plaintiffs' presented to this Court—"it's a simple, quick copy, send," April 10, 2025 Hr'g Tr. at 13:11-12—Surpique would be required to conduct a separate, burdensome privilege review *specifically* for the purpose of making these reproductions to Plaintiffs.  *See Faulkner*, 156 F. Supp. 2d at 404 (holding that subpoena against non-party was unduly burdensome where information was subject to confidentiality order and could not be disclosed unconditionally).  The reason is that Plaintiffs are not similarly situated to the JOLs vis-à-vis attorney-client privilege.  In response to the Rule 2004 subpoena served by the JOLs (standing in the shoes of Farfetch Limited), Surpique will likely be reviewing over 100,000 historic Farfetch documents.  Greenblatt Decl. ¶ 4.  A sizable—but not yet known—number of will constitute privileged documents for which the JOLs hold (i) an exclusive attorney-client privilege or (ii) a joint attorney-client privilege with its former Farfetch subsidiaries now owned by Surpique.  *See generally In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007) (discussing joint-client privilege with respect to parents and subsidiaries of corporate groups).  Because Plaintiffs are *third-party* shareholders who fall outside those Farfetch privileges,

19

Plaintiffs may not receive the protected communications—unlike the JOLs, which may. Accordingly, Plaintiffs are simply wrong that Surpique can merely "quick copy, send" its production to Plaintiffs. *See* Apr. 10, 2025 Hr'g Tr. 13:11-12.

Surpique would be forced to conduct an entirely new and highly nuanced privilege review to identify documents to which these privileges apply and must be withheld from the reproduction set. That new privilege review implicates a significant—in fact, open-ended—universe of documents.[16] For example, the JOLs have requested that Surpique add Farfetch's in-house attorneys as custodians. Combing the production set to make privilege determinations specifically for the purpose of reproducing documents to Plaintiffs would be inordinately burdensome to non-party Surpique.

The Motion has no answer to these serious burdens. Plaintiffs speculate that the JOLs might *improperly* waive privilege over the production to them by sharing that privileged material with third parties, such as third-party creditors. *See* ECF No. 60 at 12 ("[T]o the extent that the JOLs share documents with the [Noteholders], such sharing would vitiate any privilege claim by Surpique. So Surpique need not perform a new search, collection, or privilege review for the case at bar."). If the JOLs waive the privilege, so the reasoning goes, then Plaintiffs should also get the documents. But Plaintiffs provide no evidence to believe that will happen. Moreover, with respect to any jointly privileged documents between Farfetch Limited and its former subsidiaries, the JOLs may not unilaterally waive the privilege. That would require the consent of the Farfetch entities owned by Surpique.

---

[16]    It is unclear why Plaintiffs cite case law in which courts "found there to be no prejudice where . . . plaintiffs will pay production costs." *See* ECF No. 60 at 12 (citing *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004)). Plaintiffs have never offered to pay Surpique's costs of complying with the subpoena. Nor could they as Plaintiffs only contacted Surpique mere days before filing this Motion to provide pro forma notice. Greenblatt Decl. ¶ 6.

For the reasons above, the Court should deny Plaintiffs' Motion because of the undue burden that it would impose on non-party Surpique.

## V.    CONCLUSION

For the reasons above, Plaintiffs have not met their burden to lift the PSLRA discovery stay and serve their proposed subpoena on Surpique. The Court should deny the Motion.

Dated: May 22, 2025                       Respectfully submitted,

                                          KIRKLAND & ELLIS LLP
                                          By: */s/ Joshua Greenblatt, P.C.*
                                          Joshua Greenblatt, P.C.
                                          601 Lexington Ave
                                          New York, NY 10022
                                          Telephone: (212) 446-4800
                                          Email: josh.greenblatt@kirkland.com

                                          Kenneth P. Monroe (*pro hac vice forthcoming*)
                                          200 Clarendon St.
                                          Boston, MA 02116
                                          Telephone: (617) 385-7571
                                          Email: kenneth.monroe@kirkland.com

                                          *Counsel for Non-Party Surpique L.P.*

21