**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FARFETCH LIMITED SECURITIES LITIGATION | Case No.: 1:23-cv-10982-ER-KHP [rel. 1:24-cv-00532-ER] |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **ORAL ARGUMENT REQUESTED** |

**INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY THE PSLRA DISCOVERY STAY**

LATHAM & WATKINS LLP

Jeff G. Hammel
Jason C. Hegt
Jooyoung Yeu
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for Individual Defendants José Neves, Elliot Jordan, and Stephanie Phair*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND...................................................................................................3

      A.     Plaintiffs Repeatedly Have Sought To Delay Adjudication Of This Case ..............3

      B.     Defendants Move To Dismiss The Operative Complaint In Full ...........................3

      C.     Plaintiffs Attempt To Obtain Sweeping Discovery To Find A Viable Claim..........................................................................................................................4

ARGUMENT ............................................................................................................................5

I.      THE STAY OF DISCOVERY CAN ONLY BE LIFTED IN EXCEPTIONAL CIRCUMSTANCES THAT DO NOT EXIST HERE.........................................................5

      A.     There Is No Risk of Losing Documents ..................................................................7

      B.     Plaintiffs Fail To Establish Undue Prejudice..........................................................8

            1.     Hypothetical (And Counterfactual) Claims For Competing Insurance Proceeds Do Not Constitute Undue Prejudice ...........................8

            2.     Plaintiffs' Ability to Make Informed Litigation Decisions Is Not Prejudiced By The Stay ...............................................................................10

      C.     Plaintiffs' Request Is Not Particularized.................................................................11

II.     PLAINTIFFS' UNDUE BURDEN ARGUMENTS ARE INCORRECT AND IRRELEVANT ..............................................................................................................14

CONCLUSION........................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Courter v. CytoDyn, Inc.*,
2022 WL 621535 (W.D. Wash. Mar. 3, 2022) ..........................................................................13

*Faulkner v. Verizon Commcn's, Inc.*,
156 F. Supp. 2d 384 (S.D.N.Y. 2001)...........................................................................6, 7, 13

*Fisher v. Kansas*,
2006 WL 2239038 (E.D.N.Y. Aug. 4, 2006)...................................................................7

*Hatamian v. Advanced Micro Devices, Inc.*,
2015 WL 7180662 (N.D. Cal. Nov. 16, 2015) ..........................................................................14

*In re AOL Time Warner, Inc. Sec. Litig.*,
2003 WL 21729842 (S.D.N.Y. July 25, 2003) ...................................................................8, 11

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009)...................................................................11, 13

*In re Biovail Corp. Sec. Litig.*,
247 F.R.D. 72 (S.D.N.Y. 2007) ..........................................................................14

*In re Countrywide Fin. Corp. Deriv. Litig.*,
542 F. Supp. 2d 1160 (C.D. Cal. 2008) ..................................................................13

*In re Delphi Corp.*,
2007 WL 518626 (E.D. Mich. Feb. 15, 2007)...................................................................9, 10

*In re Elan Corp. Sec. Litig.*,
2004 WL 1303638 (S.D.N.Y. May 18, 2004) ...................................................................13

*In re Fannie Mae Sec. Litig.*,
362 F. Supp. 2d 37 (D.D.C. 2005).....................................................................7, 13

*In re FirstEnergy Corp. Sec. Litig.*,
2021 WL 2414763 (S.D. Ohio June 14, 2021) ...................................................................13

*In re FirstEnergy Corp. Sec. Litig.*,
229 F.R.D. 541 (N.D. Ohio 2004) ..................................................................11

*In re Int'l Bus. Machines Corp. Sec. Litig.*,
163 F.3d 102 (2d Cir. 1998)...................................................................14

*In re LaBranche Sec. Litig.*,
    333 F. Supp. 2d 178 (S.D.N.Y. 2004)........................................................................11

*In re Lottery.com, Inc. Sec. Litig.*,
    2024 WL 5226400 (S.D.N.Y. Dec. 26, 2024) ........................................10, 11, 12, 13

*In re Refco, Inc.*,
    2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006)..................................................7, 9, 10

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
    220 F.R.D. 246 (D. Md. 2004).....................................................................................13

*In re Smith Barney Transfer Agent Litig.*,
    2006 WL 1738078 (S.D.N.Y. June 26, 2006) ..................................................6, 9, 14

*In re Vivendi Universal, S.A. Sec. Litig.*,
    381 F. Supp. 2d 129 (S.D.N.Y. 2003)..................................................................1, 6, 8

*In re WorldCom, Inc. Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002)........................................................................11

*Jiang v. Chirico*,
    2024 WL 3104817 (S.D.N.Y. June 24, 2024) ....................................................6, 8, 9

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
    947 F. Supp. 2d 368 (S.D.N.Y. 2013).........................................................................13

*Mori v. Saito*,
    802 F. Supp. 2d 520 (S.D.N.Y. 2011)..............................................................6, 7, 11, 14

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
    943 F. Supp. 2d 913 (E.D. Wis. 2013).......................................................................13

*Podany v. Robertson Stephens, Inc.*,
    350 F. Supp. 2d 375 (S.D.N.Y. 2004)......................................................................1, 6

*Rampersand v. Deutsche Bank Sec., Inc.*,
    381 F. Supp. 2d 131 (S.D.N.Y. 2003).........................................................................13

*Singer v. Nicor*,
    2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ..........................................................11

*Waldman v. Wachovia Corp.*,
    2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) ................................................................11

**STATUTES**

15 U.S.C. § 78u-4(b)(3)(B).......................................................................... *passim*

Defendants José Neves, Elliot Jordan, and Stephanie Phair (the "Individual Defendants") respectfully submit this opposition to Plaintiffs' motion (ECF No. 60, the "Motion" or "Mot.") to lift the automatic stay of discovery under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT[1]

This securities class action against Farfetch Ltd. and certain of its former executives was filed in October 2023, and the Individual Defendants' motion to dismiss has been fully briefed and pending since December 2024. Plaintiffs now move to lift the PSLRA's mandatory discovery stay—a request flatly contrary to the plain text and clear purpose of the PSLRA. *See* 15 U.S.C. § 78u-4(b)(3)(B) ("*all* discovery and other proceedings *shall* be stayed during the pendency of any motion to dismiss. . . ."). Congress enacted this statutory stay expressly to prevent exactly what these plaintiffs attempt to do here: obtain discovery materials *before* establishing that they have pled a viable claim. *See In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 129-30 (S.D.N.Y. 2003) (stating the Congressional purpose of the PSLRA is "to prevent plaintiffs from filing [] frivolous lawsuits and using [discovery] as a vehicle" to find "a sustainable claim").

Such fishing expeditions are not how securities class actions work under the PSLRA: a plaintiff must survive a motion to dismiss, demonstrating it has a viable claim, and then it may take discovery. *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (stating Congress created "a strong presumption that *no* discovery should take place until a court has affirmatively decided that a complaint *does* state a claim under securities laws, by denying a

---

[1] Unless otherwise indicated, internal citations and quotations are omitted, emphasis is added, and capitalized terms have the meanings ascribed to them in the Memorandum of Law in Support of the Individual Defendants' Motion to Dismiss the Amended Class Action Complaint (ECF No. 44).

motion to dismiss") (emphasis in original).  Plaintiffs' motion—and its attempt to turn the PSLRA on its head—should be denied.

Farfetch is in liquidation and Plaintiffs now seek leave to obtain "whatever" discovery that the Joint Official Liquidators ("JOLs") in Farfetch's Cayman Islands liquidation proceedings "may obtain" from Surpique LP ("Surpique"), the entity that acquired Farfetch's operating subsidiaries in January 2024.  But Congress's narrow exception to the mandatory discovery stay requires Plaintiffs to demonstrate their discovery request is "necessary" to "preserve evidence" or to "prevent undue prejudice" to Plaintiffs, and that such requests are "particularized."  15 U.S.C. § 78u-4(b)(3)(B).  Plaintiffs fail to make that showing.

*First*, there is no basis for Plaintiffs to suggest that lifting the PSLRA stay is necessary to preserve evidence.  The documents in question are held by Surpique, a Delaware entity, and as set forth in its concurrently filed affirmation in opposition to Plaintiffs' motion, Surpique has agreed to preserve any documents that are produced to the JOLs for the foreseeable future.

*Second*, Plaintiffs' claims of undue prejudice are speculative and unfounded.  Plaintiffs express concern about not accessing documents that Surpique might produce to the JOLs, fearing that the JOLs could eventually pursue overlapping insurance claims.  But the notion that Plaintiffs need to obtain discovery now to avoid "falling behind" a claim that has not yet been filed and that would be subject to differing insurance policies, with no settlement discussions underway, does not constitute undue prejudice.

*Third*, Plaintiffs' discovery request is overly broad and not particularized.  Plaintiffs seek the wholesale reproduction of all documents "Surpique has produced (or will be producing) to the JOLs," without consideration of their relevance to the pertinent time period or issues in this case.

2

Under a long line of authority in this District, such requests are insufficiently particularized under the PSLRA.

Plaintiffs' request is exactly the kind of fishing expedition the PSLRA was designed to prevent. The Individual Defendants have filed a motion to dismiss that identifies multiple fatal flaws in the operative complaint. Plaintiffs' desire to obtain discovery to prop up their failing claims is precisely why Plaintiffs' motion should be denied.

## FACTUAL BACKGROUND

### A.    Plaintiffs Repeatedly Have Sought To Delay Adjudication Of This Case

This putative securities fraud class action was filed in October 2023. ECF Nos. 1, 23. From the outset, Plaintiffs have sought to delay this case so they could search for viable claims.

- In February 2024, the Court entered a stipulated schedule that required Plaintiffs to file a consolidated amended complaint within 60 days, or by April 8, 2024. ECF No. 29.

- Plaintiffs then requested, and received, a two-month extension to see if upcoming disclosures to be made by Surpique's parent company would provide a basis for a claim. *See* ECF No. 31.

- Finding nothing, Plaintiffs requested another extension the day before their complaint was due, ECF No. 33, and finally filed their amended complaint on June 21, 2024, ECF No. 34 (the "AC").

- Even after filing the AC, Plaintiffs tried to stall again by insisting upon "clarification" from a Delaware bankruptcy court that this case could proceed, even though all relevant parties agreed that it could. *See* ECF Nos. 40, 42.

### B.    Defendants Move To Dismiss The Operative Complaint In Full

Despite Plaintiffs having the better part of six months to prepare it, the AC is a kitchen-sink pleading in search of a viable claim. The AC challenges dozens of statements spanning nearly two years, presenting them in large block quotations and alleging that every statement is false for the same generic reasons. *See* ECF No. 44 at 14-15; ECF No. 50 at 2-3. But the AC fails to allege any facts showing those statements are actionably false or that any Defendant acted with the

3

requisite fraudulent intent.  *See* ECF No. 44 at 14-35; ECF No. 50 at 2-15.  To the contrary, although Farfetch stock lost substantial value during the putative class period, the Individual Defendants ***increased*** their holdings in Farfetch stock during this time, which conclusively undermines any inference of fraudulent intent.  *See* ECF No. 44 at 27-28; ECF No. 50 at 1, 9.  The Individual Defendants filed their motion to dismiss in September 2024, ECF No. 44, and it was fully briefed as of December 2024, ECF No. 50.

### C.        Plaintiffs Attempt To Obtain Sweeping Discovery To Find A Viable Claim

Several months after the motion to dismiss was fully briefed, Plaintiffs filed a letter asking that the Court lift the PSLRA's mandatory discovery stay.  ECF No. 52.  In their letter, Plaintiffs sought access to information being produced to the JOLs of Farfetch Ltd.  By way of background, Farfetch itself was a holding company with no operations.  ECF No. 44, at 1; ECF No. 45-1, at 62.  In January 2024, Farfetch's operating subsidiaries were sold to Surpique, and Farfetch was placed into liquidation in February 2024.  ECF No. 61-1, at 1.  The liquidation proceedings are ongoing in the Cayman Islands, with an ancillary proceeding in the U.S. Bankruptcy Court for the District of Delaware through which the JOLs are seeking discovery from various persons and entities based in the U.S.  ECF No. 61-2, at 2-4.  Although no claims against the Individual Defendants (or anyone, for that matter) have been asserted in those proceedings, Plaintiffs claim that they "need to receive a copy of whatever discovery the liquidator has already received and/or will receive in the future" from Surpique.[2]  ECF No. 52, at 2.  As Plaintiffs told this Court at the time, they seek

---

[2] The JOLs seek a vast array of documents from Surpique, including the "complete server on which all Documents and Communications constituting Farfetch's books and records were maintained," every communication from "Farfetch's CEO, Farfetch's CFO, or a representative of the finance department of any company in the Farfetch Group to the Board or Management from January 1, 2019 through February 9, 2024," and all documents "constituting corporate records, meeting minutes, notes, internal memoranda, analyses, factual research, due diligence, and presentations of the Farfetch Group concerning Farfetch," just to name a few.  *See* ECF No. 61-2, at 46-55.

4

this discovery to "develop a litigation strategy, including the pursuit of a viable theory of liability and/or negotiate effectively if and when settlement talks commence." *Id.* at 2-3.  Plaintiffs further noted that they "anticipate seeking leave to amend the pleadings if/when the materials are received," which "would necessarily render moot Defendants' pending motion to dismiss." *Id*. at 3 n.1.

On April 10, 2025, the Court held a hearing on Plaintiffs' pre-motion letter request and Plaintiffs filed this Motion on May 1, 2025.  ECF No. 60.  Rather than requesting permission to issue a subpoena to "the liquidators" as they had originally requested in their pre-motion letter, *see* ECF No. 52, Plaintiffs now seek to issue a third-party subpoena to Surpique for the entire set of "non-privileged documents already produced" or that "will be" produced in the future by Surpique. Mot. at 1-2.  Plaintiffs also backtrack on their prior admissions that (i) they intend to amend the complaint and (ii) the point of the requested discovery is to find a viable claim.  Mot. at 11 n.3. Although Plaintiffs now declare that "the operative complaint stands on its own," *id.*, they do not explain why they said precisely the opposite just a few weeks prior.  Indeed, if Plaintiffs genuinely believed that the AC "stands on its own," this Motion would be unnecessary, because the PSLRA discovery stay would expire by its own terms when the Court rules on the pending motion to dismiss.  In other words, this Motion is—and always has been—an attempt to get discovery to buttress a complaint that even Plaintiffs expect to be dismissed.

## **ARGUMENT**

### I.   **THE STAY OF DISCOVERY CAN ONLY BE LIFTED IN EXCEPTIONAL CIRCUMSTANCES THAT DO NOT EXIST HERE**

When Congress adopted the PSLRA, it included a mandatory stay of discovery in securities class actions like this one.  In particular, the PSLRA provides that "all discovery . . . shall be stayed during the pendency of any motion to dismiss, unless the court finds . . . that particularized

5

discovery is necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B). The parties agree that this was an essential element of the PSLRA, which was intended "to prevent plaintiffs from filing [] frivolous lawsuits and using [discovery] as a vehicle . . . in the hopes of finding a sustainable claim." *Vivendi*, 381 F. Supp. 2d at 129-30; *see also* Mot. at 7 (acknowledging that a central purpose of the PSLRA is to prevent a plaintiff from using "discovery" to find "some sustainable claim not alleged in the complaint"). That is why Congress created "a strong presumption that *no* discovery should take place until a court has affirmatively decided that a complaint *does* state a claim under the securities laws." *Podany*, 350 F. Supp. 2d at 378 (emphases in original).[3]

The plain text of the PSLRA says that while a motion to dismiss is pending, the discovery stay may only be lifted if (i) a movant makes a "particularized" discovery request and (ii) relief from the stay is "necessary to preserve evidence" or "to prevent undue prejudice." 15 U.S.C. § 78u-4(b)(3)(B); *see also In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *1 (S.D.N.Y. June 26, 2006). Plaintiff bears the burden of showing that these "exceptional circumstances" exist, *Jiang v. Chirico*, 2024 WL 3104817, at *5 (S.D.N.Y. June 24, 2024), and

---

[3] Plaintiffs argue in passing that "Defendants have no standing to oppose Plaintiffs' request: Plaintiffs' subpoena would be directed to a third-party, *i.e.*, Surpique," and cite to the general proposition that "[a]s a general matter, only recipients of a subpoena have standing to seek a protective order quashing or modifying a subpoena." Mot. at 12. That is wrong. Every securities defendant has standing to oppose a motion to lift the PSLRA discovery stay that governs their case and that must be lifted by a court in the first instance before Plaintiffs even have the right to issue a third-party subpoena. *See, e.g.*, *Mori v. Saito*, 802 F. Supp. 2d 520, 522-23 & n.1 (S.D.N.Y. 2011) (considering defendants' opposition to plaintiffs' request to modify PSLRA discovery to allow "third-party subpoenas"); *Faulkner v. Verizon Commcn's, Inc.*, 156 F. Supp. 2d 384, 401-06 (S.D.N.Y. 2001) (denying plaintiffs' request to modify PSLRA discovery stay to issue third-party subpoena after considering securities defendant's opposition motion, at Dkt. 13).

6

"[t]he burden of establishing the need for a partial lifting of the discovery stay, not surprisingly, is a heavy one." *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005).[4]

### A.      There Is No Risk of Losing Documents

There is no serious argument here that this subpoena is necessary to preserve evidence. *First*, Plaintiffs' argument that "Surpique Holdings Limited—the parent entity—has begun the process of dissolution" in the United Kingdom is a red herring. *See* Mot. at 3, 14-15. As discussed during the pre-motion conference, and set forth in Surpique's opposition papers, the entity that holds the requested documents—Surpique LP—is a Delaware entity that is in no danger of dissolution. *See* Surpique Opp. Section IV.C. Nor is Surpique Holdings even being dissolved. *Id.* *Second*, Plaintiffs assert that Surpique has "already lost documents it previously had access to" due to "lost access" to a "virtual data room." *See* Mot. at 3, 15. But as explained in Surpique's opposition, it maintains a copy of that data room. *See* Surpique Opp. Section IV.C. *Third*, Plaintiffs' request is limited to material that Surpique produces to the JOLs, and Surpique has agreed to preserve those documents for at least three years and is willing to further extend if Plaintiffs' claims somehow remain pending three years from now. *Id.* This should be more than sufficient, particularly given the strong likelihood, as Plaintiffs admit, that the AC cannot survive dismissal. In short, there is absolutely no credible basis to suggest that the PSLRA stay needs to be lifted to preserve these documents.

---

[4] These rules apply equally to party and non-party discovery. *See Mori*, 802 F. Supp. 2d at 527 (denying request to issue third-party subpoena because "the PSLRA makes no distinction between discovery sought from non-parties as opposed to parties"); *Fisher v. Kansas*, 2006 WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2006) ("To the extent that this statute prohibits discovery of parties, it bars discovery of non-parties as well."); *In re Refco, Inc.*, 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006) ("As a general matter, the mere fact that documents have been provided to a third party does not entitle plaintiffs to a modification of the stay to obtain those documents."); *Faulkner*, 156 F. Supp. 2d at 403-06 (permitting parties to "circumvent" the statute by requesting documents from non-parties would "thwart the underlying policies of the PSLRA").

### B.    Plaintiffs Fail To Establish Undue Prejudice

Plaintiffs likewise have not demonstrated any "undue prejudice" that would warrant lifting the PSLRA stay. "Undue prejudice" is "improper or unfair treatment amounting to something less than irreparable harm." *Chirico*, 2024 WL 3104817, at *5 (citing *Vivendi*, 381 F. Supp. 2d at 130). Courts in this District have stated that "'exceptional circumstances' must exist in order to justify lifting the stay." *Id.* (quoting *In re AOL Time Warner, Inc. Sec. Litig.*, 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003)). No such circumstances exist in this case.

### 1.    Hypothetical (And Counterfactual) Claims For Competing Insurance Proceeds Do Not Constitute Undue Prejudice

Plaintiffs assert that the JOLs are after "the same limited insurance proceeds" as Plaintiffs, and so if "the liquidator . . . is the first to the finish line, there will be nothing left for Plaintiffs." Mot. at 1-2. Plaintiffs are wrong on the facts and law.

On the facts, Plaintiffs are wrong that the same insurance policies apply to the claims here. ECF No. 64, Hrg. Tr. 14:19-15:3. The claims in this lawsuit relate to statements made between February 2022 and August 2023, ECF No. 34 ¶¶ 284-454, while the JOLs are investigating the sale of Farfetch's operating subsidiaries to Surpique in December 2023 and January 2024, ECF No. 61-1, at 7 ¶ 20; *id*. at 11 ¶ 39.[5]    But more to the point, ***there is no separate proceeding*** that could possibly be competing for funds even if there was overlapping insurance. Indeed, as counsel for the JOLs stated during the pre-motion conference, "[t]he joint liquidators are at an early stage of the investigation, have not filed any claims against Surpique or anyone else, either in the United

---

[5] The Individual Defendants have repeatedly offered their understanding that different coverage applies based on the different time period and subject matter. *See* ECF No. 57, at 3; ECF No. 64, Hrg. Tr. 14:19-15:3. As the party with the burden, Plaintiffs must do more than ignore that and declare the opposite to be true.

States or in the Cayman Islands. And in some respects, we're behind the class action plaintiffs, who already have a claim on file and a motion to dismiss briefing." ECF No. 64, Hrg. Tr. 5:9-14.

On the law, even if there were a competing lawsuit that was somehow subject to the same insurance policies, this still would not constitute undue prejudice under the PSLRA. Courts in this District routinely reject motions to lift the PSLRA stay even where there are, in fact, multiple lawsuits competing for the same insurance funds. *E.g.*, *Chirico*, 2024 WL 3104817, at *7 (finding no undue prejudice even if securities plaintiffs "may well be in competition with plaintiffs in the [parallel] Actions for a limited pool of funds" and the plaintiffs in the parallel suits were receiving access to discovery ahead of the securities plaintiffs). Indeed, the framework Congress created with the PSLRA treats securities class actions differently from other types of litigation. *Id.* (explaining that a securities litigation trailing other proceedings does not constitute prejudice, because "[d]elay is an inherent part of every stay of discovery required by the PSLRA") (quoting *Smith Barney*, 2006 WL 1738078, at *2). And as another court in this District observed, "[i]f the stay of discovery . . . were lifted every time a third party, not subject to the stay, was engaged in settlement discussions with the defendant, then the 'undue prejudice' provision would essentially eviscerate the stay requirement. That is not what Congress intended." *Refco*, 2006 WL 2337212, at *3.

Rather than address the law in this District, Plaintiffs point to a case from the Eastern District of Michigan to argue that undue prejudice exists when plaintiffs risk being left "with nothing if this litigation does not keep pace with the bankruptcy." Mot. at 13 (citing *In re Delphi Corp.*, 2007 WL 518626, at *7 (E.D. Mich. Feb. 15, 2007)). Even if that were the law in this Circuit—it is not—*Delphi* does not present "a similar situation" to the facts here. Mot. at 13. In *Delphi*, which involved hundreds of millions of dollars' worth of sham transactions and accounting

9

irregularities, leading to multiple criminal investigations by the FBI, U.S. Postal Inspector, and the Department of Justice, defendants had already entered into settlements with certain governmental agencies, and "extensive settlement negotiations [were] currently taking place" in bankruptcy proceedings between several parties and the debtor. *Delphi*, 2007 WL 518626, at *1-3. The *Delphi* court further noted that "several of the Defendants in this case ha[d] already consented to substantial money judgments in the SEC case," which heightened the risk that plaintiffs "may not be able to recover from those Defendants in this action because of the substantial consent judgments they have taken in the SEC case." *Id.* at *7. Here, there is no other lawsuit in existence that could even theoretically be competing with Plaintiffs' securities class action. If anything, as the JOLs' counsel argued during the pre-motion conference, the present action is significantly advanced compared to any hypothetical claims that may or may not be filed by the JOLs. ECF No. 64, Hrg. Tr. 5:9-14. Indeed, this action would be even further along had Plaintiffs not delayed filing their amended complaint or briefing on the motion to dismiss.

### 2.    Plaintiffs' Ability to Make Informed Litigation Decisions Is Not Prejudiced By The Stay

Plaintiffs next argue that they will be prejudiced unless they can subpoena Surpique because they will be "depriv[ed]" of the "ability to make informed litigation decisions," particularly "as it relates to . . . settlement strategies" in a "rapidly shifting landscape." Mot. at 1-2, 12, 14. The problem with this argument is that Plaintiffs never explain what decisions they need to make or how the landscape is supposedly shifting "rapidly." In any event, courts in this District have repeatedly rejected this exact reasoning, finding that a desire to be more informed does not qualify as "undue prejudice" when a complaint still has not survived a motion to dismiss. *See, e.g.*, *Refco*, 2006 WL 2337212, at *2 ("Plaintiffs' inability to gather evidence for settlement negotiations or to plan a litigation strategy is not evidence of undue prejudice."); *In re Lottery.com,*

*Inc. Sec. Litig.*, 2024 WL 5226400, at *2-3 (S.D.N.Y. Dec. 26, 2024) (plaintiffs "claim[ing] that they need the information for settlement discussions" does not constitute undue prejudice); *AOL*, 2003 WL 21729842, at *2 (no prejudice when defendant was engaged in ongoing settlement discussions with other parties based on discovery sought by securities plaintiffs). And, more to the point, there is no "rapidly shifting landscape" here. Plaintiffs lift that language from inapposite cases where there were multiple cases with advanced or imminent settlement discussions and/or cases that (unlike this one) included claims that were not subject to the PSLRA stay in the first place. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (cited Mot. at 8, 13) (parties in multiple proceedings before the same judge ordered "to arrange to pursue settlement discussions"); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2009 WL 4796169, at *2-3 (S.D.N.Y. Nov. 16, 2009) (cited Mot. at 14) (consolidated action included "ERISA and derivative actions, as to which the PSLRA stay d[id] not apply").[6]

### C.    Plaintiffs' Request Is Not Particularized

Plaintiffs' far-reaching document request exceeds the limit of any "particularized" discovery allowed under the PSLRA. "A request is considered 'particularized' for purposes of the PSLRA when it is directed at specific persons and identifies specific types of evidence that fall within its scope." *Mori*, 802 F. Supp. 2d at 523. Further, to be particularized, a plaintiff must "explain why the[] documents are relevant to the securities fraud claims before th[e] Court."

---

[6] *See also Waldman v. Wachovia Corp.*, 2009 WL 86763, at *2 (S.D.N.Y. Jan. 12, 2009) (cited at Mot. 8, 13) (prior settlement(s)); *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181, 183-84 (S.D.N.Y. 2004) (cited at Mot. 12, 14) (same); *Singer v. Nicor*, 2003 WL 22013905, at *1 (N.D. Ill. Apr. 23, 2003) (cited Mot. at 14) (government had already levied $27 million fine against defendant in related proceeding); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 544 (N.D. Ohio 2004) (cited Mot. at 14) (concerns of witness tampering amidst criminal investigations).

11

*Lottery.com*, 2024 WL 5226400, at *2.  Courts deny requests to modify the PSLRA discovery stay if the discovery sought is too "expansive and insufficiently particularized" or "risks producing documents irrelevant to the present action."  *Id.*  Here, Plaintiffs are seeking an as-yet undefined universe of documents that have yet to be produced and that will inarguably contain documents irrelevant to the present action.  The request is in no way particularized.

Plaintiffs request to subpoena Surpique not only for the "over 16,000 document[s]" it allegedly has already produced,[7] but also for every document that "will be" produced at any point in the future regardless of subject matter or time period.  *See* Mot. at 1, 7, 9-10.  Plaintiffs argue that their open-ended, unbounded request is "clearly defined," Mot. at 9, but all Plaintiffs have done clearly is articulate a boundless and facially improper request.  The JOLs have requested from Surpique, among other things, (i) "***the complete server*** on which ***all*** Documents and Communications constituting Farfetch's books and records were maintained," (ii) every document in the "data room established by Farfetch in connection with . . . the Coupang sale," (iii) every single document "concerning the Audit Committee from January 1, 2019 to February 9, 2024," and (iv) all documents "constituting corporate records, meeting minutes, notes, internal memoranda, analyses, factual research, due diligence, and presentations of the Farfetch Group concerning Farfetch."  *See* ECF No. 61-2, at 46-55.  Even if those requests are narrowed—as they should be—this set of material goes far beyond the issues in this case, both in time period and subject matter.[8]  *See Lottery.com*, 2024 WL 5226400, at *2 (finding "14,583 pages of documents

---

[7] Moreover, the "over 16,000 document[s]," Mot. at 7, appears to refer to documents produced by other parties to the JOLs, and not Surpique.  *See* ECF No. 64, Hrg. Tr. 5:2-8.

[8] Plaintiffs assert that the "JOLs seek documents and communications relating to issues directly relevant to Plaintiffs' claims in this action, including, *inter alia*, documents related to Farfetch's financial information and statements, board and committee documents, acquisitions, and public statements."  Mot. at 6-7.  But Plaintiffs elide that the JOLs' requests extend well beyond the scope of any of their securities fraud claims, and nowhere explain how requests for irrelevant

produced" in a parallel action too "expansive and insufficiently particularized" to justify modifying PSLRA discovery stay); *Faulkner*, 156 F. Supp. 2d at 404 (finding discovery not sufficiently particularized where request "amount[ed] to more than 45,000 pages of documents"); *id.* at 384 (requests for documents that "will be produced in the future" are not "particularized").[9] For example, Plaintiffs challenge a set of statements made between February 24, 2022, and August 17, 2023, but many of the JOLs' requests seek documents "from January 1, 2019 through February

---

intercompany transactions, granular operating costs and expenses, and sale of assets to Surpique, among other things, ECF No. 16-2, at 46-55, would not "risk[] producing documents irrelevant to the present action." *Lottery.com*, 2024 WL 5226400, at *2; *see also Faulkner*, 156 F. Supp. 2d at 404 (denying request where documents produced in a separate action "are not relevant to the securities fraud claim here"). By seeking all "documents produced (or to be produced) by Surpique" to the JOLs "in the Cayman Proceeding," Mot. at 3, Plaintiffs inevitably include irrelevant materials, undermining the particularity of their request. *See Fannie Mae,* 362 F. Supp. 2d at 38-39 (when "not all of the documents produced" are "relevant to this litigation," that "alone demonstrates a lack of particularity"); *In re Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1181 (C.D. Cal. 2008), *abrogated on other grounds by United States v. State Water Res. Control Bd.*, 988 F.3d 1194 (9th Cir. 2021) ("Because the lack of particularity in Plaintiffs' discovery requests precludes exception from the PSLRA stay, the Court declines to address the other prongs of the test.").

[9] Plaintiffs' cases on particularization, many of which are not from this Circuit, are inapposite, because in each the discovery sought had already been collected, reviewed, and produced, rather than requests for an undefined set of documents that had yet to be produced. *See Kaplan v. S.A.C. Cap. Advisors, L.P.*, 947 F. Supp. 2d 368, 370 (S.D.N.Y. 2013) (cited Mot. at 9) (documents already provided to government authorities); *Bank of Am.*, 2009 WL 4796169, at *3 (documents "already produced in the related matters"); *Courter v. CytoDyn, Inc.*, 2022 WL 621535, at *2 (W.D. Wash. Mar. 3, 2022) (cited Mot. at 9) (discovery "already assembled and produced"); *In re FirstEnergy Corp. Sec. Litig.*, 2021 WL 2414763, at *3-5 (S.D. Ohio June 14, 2021) (cited Mot. at 9) ("already-produced" discovery found to be particularized); *Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 915-916 (E.D. Wis. 2013) (cited Mot. at 9) (request "limited solely to relevant materials that have already been produced"); *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) (cited Mot. at 9) (requesting only "documents previously produced"). In any event, even the fact that documents have already been produced does not automatically render a request particularized. *See In re Elan Corp. Sec. Litig.*, 2004 WL 1303638, at *1 (S.D.N.Y. May 18, 2004) (PSLRA "does not provide an exception to the mandatory stay when the documents sought have already been produced outside the litigation"); *Rampersand v. Deutsche Bank Sec., Inc.*, 381 F. Supp. 2d 131, 133 (S.D.N.Y. 2003) (rejecting argument that a "categorical exception" exists to the PSLRA stay when documents have already been produced elsewhere).

13

9, 2024." *See* ECF No. 61-2, at 46-55 (document requests 2, 3, 7, 8, 10, 11, 12, 13, 14, 15, 19, 20, 21, 22, 25, 26, 49, 50, 51, 52, and 79 using this time-period for various categories of documents). Plaintiffs would not be entitled to such expansive discovery at any point in a securities case,[10] and is not "particularized" to this case, as required.  15 U.S.C. § 78u-4(b)(3)(B).

## II.    PLAINTIFFS' UNDUE BURDEN ARGUMENTS ARE INCORRECT AND IRRELEVANT

Plaintiffs argue that their request will produce only a "minimal" burden on Surpique, namely, because "any necessary privilege review will have already occurred by the time it would produce any documents to Plaintiffs," and Surpique has already agreed to "prepar[e] a privilege log" for its production to the JOLs.  Mot. at 2-3, 11-12.  Although Surpique will address the substantial burden it would face in responding to Plaintiffs' request, the Individual Defendants note that "[t]he proper inquiry under the PSLRA is whether the plaintiff would be unduly prejudiced by the stay, not whether the defendant would be burdened by lifting the stay."  *Mori*, 802 F. Supp. at 527 (quoting *Smith Barney*, 2006 WL 1738078, at *3).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion in its entirety.

---

[10] *See, e.g.*, *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 111 (2d Cir. 1998) (upholding district court's decision to deny discovery request for documents outside the class period in securities fraud action because "the information sought was only minimally relevant to plaintiffs' allegations that [defendant] made false statements during the class period"); *In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 75 (S.D.N.Y. 2007) (denying document requests in securities class action as "far too broad," "unnecessary and irrelevant" because "the subpoenas are either unlimited in time or at least not addressed to the proposed class period"); *see also Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 7180662, at *3 (N.D. Cal. Nov. 16, 2015) (limiting pre-Class Period discovery in Section 10(b) case to just one year before Class Period, because "2010 discovery is not reasonably calculated to lead to discovery of admissible evidence about 2012 forecasting").

Dated: May 22, 2025
      New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Jeff G. Hammel*
    Jeff G. Hammel
    Jason C. Hegt
    Jooyoung Yeu
    1271 Avenue of the Americas
    New York, New York 10020
    Telephone: (212) 906-1200
    Facsimile: (212) 751-4864
    jeff.hammel@lw.com
    jason.hegt@lw.com
    jooyoung.yeu@lw.com

*Attorneys for Individual Defendants José Neves, Elliot Jordan, and Stephanie Phair*

15

## CERTIFICATION OF LENGTH PER LOCAL RULES

I, Jeff G. Hammel, an attorney admitted to practice before this Court, certify pursuant to Local Civil Rule 7.1 that according to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted pursuant to Local Civil Rule 7.1 is 5,114 words, which span 14 pages.

Dated: May 22, 2025
      New York, New York

By: */s/ Jeff G. Hammel*
Jeff G. Hammel
*jeff.hammel@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200