**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FARFETCH LIMITED SECURITIES LITIGATION | Case No.: 1:23-cv-10982-ER-KHP [rel. 1:24-cv-00532-ER] |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | |

**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY AND**
**FURTHER SUPPORT OF MOTION TO MODIFY THE PSLRA DISCOVERY STAY**

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................3

      A.    The Liquidator Has Live "Claims" against Defendants. ....................................3

      B.    Plaintiffs' "Particularized" Subpoena Will Not Shoulder Defendants or
            Surpique With "Undue" Burden. .........................................................................4

      C.    Defendants and Surpique Grossly Downplay the Risk of Evidentiary Loss and
            Spoliation. ...........................................................................................................7

      D.    Surpique's "Meet and Confer" Argument Lacks Credibility. .............................8

      E.    The PSLRA Does Not Prohibit Amendment of Pleadings but Instead Requires
            Plaintiffs to Plead "All Facts" in Support of Claims. ........................................8

III.  CONCLUSION.....................................................................................................9

## I.    INTRODUCTION

Plaintiffs satisfy the requirements for modifying the PSLRA's automatic discovery stay. The discovery they seek is "particularized" and necessary to preserve evidence and prevent "undue prejudice." *See In re Equifax Inc.*, No. 1:17-CV-3463-TWT, 2018 WL 3023278, at *1 (N.D. Ga. June 15, 2018) (internal quotations omitted). Despite collectively submitting 35 pages of briefing in opposition to Plaintiffs' motion, Defendants and Surpique L.P. do not contest Plaintiffs' core argument: that the liquidator currently pursuing Defendants is acting in the interests of Farfetch's former note holders to the detriment of Farfetch's former equity holders. This dynamic confirms the potential prejudice Plaintiffs and the putative class will incur as former shareholders, especially as the liquidator's ongoing prosecution of claims wastes valuable insurance proceeds that would otherwise be available to satisfy any judgment obtained by Plaintiffs. While the liquidator advances its claims through discovery, Plaintiffs are being left in the dark and deprived of any opportunity to similarly develop their case and protect their potential recovery.

Instead addressing this primary aspect of the motion, Defendants and Surpique level baseless accusations of Plaintiffs attempting to end-run the PSLRA's ban against frivolous actions. But Plaintiffs' case is not even remotely comparable to the "strike suits" that Congress had in mind when initially enacting the statute. In truth, Plaintiffs present a compelling claim of securities fraud that stands only to grow in strength once discovery commences. Defendants know this, which is why they are doing everything they can to keep Farfetch's books and records hidden—not just from Plaintiffs but all interested parties in the matter including the Cayman Islands liquidator pursuing breach of duty claims on behalf of the company's former note holders.

Defendants and Surpique also rely on self-serving claims that no discovery has been lost (yet) and that the relief sought would trigger a near-insurmountable privilege review, all of which collectively tips the scales in favor of denying the motion. These arguments are unsupported by

the factual record. Bankruptcy filings contain attorney declarations and emails showing that Surpique previously admitted it lost access to a virtual data room containing Farfetch's historical financial records and other critical materials. Surpique also recently faced compulsory liquidation proceedings due to an "inadvertent" statutory filing mistake. While Surpique might promise to preserve records going forward, that commitment is not worth much given that Surpique has already demonstrated an inability to properly oversee important information and comply with basic statutory filing requirements.

Surpique's "burden" argument also lacks credibility. The production currently contains approximately 100,000 documents (but is likely to be winnowed down substantially as "negotiations" with the liquidator continue). Whatever Surpique ultimately agrees to produce to the liquidator will be reviewed for privilege, thereby greatly reducing any amount of work that would need to be completed for reproducing the materials to Plaintiffs. To the extent any second-level review would need to be done, ESI review platforms (*e.g.*, Relativity) make quick work out of this. Surpique's counsel at Kirkland & Ellis are familiar with e-discovery tools and could surely "filter" the production to exclude any communications to/from Farfetch's counsel. Document productions in complex commercial litigations are routinely much, much larger than the production being contemplated here. Surpique and its lawyers cannot credibly claim "undue burden."

Plaintiffs make the necessary showing to justify relief from the PSLRA's discovery stay. For all the briefing Defendants and Surpique submit, none of their arguments warrants denying Plaintiffs' motion. Accordingly, Plaintiffs respectfully request that the Court grant the motion in its entirety and allow Plaintiffs to issue their proposed subpoena. *See* Dkt. No. 61-3.

II.    **ARGUMENT**

A.    **The Liquidator Has Live "Claims" against Defendants.**

Defendants and Surpique make much of the fact that the liquidator has not filed any "separate proceeding" (Dkt. No. 68 at 8) or "identified any potentially viable claims" (Dkt. No. 67 at 11) that could possibly compete with Plaintiffs for Farfetch's remaining assets (*i.e.*, insurance proceeds). Their argument blithely disregards the practicalities of the liquidator's actions. Since this debacle began, Wilmington Trust (as Trustee for $400 million of Farfetch's notes) petitioned the Grand Court of the Cayman Islands to force Farfetch into liquidation proceedings. *See* Dkt. No. 61-1 (Winding-Up Petition). That petition explained in chapter-and-verse the grounds for its belief that Defendants committed various breaches of duty against Farfetch's note holders. This included Farfetch's abrupt financial collapse whereby the company reported over $800 million of cash and equivalents in August 2023 only to delay quarterly reporting in November 2023 and ultimately announce bankruptcy in December 2023 (with the additional revelation that "holders of its Class A and B ordinary shares and its convertible notes . . . will not recovery any of their outstanding investments"). *Id*. at 8-9. Importantly, the petition accused Defendants of "serious deficiencies in the company's governance and management" pertaining to Farfetch's sale to Surpique (and by extension Coupang Inc.) which allowed Defendants to write-off "over US$1 billion of debt obligations" and effectively secure releases for "value-destructive steps . . . taken prior to the December 2023 Announcement [bankruptcy]." *Id*. at 11-12.

Wilmington Trust's Winding-Up Petition has proven to be just the tip of the iceberg. In addition to the Cayman Islands, Wilmington Trust and the Joint Official Liquidators (the "JOLs") have been pursuing Defendants in Delaware as well as various courts in the United Kingdom. The bankruptcy filings make clear that Defendants and Surpique have uniformly stonewalled the JOLs despite the authority they hold under Cayman Islands law. *See*, *e.g.*, Dkt. No. 61-2 at 2 (¶1). This

approach is what led to the subpoena proceedings giving rise to Plaintiffs' instant motion. Thus, while Defendants and Surpique argue there are no claims against which Plaintiffs are competing, the true state of affairs shows that Plaintiffs have already fallen behind (and will fall further behind) claimants in bankruptcy proceedings that will leave them "unfairly disadvantaged." *In re Delphi Corp.*, No. 05-MD-1725, 2007 WL 518626, at *8 (E.D. Mich. Feb. 15, 2007) ("Without discovery of documents already made available to federal authorities and to interested parties in the Delphi bankruptcy action, Plaintiffs would be unfairly disadvantaged in pursuing litigation and settlement strategy.").

**B.    Plaintiffs' "Particularized" Subpoena Will Not Shoulder Defendants or Surpique With "Undue" Burden.**

Plaintiffs' subpoena requests simply "[a]ll non-privileged documents already produced or to be produced to Farfetch's Joint Official Liquidators." Dkt. No. 61-3. This is meant to capture whatever non-privileged material Surpique ultimately produces to the JOLs in the course of the pending subpoena proceedings. Consequently, the demand cannot be considered overly broad because by definition it is limited to whatever agreement the JOLs and Surpique strike in the course of their negotiations before U.S. Bankruptcy Court Judge Craig T. Goldblatt. *See In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058 (DC), 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) (request particularized and no additional burden on defendants where "they have already collected, reviewed, and organized the documents for production in other proceedings, and the burden of making another copy for plaintiffs here will be slight"); *In re Metro. Sec. Litig.*, No. CV-04-25-FVS, 2005 WL 940898, at *2-3 (E.D. Wash. Mar. 31, 2005) (lifting PSLRA stay to allow plaintiffs to obtain documents "provided to the Examiner in Bankruptcy Court" as "defendants will not be unduly burdened by producing the documents to Plaintiffs"); *see also In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D.

- 4 -

Ohio 2004) (defendants "cannot, and indeed d[o] not, allege any burden from providing documents that it has already reviewed and compiled.").

Surpique is represented by one of the country's preeminent firms, Kirkland & Ellis. The notion that Plaintiffs' subpoena would stymie their attorneys and deplete their resources rings hollow. The current universe of potentially responsive material contains 100,000 documents. *See* Dkt. No. 67 at 19. But even a review of that size is relatively small in today's world, especially for large corporate law firms experienced in complex commercial litigation. *See*, *e.g.*, *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 416CV00119HSGKAW, 2018 WL 4613151, at *7 (N.D. Cal. Sept. 26, 2018) ("100,000 documents may not be a particularly large or burdensome amount, especially compared to the average quantity of discovery exchanged or produced in patent litigation cases"). Moreover, Surpique will be collecting, reviewing, and producing these documents regardless of Plaintiffs' motion because it was already ordered to do so by the U.S. Bankruptcy Court in connection with the JOLs' subpoena and motion to compel.

Surpique claims (without any factual support) that producing documents to Plaintiffs will entail more than a "simple, quick copy" of the materials it sends to the JOLs. Dkt. No. 67 at 19-20. Notably, Surpique's attorney declaration does not explain how Plaintiffs' subpoena will trigger an additional "entirely new and highly nuanced privileged review"; instead, counsel states only that negotiations with the JOLs are "ongoing" and that the "final search protocol remans pending" with the "timeline for production" still uncertain. Dkt. No. 69 at ¶¶4-5. This does not suffice for proof of burden (let alone "undue" burden). *See Exp.-Imp. Bank of Republic of China v. Democratic Republic of Congo*, No. 16-CV-4480 (JMF), 2022 WL 1452523, at *1 (S.D.N.Y. May 9, 2022) (denying motion to quash where movant "provides no support for that assertion [undue burden], such as an affidavit or other evidence, and identifies no specific harm that would result

from disclosure"); *Moll v. Telesector Res. Grp., Inc.*, No. 04-CV-0805 (SR), 2016 WL 6093995, at *2 (W.D.N.Y. Oct. 19, 2016) ("[T]he burden of persuasion on a motion to quash a subpoena is borne by the movant."); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) ("'A party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'") (quoting 9 James Wm. Moore et al., Moore's Federal Practice - Civil ¶45.51[4] (3d ed. 2009)).

Any privilege review necessary could be negotiated by, for example, removing from production any communication sent by or between Farfetch's attorneys. This is easily done by filtering the production using the ESI's metadata (specifically, removing from production any communication in which a Farfetch attorney was a sender or recipient). This is neither novel nor hard to do and certainly does not amount to "an entirely new and highly nuanced privilege review." Dkt. No. 67 at 19-20. In fact, this sort of filtering is commonly done using ESI platforms such as Relativity and should pose no problem to Surpique's team of attorneys, especially because they will already be conducting a privilege review in connection with its production to the JOLs. In sum, Surpique may encounter "some" burden, but it will be "slight" and certainly outweighed by the prejudice Plaintiffs will incur absent the relief sought. *See In re Equifax Inc. Sec. Litig.*, No. 1:17-CV-3463-TWT, 2018 WL 3023278, at *5 (N.D. Ga. June 18, 2018) (modifying stay where "[a]lthough Equifax will undoubtedly experience some burden in engaging in these planning activities for the securities action, the Court finds that it is a slight burden when put into the context of this entire complex litigation due to the overlap that these preparations will have with those of the MDL").

C. **Defendants and Surpique Grossly Downplay the Risk of Evidentiary Loss and Spoliation.**

The JOLs, *who are legally entitled to Farfetch's books and records*, have spent the better part of the past year fighting to obtain documents from Defendants and Surpique. As the JOLs told the U.S. Bankruptcy Court, "Despite having effectively purchased Farfetch's entire business following the Company's financial implosion in late 2023, Surpique has refused to produce any documents or communications to the Foreign Representatives. Instead, Surpique has at every turn attacked, blocked, and circumvented the JOLs' efforts to obtain core documents—including Farfetch books and records and communications that are maintained on a Farfetch server that Surpique possesses." Dkt. No. 61-2 at 2 (¶1). Making matters worse is the reality that Surpique *already* lost relevant information (according to the JOLs' counsel) and has proven itself incapable of timely filing paperwork necessary to avoid compulsory liquidation proceedings. The risk of loss or, even worse, spoliation is real.

Defendants and Surpique gloss over Plaintiffs' concern by offering to preserve relevant information for "three years." Dkt. No. 67 at 12; Dkt. No. 68 at 7. This amounts to little, if anything, considering what has already transpired. Defendants and Surpique have demonstrated a willful refusal to comply with the simplest of requests from the JOLs, necessitating a subpoena along with a motion to compel. *See* Dkt. No. 61-4 at 2-3 (" . . . Absent Court intervention, the Foreign Representatives' investigation into Farfetch's financial collapse will continue to be materially impeded by Surpique's refusal to produce historic documents and communications that are plainly responsive to the subpoena and highly relevant to the Foreign Representatives' mandate."). On top of that, Surpique revealed to the JOLs that it lost access to a virtual data room containing Farfetch's financial records and therefore "would not produce documents from the data room." *See* Dkt. No. 61-2 at 15 (¶43). And, to make matters even worse, Surpique was almost involuntarily pushed into

liquidation ("compulsory dissolution proceeding") due to "inadvertently miss[ing] a statutory filing deadline." Dkt. No. 69 at ¶8.

Although Surpique claims to have resolved the "statutory filing" issue and appears to have somehow regained access to the financial records from the virtual data room (*see id.* at ¶¶9, 12), mistakes have already been made. These mistakes evidence a heightened risk of evidentiary destruction. Plaintiffs cannot sit idle hoping that Defendants and Surpique will not err again or, if they do, that the harm will not be irreparable. *See In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004) (lifting stay where defendant's "divestitures create a reasonable concern that documents may be lost despite Royal Ahold's best efforts to preserve them").

### D.    Surpique's "Meet and Confer" Argument Lacks Credibility.

Surpique faults Plaintiffs for failing to meet-and-confer prior to filing the instant motion. Dkt. No. 67 at 8-9. Given Surpique's documented history of uncooperativeness (with the JOLs), there was realistically no scenario in which any meet-and-confer would have obviated the need to file this motion. Had there been even a remote chance of any agreement, Surpique would have contacted Plaintiffs after speaking with Defendants in advance of the pre-motion conference. Indeed, Defendants' counsel spoke with Surpique's counsel prior to the pre-motion conference, as confirmed during the pre-motion conference. *See* Dkt. No. 64 at 10:3-10:15 (Hearing Transcript). Consequently, the notion that Surpique was caught off-guard or somehow disadvantaged by the chronology of events leading to this motion falls flat.

### E.    The PSLRA Does Not Prohibit Amendment of Pleadings but Instead Requires Plaintiffs to Plead "All Facts" in Support of Claims.

Defendants cannot prevent Plaintiffs from incorporating information obtained from this discovery motion into future pleadings. *See* Dkt. No. 68 at 5. While they accuse Plaintiffs of "backtrack[ing]" on the sufficiency of the operative pleading currently on file (*id.*), the PSLRA

- 8 -

requires plaintiffs to "state with particularity *all facts*" supporting their allegations of fraud. 15 U.S.C. §78u-4(b)(1)(B) (emphasis added). Thus, if additional relevant information is obtained by way of the subpoena to Surpique, Plaintiffs are duty-bound to present that information to the Court.

"[I]t is also not the case that, as Defendants argue, permitting the amendment would run afoul of the policies underlying the PSLRA by permitting information obtained in discovery to be used to amend the complaint, despite the PSLRA's discovery stay. There is not a categorical bar on amending PSLRA complaints." *Lickteig v. Cerberus Cap. Mgmt., L.P.*, No. 1:19-CV-5263-GHW, 2020 WL 7629876, at *6 (S.D.N.Y. Dec. 22, 2020); *see also In re Pfizer Inc. Sec. Litig.*, No. 04-cv-9866 (LTS)(HBP), 2012 WL 983548, at *2-3 (S.D.N.Y. Mar. 22, 2012) (granting leave to amend PSLRA complaint using information obtained during discovery and noting that "[c]ourts routinely grant leave to amend when a plaintiff seeks to refine the complaint to reflect evidence obtained during discovery"). In any event, if Defendants truly believed Plaintiffs' case was as meritless as they claim, there would be no harm in allowing Plaintiffs to receive the documents they seek as they would show an absence of any wrongdoing.

## III.    CONCLUSION

Plaintiffs seek particularized discovery to avoid undue prejudice and preserve evidence. That is all that is required to modify the PSLRA's discovery stay. *See In re Equifax Inc. Sec. Litig.*, 2018 WL 3023278, at *1. Absent Plaintiffs' requested discovery, they risk being left holding the bag as the liquidator advances its claims through discovery. Defendants' and Surpique's contrary arguments do not outweigh Plaintiffs' showing. Respectfully, the Court should grant Plaintiffs' motion in its entirety.

[*Signature blocks on following page*]

Dated: May 29, 2025

Respectfully submitted,

LEVI & KORSINSKY, LLP

/s/ *Adam M. Apton*

Adam M. Apton
33 Whitehall Street, 17th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
aapton@zlk.com

*Counsel for Co-Lead Plaintiff Fernando Sulichin and Co-Lead Counsel for the Class*

-and-

Lucas E. Gilmore (admitted *pro hac vice*)
Reed R. Kathrein (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
lucasg@hbsslaw.com
reed@hbsslaw.com

-and-

Nathan Emmons (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4957
Facsimile: (708) 628-4950
nathane@hbsslaw.com

*Counsel for Co-Lead Plaintiff Yuanzhe Fu and Co-Lead Counsel for the Class*

- 10 -