**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FARFETCH LIMITED SECURITIES LITIGATION | Case No.: 1:23-cv-10982-ER-KHP [rel. 1:24-cv-00532-ER] |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **<u>ORAL ARGUMENT REQUESTED</u>** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**
**<u>THE SECOND AMENDED CLASS ACTION COMPLAINT</u>**

LATHAM & WATKINS LLP

Jeff G. Hammel
Jason C. Hegt
Jooyoung Yeu
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Attorneys for Individual Defendants*
*José Neves, Elliot Jordan, and Stephanie*
*Phair*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT.........................................................................................................................2

I.      PLAINTIFFS FAIL TO PLEAD ANY ACTIONABLE MISSTATEMENT ....................2

II.     PLAINTIFFS DO NOT PLEAD A STRONG INFERENCE OF SCIENTER ..................6

III.    THE SAC FAILS TO PLEAD SCHEME LIABILITY......................................................10

IV.     PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED.............10

CONCLUSION......................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Avon Pension Fund v. GlaxoSmithKline PLC*,
343 F. App'x 671 (2d Cir. 2009) ...............................................................................1, 6

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)..................................................................................................5

*Bay Harbour Mgmt. LLC v. Carothers*,
282 F. App'x 71 (2d Cir. 2008) ...............................................................................1

*Buhrke Fam. Revocable Trust v. U.S. Bancorp*,
726 F. Supp. 3d 315 (S.D.N.Y. 2024)......................................................................10

*Damri v. LivePerson, Inc.*,
772 F. Supp. 3d 430 (S.D.N.Y. 2025)......................................................................6

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011).....................................................................7

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012)......................................................................8

*Holbrook v. Trivago N.V.*,
2019 WL 948809 (S.D.N.Y. Feb. 26, 2019), *aff'd sub nom.*
*Shetty v. Trivago N.V.*, 796 F. App'x 31 (2d Cir. 2019)..........................................8

*Howard v. Everex Sys.*,
228 F.3d 1057 (9th Cir. 2000) .................................................................................7

*In re Adient plc Sec. Litig.*,
2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020).............................................................3

*In re AT&T/DirecTV Now Sec. Litig.*,
480 F. Supp. 3d 507 (S.D.N.Y. 2020), *aff'd sub nom.*
*Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*,
2022 WL 17587853 (2d Cir. Dec. 13, 2022) ..........................................................10

*In re Elan Corp. Sec. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008)......................................................................7

*In re Express Scripts Holding Co. Sec. Litig.*,
  2018 WL 2324065 (S.D.N.Y. May 22, 2018), *aff'd sub nom.*
  *In re Express Scripts Holding Co. Sec. Litig.*, 773 F. App'x 9 (2d Cir. 2019) ..........................5

*In re Ferroglobe PLC Sec. Litig.*,
  2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020)...............................................................................9

*In re GeoPharma, Inc. Sec. Litig.*,
  411 F. Supp. 2d 434 (S.D.N.Y. 2006)..........................................................................................2

*In re Hut 8 Corp. Sec. Litig.*,
  2025 WL 2636150 (S.D.N.Y. Sept. 12, 2025)...............................................................................3

*In re Kandi Techs. Grp., Inc. Sec. Litig.*,
  2019 WL 4918649 (S.D.N.Y. Oct. 4, 2019)..................................................................................9

*In re SuperCom Inc. Sec. Litig.*,
  2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018).................................................................................9

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)....................................................................................................3, 5

*Janbay v. Canadian Solar, Inc.*,
  2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013),
  *aff'd* (2d Cir. Dec. 20, 2013)......................................................................................................8

*Johnson v. Sequans Communs. S.A.*,
  2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) .................................................................................2

*Jones v. Perez*,
  550 F. App'x 24 (2d Cir. 2013) ...................................................................................................3

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).........................................................................................................7

*Kravitz v. Tavlarios*,
  2020 WL 3871340 (S.D.N.Y. July 8, 2020), *aff'd*,
  2021 WL 5365582 (2d Cir. Nov. 18, 2021)................................................................................10

*Leone v. ASP Isotopes Inc.*,
  2025 WL 3484821 (S.D.N.Y. Dec. 4, 2025) ................................................................................8

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015)..........................................................................................9

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014).........................................................................................................4

*New Orleans Emp. Ret. Sys. v. Celestica, Inc.*,
   455 F. App'x 10 (2d Cir. 2011) ...........................................................................9

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..................................................................................5

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
   367 F. Supp. 3d 16 (S.D.N.Y. 2019)......................................................................9

*P. Stolz Fam. P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004)....................................................................................3

*Sachsenberg v. IRSA Inversiones Y Representaciones Sociedad Anonima*,
   339 F. Supp. 3d 169 (S.D.N.Y. 2018)....................................................................6

*Saraf v. Ebix, Inc.*,
   2024 WL 1298246 (2d Cir. Mar. 27, 2024)...........................................................7

*Slayton v. Am. Exp. Co.*,
   604 F.3d 758 (2d Cir. 2010)..................................................................................3

*Solow v. Citigroup, Inc.*,
   827 F. Supp. 2d 280 (S.D.N.Y. 2011)....................................................................4

*Steamfitters Local 449 Plan v. Skechers U.S.A., Inc.*,
   412 F. Supp. 3d 353 (S.D.N.Y. 2019), *aff'd sub nom.*
   *Cavalier Fundamental Growth Fund v. Skechers U.S.A., Inc.*,
   826 F. App'x 111 (2d Cir. 2020) ...........................................................................6

*Thesling v. Bioenvision*,
   374 F. App'x 141 (2d Cir. 2010) ...........................................................................5

*Tung v. Bristol-Myers Squibb Co.*,
   412 F. Supp. 3d 453 (S.D.N.Y. 2019)....................................................................6

*Venkataraman v. Kandi Techs. Grp., Inc.*,
   2021 WL 4952260 (S.D.N.Y. Oct. 25, 2021) ........................................................4

*Woodward v. Raymond James Fin., Inc.*,
   732 F. Supp. 2d 425 (S.D.N.Y. 2010)....................................................................7

*zCap Equity Fund LLC v. LuxUrban Hotels Inc.*,
   792 F. Supp. 3d 407 (S.D.N.Y. 2025)....................................................................8

**STATUTES**

15 U.S.C. § 78u-5(c) .................................................................................................2

# PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition confirms why the SAC should be dismissed with prejudice. Rather than supplement the claims the Court previously found deficient, Plaintiffs have narrowed their case to the single theory that Defendants publicly assured investors that Farfetch was "self-funding and did not need external capital" while secretly pursuing a strategic process to raise capital or sell the Company. The central problem with this theory is that Defendants never made any such statement. To the contrary, Farfetch's SEC filings expressly disclosed that the Company had a history of operating losses and substantial debt obligations, and might need to obtain additional financing. Plaintiffs offer no contemporaneous facts—no internal reports, no contrary data, and no particularized witness allegations—even suggesting that Defendants' statements about Farfetch's liquidity were false when made. At bottom, the SAC alleges that because Farfetch ultimately was placed into liquidation in early 2024, Defendants must have known that their financial projections going back to December 2022 were false. This is precisely the type of "fraud by hindsight" pleading that the Second Circuit has repeatedly rejected. *See Bay Harbour Mgmt. LLC v. Carothers*, 282 F. App'x 71, 75 (2d Cir. 2008). Moreover, Plaintiffs' theory—that Defendants amassed significant amounts of Farfetch stock while simultaneously orchestrating a fraud that caused them substantial financial losses—defies logic and binding precedent in this Circuit, which recognizes that such conduct is fundamentally inconsistent with fraudulent intent. *Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009).

After two rounds of amendments and detailed guidance from the Court, the SAC is weaker than its predecessor. It should be dismissed with prejudice.

---

[1] All internal citations and quotation marks are omitted, capitalized terms have the same meaning as in the Individual Defendants' Motion to Dismiss (ECF No. 80) (cited as "Mot. _"), and citations to "Ex. _" refer to the Declaration of Jason C. Hegt (ECF No. 81).

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD ANY ACTIONABLE MISSTATEMENT

Statements Defendants Never Made.  The Opposition repeatedly claims that Defendants conveyed that "Farfetch was self-funding and did not need external capital."  Opp. 1.  *See, e.g.*, *id.* at 1-2, 4, 7, 8-9, 12-13, 15, 17.  The core problem with this argument is that Defendants said no such thing.  Despite repeating this claim throughout the Opposition, Plaintiffs never identify a single statement in which Defendants said what Plaintiffs attribute to them—because there is none.

Instead, Plaintiffs offer their own subjective "interpretation" of what the Company's projections supposedly implied and then allege that to have been false, but Plaintiffs cannot plead securities fraud by reimagining Defendants' disclosures.  *Johnson v. Sequans Communs. S.A.*, 2013 WL 214297, at *16 (S.D.N.Y. Jan. 17, 2013).  Farfetch had a long, publicly disclosed history of operating losses and financing its operations with debt both before and during the Class Period. *See* ¶¶ 3, 44-50, 109; Mot. 4; Ex. 17 at 9.  The Company expressly warned that it might not "generate sufficient cash flow from operations" and that management "continually evaluated opportunities" to "obtain additional financing."  Ex. 3 at 13-14, 57; Ex. 12 at 13-14, 65, 100; Ex. 18 at 10.  Those are not assurances of self-funding; they are explicit disclosures of potential capital needs.  *See In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 449 (S.D.N.Y. 2006) (rejecting "Plaintiffs' interpretation" of disclosures as "not reasonable").

Protected Forward-Looking Statements.  The PSLRA safe harbor protects forward-looking statements identified as such and either accompanied by meaningful cautionary language or where plaintiff cannot show that the statements were made with "actual knowledge" that they were false. 15 U.S.C. § 78u-5(c); Order at 28 n.24.  Plaintiffs do not dispute this framework, *see* Opp. 9; Mot. 9-12, and instead advance two arguments—neither of which withstand scrutiny.

First, Plaintiffs contend that statements suggesting "sufficient liquidity" are not forward-

2

looking. Opp. 9-10.[2] The case law is to the contrary. The Company's statements that it "believes [] our sources of liquidity and capital will be sufficient . . . for at least the next twelve months," ¶ 163, are forward-looking. *See In re Hut 8 Corp. Sec. Litig.*, 2025 WL 2636150, at \*3, 15 (S.D.N.Y. Sept. 12, 2025). The same is true for "expectations" about "ability to raise cash and maintain a cash balance," *Jones v. Perez*, 550 F. App'x 24, 27 (2d Cir. 2013), and "plan[s] to achieve [a] goal," *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at \*18-19 (S.D.N.Y. Apr. 2, 2020). Every challenged statement falls into one of these categories. *See* App. A; Mot. 9-10.[3]

Second, Plaintiffs argue that the cautionary language was not "meaningful" because Defendants had "knowledge" of "capital-raising efforts." Opp. 9-10. Plaintiffs are, in essence, arguing that the safe harbor does not apply because Defendants knew the statements were false. Such an allegation is subject to the even more stringent requirement to show that Defendants had "actual knowledge" their statements were false. *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 773 (2d Cir. 2010). The SAC comes nowhere close to meeting this standard. Plaintiffs argue that because the Company was discussing potential capital raises as early as December 2022, it must have been facing a liquidity crisis from that point forward. *See* Opp. 2, 9-10. But this theory ignores that Farfetch consistently operated at a loss and repeatedly disclosed that it financed its operations with debt—including an additional $200 million loan in August 2023. ¶¶ 3, 44-50, 109; Ex. 3 at 13-14,

---

[2] Plaintiffs' authorities (Opp. 8-9) concern alleged misstatements of present or historical fact—not forward-looking statements. *E.g.*, *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246-47 (2d Cir. 2016) (statement concerned company's then-existing balance sheet, not forward-looking expectations about the year ahead); *P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 97-98 (2d Cir. 2004) (present tense statement that "no initial public offering was being planned").

[3] Plaintiffs invoke "severability," Opp. 9, but never identify what is severable or how any supposedly non-forward-looking component was actionable.

57; Ex. 12 at 13-14, 65, 100; Ex. 18 at 10.[4]  Plaintiffs offer no basis to conflate the Company's routine, well-disclosed capital raises with the liquidity crisis that later emerged.  The letter written years later by lawyers for the entity that purchased Farfetch's operating business (Opp. 7), does not establish knowledge of a liquidity crisis in late 2022; it confirms the opposite.  *See* Mot. 14-15.  It states that Farfetch's financial condition did not begin deteriorating until "the second half of 2023," ¶ 94; Ex. 25 at 2—the very period when Defendants publicly disclosed taking on $200 million in debt to fund operations, ¶ 109.  The letter further explains that it was not until "late 2023"—well after the last challenged statement—that Farfetch's "ability to remain a going concern" was in doubt.  Ex. 25 at 3.  If Plaintiffs want to embrace this letter, the timeline it recites forecloses Plaintiffs' theory that a liquidity crisis first materialized months earlier.  *See Venkataraman v. Kandi Techs. Grp., Inc.*, 2021 WL 4952260, at *4 (S.D.N.Y. Oct. 25, 2021).[5]

Inactionable Opinions.  Plaintiffs do not meaningfully dispute that the challenged statements are opinions.  Opp. 11-12; Mot. 16-18.  Instead, they argue the opinions are actionable because Defendants allegedly omitted a "contradicting material fact[]"—"Project Athena."  Opp. 11-12, 14-16.  However, this argument again rests on the fact-free conclusion that the "Project Athena" created in December 2022 is synonymous with the liquidity crisis that emerged in late

---

[4] Unlike *Solow v. Citigroup, Inc.*, 827 F. Supp. 2d 280, 288 (S.D.N.Y. 2011) (Opp. 9)—where defendants secretly borrowed from the Federal Reserve's emergency lending facility—Farfetch publicly disclosed its debt financing—including the August 2023 loan—and warned investors it might need additional capital.  ¶ 109; Ex. 3 at 13-14.

[5] Plaintiffs' reliance on *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014) (Opp. 10), does not advance their claims.  There, the court found defendants' public assurances actionable because they were directly contradicted by a contemporaneous letter the company had submitted to government authorities identifying "existing problems."  *Id.* at 251.  Here, by contrast, the letter Plaintiffs invoke was authored years later by outside counsel to the entity that purchased Farfetch's operating assets—*i.e.*, individuals with no contemporaneous or even first-hand knowledge of Farfetch's financial condition in late 2022/early 2023—and Plaintiffs identify no contemporaneous document or communication that contradicted Defendants' statements when made.  Mot. at 14-15.

2023.  Plaintiffs allege only that Project Athena "began as undisclosed plans to consummate a take-private transaction" and "by the fall of 2023, Project Athena morphed into a multi-faceted effort" to secure financing.  ¶¶ 90, 94.  That narrative aligns with Farfetch's disclosures, which detailed its history of operating losses, warned that it might need to raise additional capital, and publicly disclosed subsequent financings, including the $200 million debt raise in August 2023.[6]  ¶¶ 3, 44-50, 109.  This Court has already recognized that Plaintiffs' allegations "do not identify anything known to the Individual Defendants that is materially different from what Farfetch disclosed."  Order at 23.  Nothing in the SAC changes that conclusion.[7]

Inactionable Puffery.  This Court has already held that generalized expressions of corporate optimism—such as Farfetch's statements that it was "on track" (¶ 172), "well positioned" (¶ 180), and expected "strong cash generation" (¶ 145)—constitute non-actionable puffery because they are "too general to cause a reasonable investor to rely upon them."  Order at 28-29.  Plaintiffs attempt to sidestep that by recharacterizing Defendants' statements as "concrete representations" that Farfetch "*was* self-funding, and *did not need* external capital."[8]  Opp. 12-13.  Again, however,

---

[6] Because Plaintiffs have not shown that Project Athena was, prior to "late 2023," anything other than routine capital raising (Opp. 17-18), allegations that any Defendant participated in that process add nothing to their theory of liability.

[7] Nor is there any basis to suggest that every internal deliberation about strategic alternatives must be disclosed whenever a company opines on its liquidity.  *See Thesling v. Bioenvision*, 374 F. App'x 141 (2d Cir. 2010) (no duty to disclose merger negotiations); *In re Express Scripts Holding Co. Sec. Litig.*, 2018 WL 2324065, at *7 (S.D.N.Y. May 22, 2018) (Ramos, J.), *aff'd sub nom.* 773 F. App'x 9 (2d Cir. 2019) (rejecting "failed to disclose" theory because "statements about negotiations, which lack a definite outcome, are not actionable").  Plaintiffs' reliance on *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) (Opp. 14), is misplaced.  In *Basic*, the defendant affirmatively and repeatedly represented that "no negotiations" were occurring when, in fact, merger discussions had been ongoing for over two years.  *Id*. at 227-28

[8] Plaintiffs' authorities (Opp. 12-13) are inapposite.  Where they address puffery at all, they concern concrete misrepresentations of existing fact—not generalized, forward-looking expressions of optimism about future liquidity.  *See Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (specific representations regarding present inventory levels); *In re Vivendi, S.A. Sec. Litig.*,

Plaintiffs identify no statement making such a representation, because the plain language of the at-issue statements, in fact, confirms the opposite—*i.e.*, that they were not "worded as guarantees." Order at 28-29; Mot. 18-19.  These statements are precisely the type of vague corporate optimism that courts routinely dismiss as inactionable puffery.  *E.g.*, *Steamfitters Local 449 Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 366 (S.D.N.Y. 2019) (statement that company "believe[d] [it] will continue to generate profitable growth and strong cash flows" was inactionable puffery).[9]

## II.    PLAINTIFFS DO NOT PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiffs' claims again fail for the independent reason that the SAC fails to plead the requisite strong inference of scienter.  Mot. 21-25; Order at 35-43.

No Cognizable Motive.  As this Court observed in dismissing the CAC, the fact that Defendants "increased their stockholdings during the Class Period" undermines any inference of fraudulent intent.  Order at 36.  Courts in this District have repeatedly held that an increase in net holdings is "inconsistent with fraudulent intent," *Tung v. Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 460-61 (S.D.N.Y. 2019), and "cannot support a 'cogent and compelling' inference" of fraud, *Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009). Plaintiffs' attempt to sidestep these dispositive facts by pointing to two stock sales (Opp. 21-22) is without merit.  Mr. Jordan and Ms. Phair each made only a single sale, both of which were "made to cover . . . tax liabilities" from the vesting of even more Farfetch stock—circumstances that "do not support an inference of scienter" as a matter of law.  *See Damri v. LivePerson, Inc.*,

---

838 F.3d 223, 245 (2d Cir. 2016) (reported income for a prior quarter).

[9] Plaintiffs offer no response to Defendants' arguments concerning post-Class Period events—including Coupang's May 8, 2024, valuation and the subsequent sales of NGG assets—and thus have forfeited any reliance on those allegations.  *See Sachsenberg v. IRSA Inversiones*, 339 F. Supp. 3d 169, 181 (S.D.N.Y. 2018) (arguments not addressed in opposition may be deemed abandoned); *see also* Mot. 19-21; Opp. (silent as to these issues).

772 F. Supp. 3d 430, 468 (S.D.N.Y. 2025); Exs. 19-20 (showing "shares sold to cover withholding taxes upon vesting of restricted stock unit award[s]").  Moreover, it "defies economic reason" to suggest that Mr. Jordan and Ms. Phair would have increased their already substantial stock holdings during the relevant period (Mot. 22 n.12), only to incur significant losses when Farfetch was ultimately liquidated.  *See Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001).

As for Mr. Neves, Plaintiffs assert that his "total holdings decreased" because shares were transferred to TGF Participations (Opp. 22), but that characterization omits the critical fact that Neves retained beneficial ownership of the transferred shares.  Ex. 12 at 118 (table showing shares held by TGF Participations treated as shares held by Mr. Neves because he "may be deemed to have beneficial ownership of those" shares).  Courts have repeatedly held that transactions in which a defendant maintains beneficial ownership "cannot support [] scienter."  *Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 437 (S.D.N.Y. 2010); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 594 (S.D.N.Y. 2011) (same).

Finally, Plaintiffs alternatively argue that Defendants were motivated to "stave off bankruptcy" and "maintain [] credit access" long enough to complete Project Athena.  Opp. 18-19.[10]  However, the desire to avoid insolvency or maintain access to credit is common to virtually every business enterprise and insufficient to support a strong inference of scienter.  If that were enough, "virtually every company in the United States . . . could be forced to defend securities fraud actions."  *Saraf v. Ebix, Inc.*, 2024 WL 1298246, at *2 (2d Cir. Mar. 27, 2024); *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 216 (S.D.N.Y. 2008) (similar).[11]  In any event, the notion

---

[10] The Opposition also references a motive to "preserve [a] relationship with J.P. Morgan."  Opp. 18.  This assertion says nothing about a motive to defraud investors and is unsupported by any particularized allegations.

[11] Plaintiffs' cases (Opp. 19) are readily distinguishable.  *E.g.*, *Howard v. Everex Sys.,* 228 F.3d 1057, 1064 (9th Cir. 2000) (defendants inflated sales and overstated net value to raise financing

that the Individual Defendants lied about the need for financing in order to obtain more financing is belied by the fact that the Company repeatedly warned that they were loss-making, would need to raise additional capital, and then disclosed that they incurred more indebtedness during the period. Ex. 3 at 13; Ex. 12 at 13, 100. "To put it mildly, [d]efendants' disclosures about the risk" it was "supposedly concealing" are "inconsistent with" scienter. *Holbrook v. Trivago N.V.*, 2019 WL 948809, at *21 (S.D.N.Y. Feb. 26, 2019).

No Circumstantial Evidence. Plaintiffs contend that Defendants' involvement in Project Athena establishes scienter. Opp. 17-18. But the SAC does not identify any information Defendants allegedly learned through that process that contradicted their public statements. *See* Mot. 24. The discovery letter on which Plaintiffs rely (*see* Opp. 7-8, 17-18) likewise contains no such facts. As noted above, it confirms that Farfetch's financial decline began in the second half of 2023—after the at-issue statements—and that serious liquidity concerns did not arise until "late 2023."[12] And Plaintiffs have now abandoned the former employee allegations, acknowledging that their "scienter theory does not depend" on these allegations. Opp. 20. Although Plaintiffs say these allegations provide "context," it remains true that four of the five FEs are not alleged to have had any contact with any Individual Defendant and therefore cannot support an inference as to their state of mind. *Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *11 (S.D.N.Y. Mar.

---

and avoid violating loan covenants); *Leone v. ASP Isotopes Inc.*, 2025 WL 3484821, at *22 (S.D.N.Y. Dec. 4, 2025) (motive adequately alleged where company had "no meaningful revenue" and was dependent on stock sales to fund operations). Nothing comparable is alleged here.

[12] Plaintiffs' authorities (Opp. 18) underscore only what is missing here: allegations of specific internal information flatly contradicting Defendants' public statements. *See zCap Equity Fund LLC v. LuxUrban Hotels Inc.*, 792 F. Supp. 3d 407, 434-35, 440-41 (S.D.N.Y. 2025) (scienter adequately alleged where defendant was personally required to guarantee obligations arising from a transaction that had, in fact, failed, while publicly stating that the transaction had been successfully completed); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 574-75 (S.D.N.Y. 2012) (executives oversaw conflicting accounting reports where SEC filings reported revenue and net income one hundred times greater than figures reported in parallel SAIC filings).

28, 2013); Mot. 22-23.  Plaintiffs attempt to recast FE5's allegation—that Mr. Jordan referenced investors "threatening to pull their money out of Farfetch because of longstanding internal [control] deficiencies" at NGG, ¶ 108—as evidence of a concealed liquidity crisis.  Opp. 20.  But the Court has already held that this very allegation is insufficient, Order at 40, and Plaintiffs still fail to explain how the supposed possibility that unspecified investors might "pull their money out" (i.e., sell their Farfetch stock to others) bears in any way on whether any Individual Defendant knew that Farfetch's operations would not generate sufficient liquidity.

Core Operations.  Plaintiffs' invocation of the "core operations" doctrine adds nothing. Opp. 20-21.  That doctrine "does not independently establish scienter," *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015) (Ramos, J.),[13] and does not permit the inference that any executive who speaks about liquidity must have acted with fraudulent intent. *See In re Kandi Techs. Grp., Inc. Sec. Litig.*, 2019 WL 4918649, at *8 (S.D.N.Y. Oct. 4, 2019).

Temporal Proximity.  Finally, Plaintiffs argue that because there were only a few months between the at-issue liquidity statements and Farfetch's liquidation, the earlier statements must have been lies.  Opp. 21.  However, temporal proximity alone is "too speculative" to support an inference of fraud.  *In re SuperCom Inc. Sec. Litig.*, 2018 WL 4926442, at *32 (S.D.N.Y. Oct. 10, 2018); *In re Ferroglobe PLC Sec. Litig.*, 2020 WL 6585715, at *11 (S.D.N.Y. Nov. 10, 2020).

The More Compelling, Non-Culpable Inference.  Viewed holistically, the SAC offers no plausible reason why Defendants would orchestrate a fraud that resulted in their own massive financial losses.  The far more compelling inference is that Defendants remained optimistic about

---

[13] Plaintiffs' cases (Opp. 20-22) are in accord.  *See New Orleans Emp. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 (2d Cir. 2011) (core operations "cannot establish scienter independently"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37-38 (S.D.N.Y. 2019) (core operations "not independently sufficient to raise a strong inference of scienter").

9

Farfetch's prospects, invested accordingly, and disclosed risks and financing needs as they arose—but the Company ultimately succumbed to adverse market conditions in late 2023. Mot. 3-7, 24-25. That non-culpable explanation is far more cogent and compelling than fraudulent intent. *See In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 531 (S.D.N.Y. 2020).

## III. THE SAC FAILS TO PLEAD SCHEME LIABILITY

Plaintiffs concede that a "formal process to raise capital or sell the business" is not "inherently fraudulent," but contend it became "deceptive" because Defendants allegedly "den[ied] any need" to raise capital. Opp. 1, 8, 23. That fails both because Defendants never denied any need to raise capital, *see supra*, and because scheme liability requires conduct distinct from alleged misstatements themselves. *Buhrke Fam. Revocable Trust v. U.S. Bancorp*, 726 F. Supp. 3d 315, 363 (S.D.N.Y. 2024). Plaintiffs identify no such conduct and merely repackage their misstatements theory as a "scheme."

## IV. PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs had the benefit of this Court's detailed "guidance as to how [] claims may be adequately made," Order at 45, but did nothing to address the prior complaint's flaws. Plaintiffs have narrowed their theory to challenge statements Defendants never made and ignore the many disclosures Defendants did make on this topic. The SAC offers no new witnesses—indeed, one has been dropped—and Plaintiffs concede that the rest merely provide "additional context." Opp. 20. In a single footnote, Plaintiffs request leave to amend, but they identify no additional facts that could cure the SAC's fundamental deficiencies. Opp. 25 n.10. This is Plaintiffs' third unsuccessful attempt to plead a viable securities fraud claim. There should not be a fourth. Pleading is not "an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable claim emerges." *Kravitz v. Tavlarios*, 2020 WL 3871340, at *12 (S.D.N.Y. July 8, 2020), *aff'd*, 2021 WL 5365582 (2d Cir. Nov. 18, 2021).

## **CONCLUSION**

For the foregoing reasons, the SAC should be dismissed with prejudice.

Dated: February 23, 2026
      New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Jeff G. Hammel*
Jeff G. Hammel
Jason C. Hegt
Jooyoung Yeu
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
jeff.hammel@lw.com
jason.hegt@lw.com
jooyoung.yeu@lw.com

*Attorneys for Defendants José Neves,*
*Elliot Jordan, and Stephanie Phair*

11

## <u>CERTIFICATION OF WORD COUNT COMPLIANCE</u>

Pursuant to Local Civil Rule 7.1(c) and Rule 2.B.i of Your Honor's Individual Practices, I certify under penalty of perjury that the Reply Memorandum of Law in Further Support of the Individual Defendants' Motion to Dismiss the Second Amended Complaint is 10 pages and contains 3,579 words, excluding items exempted by Local Civil Rule 7.1(c).   In making this certification I have relied upon the word count of Microsoft Word, the word-processing system used to prepare the memorandum.

Dated: New York, New York
February 23, 2026

*/s/ Jeff G. Hammel*
Jeff G. Hammel
