UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FARFETCH LIMITED SECURITIES LITIGATION | **OPINION & ORDER** <br><br> 23-cv-10982 (ER) |

RAMOS, D.J.:

Co-Lead Plaintiffs Fernando Sulichin and Yuanzhe Fu (collectively, "Plaintiffs") bring this putative class action against Farfetch Limited ("Farfetch") and its direct subsidiary FF Realisations plc (f/k/a Farfetch Holdings plc) ("FF Holdings"), and individuals José Manuel Ferreira Neves ("Neves"), Elliot Gilbert Jordan ("Jordan"), and Stephanie Nadie Phair Kooij ("Phair") (collectively, "Defendants"), alleging violations of Section 10(b) and 20(a) of the Securities Exchange Act, and Securities Exchange Commission ("SEC") Rule 10b-5. Plaintiffs now move for an order modifying the discovery stay currently in place pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") to permit them to obtain copies of certain documents and materials from related non-party Surpique L.P. ("Surpique"). Specifically, Plaintiffs seek all non-privileged documents that Surpique has produced, or will in the future produce, to the Joint Official Liquidators ("JOLs"), acting as Farfetch's liquidators, in response to a subpoena served upon them in a bankruptcy liquidation proceeding (the "Cayman Proceeding").[1] For the reasons set forth below, Plaintiffs' motion to modify the PSLRA discovery stay is DENIED.

---

[1] By an Order of the United States Bankruptcy Court for the District of Delaware dated August 5, 2024, all pending actions against Farfetch are stayed. *In re: Farfetch Limited (in Official Liquidation), Debtor in a Foreign Proceeding*, No. 24-11519-CTG (Bankr. D. Del. July 10, 2024), Dkt. ("Bankr. Dkt") 60 at ¶ 5. Accordingly, this action proceeds solely against the Individual Defendants.

I.      BACKGROUND

A.  Factual Background

The Court assumes familiarity with the facts presented in the previous opinion and order in this case.[2]  *See* Doc. 73 (granting Individual Defendants' motion to dismiss).  For present purposes, the Court provides an abbreviated summary and new, relevant facts herein.  Unless stated otherwise, the following facts are from the Second Amended Class Action Complaint, Doc. 78.

This is a federal securities class action lawsuit brought on behalf of shareholders who purchased Farfetch securities between December 1, 2022 and December 17, 2023 (the "Class Period").[3]  ¶ 1.  Plaintiffs allege that that Defendants made materially false or misleading statements, omitted material historical or present facts, and deceived investors in order to artificially inflate Farfetch stock prices in violation of Section 10(b) and 10b-5, and that Neves, Jordan, and Phair (collectively, "Individual Defendants") were controlling persons of Farfetch and FF Holdings and violated Section 20(a).  ¶¶ 215–30.

Farfetch is a publicly traded technology company founded in 2007 that supported third-party sales of luxury goods to consumers worldwide via its digital marketplace platform.  ¶ 2.  Farfetch operated as a private company for over 10 years before launching its initial public offering ("IPO") in September 2018, with shares listed on the New York Stock Exchange ("NYSE").  *Id.*  Plaintiffs allege that Farfetch promoted itself to investors based on its "low risk, high margin" third-party marketplace platform design.  *Id.*  As a result, Plaintiffs contend that Farfetch achieved a successful IPO that raised over $1 billion and led to an $8 billion valuation.  *Id.*  Plaintiffs assert that, "seemingly overnight," the Company abandoned this business model, shifting instead to a "growth-by-acquisition" strategy focusing on the "acquisition of first-party retailers and wholesale

---

[2] Although the Plaintiffs have filed a Second Amended Complaint, the general allegations remain the same.

[3] The Court notes that the instant motion, which is based on the since dismissed Consolidated Amended Complaint, alleges a class period from February 24, 2022, though December 17, 2023.

distributors," with acquisitions totaling $1.6 billion.  *Id.*  To finance this strategy, Farfetched took on substantial debt, including $1.25 billion in 2020.  ¶ 3.  Following additional acquisitions and strategic investments in 2022, Farfetchs' primary operating subsidiary entered into a $400 million credit agreement in October 2022, which was expanded by an additional $200 million in August 2023.  *Id.*

Plaintiffs allege that, beginning in 2020, the COVID-19 pandemic and the spike in online-shopping "provided a façade of profitability" while masking the true extent of the negative impact of these acquisitions.  ¶ 5.  Plaintiffs argue that these acquisitions led to inefficiencies, including overlapping business units and unsustainable operating expenses relating to excess inventory and large upfront Value Added Tax ("VAT") obligations, and heavy discounts leading to low profit margins.  *Id.*  The complaint alleges that Farfetch was nearing a liquidity crisis and potential bankruptcy, sustained only by rapidly depleting debt financing.  *Id.*

Plaintiffs contend that leading up to and through the Class Period, Farfetch represented to investor that it maintained "aggressive growth prospects" and a "secure financial footing," ¶ 4, and that its "balance sheet supported its second phase of growth" aimed at returning to profitability and positive free cash flow.  ¶ 6.  Plaintiffs allege, however, that in December 2022, Farfetch initiated "Project Athena," an undisclosed effort to pursue a take-private or similar transaction.  *Id.*  According to Plaintiffs, by the second half of 2023, after unsuccessful efforts to secure new capital, Farfetch formed a special committee and pursued a sale of substantially all company assets in a single transaction, resulting in the write-off of approximately $1 billion in debt.  *Id.*

Plaintiffs allege that up until August 2023, Defendants made numerous representations to the market suggesting the company maintained a strong financial posture.  ¶ 7.  Plaintiffs contend that Farfetch stock price "came tumbling down" after a series of revelations indicating that Farfetch was not executing on its plan to profitability and positive free cash flow, that its previous guidance was not to be trusted, and

3

ultimately that the business had been gutted and sold off for its parts to avoid insolvency. *Id.*

By the end of 2023, Farfetch was experiencing significant financial and liquidity pressure and facing insolvency. Doc. 67 at 6. On January 30, 2024, pursuant to a court approved insolvency sale in the United Kingdom and approved by independent administrators, Surpique, a Delaware company, acquired the material assets of Farfetch Holdings PLC. *Id.* Surpique did not acquire Farfetch Limited, a Cayman Islands holding company with no operations of its own that sat above Farfetch Holdings PLC. *Id.*

Shortly after, on February 2, 2024, Wilmington Trust, a creditor to Farfetch Limited, filed a petition in the Grand Court of the Cayman Islands seeking to wind up Farfetch Limited. *See* Doc. 61-1, Apton Decl. The Cayman Court granted the petition and appointed two Joint Official Liquidators ("JOLs") to oversee the liquidation. *In re: Farfetch Limited (in Official Liquidation), Debtor in a Foreign Proceeding*, No. 24-11519-CTG (Bankr. D. Del. July 10, 2024), Dkt. ("Bankr. Dkt") 1 at ¶ 3. The JOLs are tasked with investigating the events leading up to Farfetch's financial collapse and the circumstances surrounding the sale of the Farfetch business to Surpique. Doc. 60 at 11; Doc. 67 at 7–8. The Cayman court permitted the JOLs to seek recognition in the United States of their appointment as official Cayman liquidators. Bankr. Dkt. 1 at ¶ 5.

On July 10, 2024, the JOLs filed a motion in the U.S. Bankruptcy Court for the District of Delaware ("Bankruptcy Court") seeking recognition of the Cayman liquidation as a foreign main proceeding, and the JOLs as Farfetch Limited's foreign representatives under Chapter 15 of the United States Bankruptcy Code. *See* Bankr. Dkt. 4. On August 5, 2024, the Bankruptcy Court granted recognition and authorized the JOLs to pursue discovery. *See* Bankr. Dkt. 46.

Thereafter, the JOLs issued subpoenas pursuant to Federal Rule of Bankruptcy Procedure 2004 to various third parties located within the United States, including Farfetch Limited's former outside counsel and directors. *Id.* The JOLs also served a Rule

4

2004 subpoena against Surpique, as the entity that acquired Farfetch, containing 81 separate requests covering a time period of more than five years, beginning January 2019 through January 2024. *See* Doc. 61-2 at 46–55, Apton Decl.

The JOLs' investigation has been ongoing for more than a year. Doc. 60 at 11. Plaintiffs assert that, to date, Surpique has produced over 16,000 documents in response to the JOLs' subpoena. *Id.* According to Surpique, it has to date produced only 269 documents, consisting primarily of Farfetch Limited's core books and records, and has not yet produced any emails or other custodial files. Doc. 69 ¶ 3, Greenblatt Decl.

The JOLs and Surpique are currently engaged in discussions concerning the appropriate scope of a custodial review in response to the subpoena. *Id.* ¶ 4. Surpique maintains that, although those negotiations remain ongoing, the parties appear to be converging on a proposed search protocol that would involve review of more than 100,000 documents. *Id.*

Plaintiffs contend that production of these materials will be in the "near future." Doc. 60 at 11. Surpique asserts, however, that they expect that production will be complete "mid-to-late summer." Doc. 69 ¶ 5, Greenblatt Decl.

## B. Procedural Background

Jasmine Wu, individually and on behalf of all others similarly situated, filed the first complaint in this consolidated class action on December 19, 2023 (the "Wu SDNY Action"). Doc. 1. Three members of the putative class filed motions seeking appointment as lead plaintiff.[4] On October 20, 2023, two months prior to the filing of the

---

[4] The following individuals moved to be appointed as lead plaintiff in this action: On December 19, 2023, movant Michael Bievetski moved to be appointed as lead plaintiff and The Rosen Law Firm, P.A. as lead counsel. Doc. 5. Also on December 19, 2023, movant Eduardo Archer Veloso Martins and RenoportoInvestimentos Imobiliários, LDA ("Martins") moved to be appointed as lead plaintiff and Pomerantz LLP as lead counsel for the Class. Doc. 8. Lastly, on January 2, 2024, Fernando Sulichin, individually and on behalf of Lyxor Overseas Holdings Ltd. and Cinergy Advisors Ltd. ("Sulichin"), to be appointed as lead plaintiff and Levi & Korsinsky, LLP as lead counsel. Doc. 17. Martins,and Sulichin, along with three other individuals—Yuanzhe Fu, Tamim Altamimi, and Kaundria West—moved separately to be appointed as lead plaintiff in *Ragan v. Farfetch Limited et al.*, No. 8:23-cv-02857 (D. Md.). Doc. 23 at 2.

above-captioned action, a related securities class action asserting substantially the same claims was filed in the United States District Court for the District of Maryland, *Ragan v. Farfetch Limited et al.*, No. 8:23-cv-02857 (D. Md.). Doc. 23 at 2. On January 22, 2024, the Court in *Ragan* entered a stipulation and order transferring the case to the Southern District of New York, case No. 24-cv-00532 (PAE) (SN) (S.D.N.Y.) (the "Ragan SDNY Action," and together with the Wu SDNY Action, the "Related Actions"). *Id.* at 3. On February 6, 2024, the Ragan SDNY Action was transferred from Judge Paul Engelmayer to the undersigned. The same day, upon stipulation and agreement by the parties hereto, the Court consolidated the Related Actions under Case No. 23-cv-10982 (ER) (KHP), Fernando Sulichin and Yuanzhe Fu were appointed lead plaintiffs, and Levi & Korsinsky, LLP and Hagens Berman Sobol Shapiro LLP were appointed co-lead counsel. *Id.* at 4, 5. In that Order, the Court directed Plaintiffs to file an amended complaint in the consolidated case or designate the existing complaint as the operative complaint. *Id.* at 5. The Court also directed Defendants and co-lead plaintiffs to meet and confer regarding scheduling. *Id.*

On June 21, 2024, lead plaintiffs filed the Consolidated Amended Complaint ("CAC"), alleging two counts: (1) violation of Section 10(b) of the Exchange Act (15 U.S.C. §78j(b)) and Rule 10b-5 (17 C.F.R. §240.10b-5); and (2) a violation of Section 20(a) of the Exchange Act by the Individual Defendants. Doc. 34. The CAC alleged a Class Period between February 24, 2022 through December 17, 2023, inclusive. *Id.* ¶ 1.

On September 11, 2024, the Individual Defendants filed a motion to dismiss the CAC in its entirety, with prejudice, and a request for judicial notice in support of their motion to dismiss. Docs. 43, 46. The Individual Defendants argued that the CAC pleaded no viable theory of securities fraud and should therefore be dismissed. Doc. 44 at 10. Specifically, the Individual Defendants argued that Plaintiffs did not plead any actionable misstatement or omission and, instead, the CAC "sen[t] readers on a scavenger hunt through large block quotations excerpted from more than 80 different disclosures

over a nearly two-year period," in what constituted puzzle-pleading. *Id.* at 11. The Individual Defendants added that nearly all of the challenged statements are (i) inactionable expressions of corporate optimism, (ii) forward-looking statements protected by the PSLRA safe harbor, and/or (iii) opinion statements. *Id.* Lastly, the Individual Defendants argued that the Plaintiffs did not—and could not—plead facts to meet the requisite "strong" inference that the Defendants acted with scienter. *Id.* at 12.

On September 29, 2025, the Court granted the Individual Defendants' motion to dismiss the CAC. Doc. 73. The Court held that the CAC "fail[ed] to meet the pleading standards of Rule 9(b) and the PSLRA." *Id.* at 27. Specifically, the Court concluded that Plaintiffs had "failed to allege a material misrepresentation or omission to support a claim under section 10(b)." *Id.* at 32. The Court further found that Plaintiffs "have not sufficiently alleged an inference of scienter 'at least as strong as the opposing inference,'" and therefore dismissed Plaintiffs' Section 10(b) and Rule 10b-5 claims against the Individual Defendants. *Id.* at 42–43. Because Plaintiffs failed to plead a primary violation of the Exchange Act, the Court also dismissed Plaintiffs' claims pursuant to Section 20(a). *Id.* at 45. The Court granted Plaintiffs leave to file a Second Amended Complaint ("SAC"). *Id.* at 46.

On November 3, 2025, Plaintiffs filed a SAC alleging two counts: (1) violation of Section 10(b) of the Exchange Act (15 U.S.C. §78j(b)) and Rule 10b-5 (17 C.F.R. §240.10b-5); and (2) a violation of Section 20(a) of the Exchange Act by the Individual Defendants. Doc. 78. The SAC alleges a Class Period between December 1, 2022 through December 17, 2023, inclusive. *Id.* ¶ 1.

On December 18, 2025, the Individual Defendants filed a motion to dismiss the SAC in its entirety. Doc. 79. Individual Defendants contend that Plaintiffs' SAC should be dismissed "for the same reasons this Court dismissed the prior complaint." Doc. 80 at 9. The Individual Defendants' motion to dismiss remains pending before the Court.

Meanwhile, on May 1, 2025, Plaintiffs filed a motion seeking to modify the automatic discovery stay.  Doc. 59.  Plaintiffs request production of all "non-privileged documents already produced (or being produced by) Surpique to Farfetch's liquidators" in response to a Rule 2004 subpoena in the Cayman Proceeding.  Doc. 60 at 5.  Plaintiffs contend that lifting the stay "imposes no undue burden" on Surpique and "is necessary to prevent real and irreparable harm."  *Id.* at 7.

On May 22, 2025, non-party Surpique filed a brief in opposition to Plaintiffs' motion to lift the automatic discovery stay.  Doc. 67.  Surpique argues that Plaintiffs have not satisfied their heavy burden to justify lifting the stay for three principal reasons.  *Id.* at 5.  First, Surpique contends that Plaintiffs have failed to show that lifting the stay is necessary to preserve evidence.  *Id.*  Second, Surpique asserts that Plaintiffs' claims of undue prejudice are "far too speculative or instead reveal improper motives."  *Id.*  Third, Surpique argues that Plaintiffs' proposed subpoena "falls far short of the PSLRA's particularity requirement" and would impose upon them a "tremendous burden."  *Id.* at 5–6.

The Individual Defendants also filed a brief in opposition to Plaintiffs' motion to lift the automatic discovery stay on May 22, 2025, on essentially the same three grounds as Surpique.  Doc. 68.

On May 29, 2025, Plaintiffs filed a reply in further support of their motion.  Doc. 72.

## II.    LEGAL STANDARD

The PSLRA mandates that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).  This creates "a strong presumption that *no* discovery should take place until a court has affirmatively decided that a complaint *does* state a claim under the securities laws, by denying a motion to

dismiss." *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (emphasis in original). To overcome that presumption, a plaintiff must show that the requested discovery is both "particularized" and is necessary to "(1) preserve evidence, or (2) prevent undue prejudice to plaintiffs." *In re Smith Barney Transfer Agent Litigation*, No. 05-cv-7583 (WHP), 2006 WL 1738078, at *1 (S.D.N.Y. June 26, 2006).

Accordingly, courts will lift the PSLRA discovery stay only in "exceptional circumstances." *See, e.g.*, *In re AOL Time Warner, Inc. Securities Litigation*, No. 1500, 02-cv-5575 (SWK), 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003) (quoting *Vacold LLC v. Cerami*, No. 00-cv-4024 (AGS), 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001).

The PSLRA makes no distinction between discovery sought from parties and discovery sought from non-parties. *See* 15 U.S.C. § 78u-4(b)(3)(B); *see, e.g.*, *Faulkner v. Verizon Communications, Inc.*, 156 F. Supp. 2d 384, 404 (S.D.N.Y. 2001).

## III.    DISCUSSION

Plaintiffs request the discovery stay be lifted for those "limited" non-privileged documents which Surpique has already produced or will produce to the JOLs in response to the Rule 2004 subpoena in the Cayman Proceeding. Doc. 60 at 5. Plaintiffs argue their request is "particularized" and that relief is necessary "to prevent undue prejudice" and "the permanent loss of documents." *Id.* at 5, 7, 13. The Court disagrees.

### A. Standing

Plaintiffs contend that only the recipient of a subpoena has standing to oppose it. *Id.* at 16. On that basis, Plaintiffs argue that the Individual Defendants lack standing to oppose the present motion because the subpoena is directed solely to Surpique, not to the Individual Defendants. *Id.*

The Individual Defendants assert that all securities defendants have standing to oppose a motion to lift the PSLRA discovery stay. Doc. 68 at 10. Individual Defendants

maintain that the stay must first be lifted by the Court before Plaintiffs may issue any third-party subpoena. *Id.*

Plaintiffs do not dispute that non-party Surpique has standing to oppose the present motion to modify the PSLRA discovery stay. *Cf. In re Enron Corp.*, 281 B.R. 836, 838 (Bankr. S.D.N.Y. 2002) (noting, in the context of a Bankruptcy Rule 2004 request for discovery stayed under the PSLRA in a related action, that "no party disputes that the automatic discovery stay of the PSLRA applies" to a third party seeking to oppose lifting the stay); *Faulkner* 156 F. Supp. 2d at 404 (noting a third party's objections to lifting the PSLRA discovery stay and explaining that "the PSLRA does not distinguish between discovery of non-parties and parties"). Moreover, Surpique joins in and adopts the arguments set forth in the opposition brief filed by the Individual Defendants. Doc. 67 at 13. Surpique states that "[t]o the extend that the Court finds that Individual Defendants lack standing, Surpique incorporates those same arguments herein." *Id.* Accordingly, the Court need not resolve whether the Individual Defendants have standing.

### B.  Plaintiffs' Request is Not Particularized

Plaintiffs seek to lift the PSLRA discovery stay to obtain all non-privileged documents which Surpique has already produced or will produce to the JOLs in response to the Rule 2004 subpoena in the Cayman Proceeding. *See* Doc. 60. This request is facially overbroad and insufficiently particularized.

For purposes of the PSLRA, a discovery request is particularized "when it is directed at specific persons and identifies specific types of evidence that fall within its scope." *Mori v. Saito*, 802 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (internal quotations omitted).

Plaintiffs assert that its requests "comprise a clearly defined universe of documents" which are "core" to its claims. Doc. 60 at 13, 14. Yet, they certainly cannot know this to be true. Neither Surpique nor the JOLs have yet determined, much less

agreed upon, the scope of documents to be produced in response to the Rule 2004 subpoena. Doc. 69 ¶ 4, Greenblatt Decl. As a result, Plaintiffs do not seek a defined scope of documents but rather an unknow and as-yet to be determined universe of documents. Courts in this District have consistently denied lifting the PSLRA stay with regard to documents which have not yet been produced in other related actions. *See In re Bank of America Corp. Securities, Derivative, and Employment Retirement Income Securities Action (ERISA) Litigation*, No. 09-mdl-2058 (DC), 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) (denying plaintiffs' motion to lift the PSLRA discovery stay as to documents not yet produced, but granting the motion as to the documents already produced); *Faulkner*, 156 F. Supp. 2d at 405 (holding that plaintiffs' motion to lift the PSLRA discovery stay was insufficiently "particularized" where it sought "all documents already produced or to be produced in the future").

Plaintiffs identify only one case from this District in which the PSLRA discovery stay was modified to permit the plaintiff to obtain documents that had been, and would later be, produced to the defendant by the Securities and Exchange Commission and the United States Attorney's office in connection with other related cases. *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 368, 370 (S.D.N.Y. 2013). The Court finds *Kaplan* distinguishable. There, the plaintiff and one of the defendants had agreed that the defendant would produce that limited universe of documents. *Kaplan*, 947 F. Supp. 2d at 369. That circumstance is not comparable to the situation here, where the party from whom Plaintiffs seek discovery affirmatively opposes lifting the stay. *See* Doc. 67. The remaining cases cited by Plaintiffs, many of which are from outside this District, are inapposite. *See* Doc. 60 at 13–14. In all but one, the discovery sought involved a closed universe of documents that had already been collected, reviewed, and produced, not an open-ended, unbounded request for an undefined set of documents yet to be identified or produced. *See, e.g.*, *In re FirstEnergy Corp. Securities Litigation,* No. 20-cv-03785, 2021 WL 2414763, at *4 (S.D. Ohio June 14, 2021) (finding plaintiffs' discovery request

sufficiently particularized where it was limited to "those materials that have already been produced" in parallel legal matters); *Pension Trust Fund for Operating Engineers v. assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 915 (E.D. Wis. 2013) (finding plaintiffs' discovery request sufficiently particularized where it sought only "relevant materials that have already been produced in other proceedings" and was not "a blanket request for all potentially-relevant materials").

Plaintiffs' request is also impermissibly overbroad. The JOLs' subpoena was issued pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, which authorizes discovery far broader than that permitted under the Federal Rules of Civil Procedure, and vastly broader than what Plaintiffs would be entitled to at any point in this securities action. *See In re Enron*, 281 B.R. at 840–41 (noting a distinction between the "broad" nature of Rule 2004 discovery with the more restrictive discovery available under the Federal Rules of Procedure); *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (noting that "Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure" and may properly be likened to a "fishing expedition"). This is compounded by the fact that, as per the SAC, the Class Period in this action spans from December 1, 2022, through December 17, 2023, Doc. 78 ¶ 1, whereas the Rule 2004 subpoena seeks documents covering more than five years, from January 2019 through January 2024. *See* Doc. 61-2 at 46–55, Apton Decl. Plaintiffs' request therefore risks sweeping in large volumes of materials that are irrelevant to and well outside the scope of this securities action. *See Faulkner*, 156 F. Supp. 2d at 404 (denying plaintiffs' request to modify the PSLRA discovery stay as not particularized when many of the documents requested were "not relevant to the securities fraud claim"); *In re Lottery.com, Inc. Securities Litigation*, 22-cv-07111 (JLR), 2024 WL 5226400, at *2 (S.D.N.Y. Dec. 26, 2024) (denying plaintiffs' motion to modify a PSLRA discovery stay when plaintiffs have failed to limit their discovery requests "to issues relevant to the claims before the [c]ourt"). Plaintiffs concede as much, acknowledging

that the JOLs' subpoena "relates to *some* of the very same financial statements and public proclamations that Plaintiffs allege are false and misleading." Doc. 60 at 14 (emphasis added).

Finally, Plaintiffs acknowledge that the universe of documents they seek includes approximately 100,000 documents. Doc. 72 at 4; *see also* Doc. 69 ¶ 4, Greenblatt Decl. Courts in this District have consistently held that requests of this size and extent cannot plausibly be characterized as "particularized" for purposes of lifting the PSLRA discovery stay. *See In re Lottery.com*, 2024 WL 5226400, at *2 (finding a request for "tens of thousands of pages of documents" to be "expansive and insufficiently particularized" to justify modification of the PSLRA discovery stay); *Faulkner*, 156 F. Supp. 2d at 404 (finding that plaintiffs' failed to satisfy the burden of seeking particularized discovery where they requested "more than 45,000 pages of documents"). Accordingly, Plaintiffs' expansive request may be denied on this basis alone.

Even assuming, *arguendo*, that Plaintiffs had satisfied the particularization requirement, which they have not, their motion would still fail because they have not demonstrated that the requested discovery is "necessary to preserve evidence or to prevent undue prejudice," as required by 15 U.S.C. § 78u–4(b)(3)(B), as discussed below.

### C. Plaintiffs' Fail to Demonstrate That Their Proposed Discovery is Necessary to Preserve Evidence

For purposes of the PSLRA, "[a] party alleging that discovery is necessary to preserve evidence must… make a specific showing that the loss of evidence is imminent as opposed to merely speculative." *In re Vivendi Universal, S.A. Securities Litigation*, 381 F. Supp. 2d 129, 130 (omission in original) (internal quotations omitted).

Plaintiffs contend that a partial lift of the discovery is necessary to preserve evidence. Doc. 60 at 7, 18–19. They base their argument on two assertions. First, Plaintiffs claim that Surpique Holdings Limited, the parent entity of Surpique, is currently undergoing dissolution. *Id.* at 7, 18. As a result, Plaintiffs argue that absent the requested

relief and assurances from Surpique that they have the appropriate policies in place to preserve any potentially relevant documents, there is a substantial risk that potentially relevant materials may be lost. *Id.* at 18–19. Second, Plaintiffs assert that Surpique has already lost relevant information, namely access to the virtual data room that was created for the sale of Farfetch to Coupang, therefore heightening the risk that other potentially relevant information could be lost. *Id.* at 7, 19. For these reasons, Plaintiffs argue that they "may never be able to obtain the information sought if it is not produced now." *Id.* at 19.

Surpique and the Individual Defendants respond that Plaintiffs' argument is premised on two factual inaccuracies. First, they claim that Surpique is currently in possession of the virtual data room documents and has already produced them to the JOLs who have confirmed receipt of these documents. Doc. 69 ¶ 12, Greenblatt Decl. Second, while they acknowledge that Surpique Holdings was briefly subject to an involuntary dissolution proceeding in the United Kingdom beginning April 15, 2025, resulting from inadvertently missing a statutory filing deadline, it has since completed the necessary filings on May 2, 2025, and the dissolution proceeding was cancelled the following day. *Id.* ¶¶ 8, 9. Accordingly, they maintain that Surpique and Surpique Holdings are both solvent entities, neither of which are being dissolved. *Id.* ¶ 10. Surpique further notes that, Coupang Inc., which is incorporated in Delaware and is the ultimate beneficial owner of Surpique and Surpique Holdings, is a solvent public company. Doc. 67 at 17.

Plaintiffs' argument, premised entirely on facts which do not reflect the current state of affairs, must fail. Although Plaintiffs assert in their reply that, notwithstanding Surpique's claim to have regained access to the data in the virtual room and resolution of the statutory filing issue, "mistakes have already been made." Doc. 72 at 10. Plaintiffs' argument is far too speculative and thus falls well short of making the requisite showing that evidence is at risk of loss.

In addition, the Court finds there to be sufficient measures in place to ensure the preservation of any potentially relevant information.  Plaintiffs' proposed subpoena is limited only to those non-privileged documents which Surpique has already produced or will produce to the JOLs in response to the Rule 2004 subpoena in the Cayman Proceeding.  Doc. 61-3.  As Surpique correctly notes, they have an independent obligation to preserve documents in connection with the subpoena.  Doc. 67 at 15.  Moreover, Surpique has represented that it will preserve all documents responsive to the subpoena for a period of three years and has expressed a willingness to revisit its preservation obligation should Plaintiffs' claim remain ongoing.  Doc. 69 ¶ 7, Greenblatt Decl.; *See also Waldman v. Wachovia Corp.*, No. 08-cv-2913 (SAS), 2009 WL 86763, at *1 (S.D.N.Y. Jan. 12. 2009) (giving "some credence to defendants' express assurance" that they have taken and will continue to take steps to preserve relevant evidence); *In re AOL Time Warner*, 2003 WL 21729842, at *2 (accepting defendants' assurance "that they will uphold their obligation under the PSLRA to preserve evidence").

Further, Plaintiffs' proposed subpoena necessarily includes only those documents to be produced to the JOLs.  Doc. 60 at 5, 7, 14.  Surpique correctly notes that the JOLs, on behalf of Defendant Farfetch Limited, have their own obligations under the PSLRA to preserve evidence relevant to Plaintiffs' claims against it.  *See* 15 U.S.C. § 78u-4(b)(3)(C)(i) ("During the pendency of any stay of discovery pursuant to this paragraph . . . *any party* to the action with actual notice of the allegations contained in the complaint shall treat all documents . . . as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.") (emphasis added).  Plaintiffs do not dispute the ability or willingness of the JOLs to preserve those documents which they receive from Surpique.

For the aforementioned reasons, Plaintiffs have failed to identify any facts demonstrating a risk of evidentiary loss, let alone an imminent one.

15

### D.    Plaintiffs' Fail to Establish Undue Prejudice

For the purposes of the PSLRA, Courts in this District have construed "undue prejudice" to mean "improper or unfair treatment amounting to something less than irreparable harm." *In re Vivendi Universal*, 381 F. Supp. 2d at 130 (quoting *Vacold*, 2001 WL 167704, at *6). Accordingly, "exceptional circumstances" must exist in order to justify lifting the stay. *In re AOL Time Warner*, 2003 WL 21729842, at *1 (quoting *Vacold*, 2001 WL 167704, at *6).

Plaintiffs argue that they will suffer undue prejudice if the stay is not lifted, asserting that Farfetch's only assets available to satisfy any judgement are its insurance policies. Doc. 60 at 6, 17. According to Plaintiffs, they and the JOLs are pursuing "the same limited insurance proceeds," *Id.* at 5, and the JOLs have allegedly made clear their intention to maximize value for creditors rather than for the shareholders represented by Plaintiffs in this action. *Id.* at 17. Plaintiffs assert that they "face a likelihood that, by the time the discovery stay here is lifted, there will be no assets left to satisfy any judgment against any of the defendants." *Id.*

Surpique adopts the understanding of the Individual Defendants that "different insurance coverage applies due to the different time period and subject matter." Doc. 68 at 12; *see* Doc. 67 at 13. Plaintiffs have offered no evidence that the securities action and the Cayman Proceeding implicate the same pool of insurance proceeds. As the party bearing the burden of demonstrating undue prejudice, Plaintiffs' unsupported claim is insufficient. *See In re Vivendi*, 381 F. Supp. 2d at 130–31 (denying motion to modify the PSLRA discovery stay after finding "*no evidence*" that plaintiffs face the prospect of being left without a remedy as a result of settlement discussions or other intervening events, such as bankruptcy) (emphasis added).

Even assuming, *arguendo*, that Plaintiffs and the JOLs are pursuing the same limited insurance funds, Plaintiffs' argument nonetheless rests entirely on speculation. "Mere speculation about highly contingent possibilities of future prejudice does not

16

demonstrate that lifting the stay is 'necessary … to prevent undue prejudice.'" *In re Refco, Inc.*, No. 05-cv-8626 (GEL), 2006 WL 2337212, at *3 (S.D.N.Y. Aug. 8, 2006). To date, the JOLs have not filed any claims against the Individual Defendants or Surpique, Doc. 64 at 5, nor is there any evidence that the JOLs have engaged in settlement discussions with the Individual Defendants or Surpique. *See In re AOL Time Warner*, 2003 WL 21729842, at *1 (finding that plaintiffs' assertion that settlement discussions between the defendants and the government were ongoing was "premature" for plaintiffs to conclude that an impending settlement could prejudice their potential recovery); *380544 Canada, Inc. v. Aspen Technology, Inc.,* No. 07-cv-1204 (JFK), 2007 WL 2049738, at *3 (S.D.N.Y. July 18, 2007) (holding that the "mere possibility that plaintiffs could be prejudiced" by future settlement talks between the individual defendants and the SEC does not constitute undue prejudice).

In fact, many of the cases cited by Plaintiffs involve situations where the defendants had already reached settlements with other parties and therefore are distinguishable. *See, e.g.*, *Waldman*, 2009 WL 86763, at *2 (lifting the PSLRA discovery stay for undue prejudice "[g]iven the unique procedural posture of this litigation" and "plaintiffs' unusual need for an early review of crucial records" where "plaintiffs must determine whether to continue with this case despite the settlement reached between defendants and the SEC, which will afford some compensation to the plaintiff class"); *In re LeBranch Securities Litigation*, 333 F. Supp. 2d 178, 183, 184 (S.D.N.Y. 2004) (lifting the PSLRA discovery stay for undue prejudice where "there has been an actual settlement" in enforcement actions brought by the SEC and NYSE and "[t]he requested discovery is essential to determine [whether or not to seek an early settlement] and to assist in formulating an appropriate settlement demand"). Plaintiffs' reliance on *In re Delfi*, a case originating out of the Eastern District of Michigan, is similarly misplaced. *In re Delfi Corp.*, No. 05-md-1725, 2007 WL 518626, at *7 (E.D. Mich. Feb. 15, 2007) (lifting the PSLRA discovery stay for undue prejudice where several defendants had

17

"already consented to substantial judgements in the SEC case" and where settlement negotiations remained "ongoing" in the bankruptcy action).

Plaintiffs also contend that maintaining the discovery stay in this securities action while discovery proceeds in the Cayman Proceeding would deprive them of the ability to make "informed litigation decisions," particularly with respect to "litigation and settlement strategies" in what they describe as a "rapidly shifting landscape." Doc. 60 at 16–17 (quoting *In re WorldCom, Inc. Securities Litigation*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)). However, Plaintiffs never identify what specific decisions they are allegedly unable to make, nor do they explain how the litigation landscape is supposedly shifting "rapidly." Moreover, Courts in this District have consistently held that an inability to gather evidence for settlement negotiations or to plan a litigation strategy, without more, does not constitute undue prejudice. *See In re Smith Barney*, 2006 WL 1738078, at *2 (holding that undue prejudice "does not arise from a delay in the gathering of evidence or the development of settlement or litigation postures"); *In re Refco*, 2006 WL 2337212, at *2 (holding that "[p]laintiffs' inability to gather evidence for settlement negotiations or to plan a litigation strategy is not evidence of undue prejudice"). Indeed, "delay is an inherent part of every stay of discovery required by the PSLRA." *In re Initial Public Offering Securities Litigation*, 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002).

Nor does this case resemble a "rapidly shifting landscape" as in *In re WorldCom*. *See In re Worldcom*, 234 F. Supp. 2d at 305–06. There, the court had ordered the PSLRA plaintiffs to participate in coordinated settlement negotiations with an insolvent defendant alongside plaintiffs in a related ERISA litigation who were not subject to the discovery stay and were actively obtaining discovery. *Id.* The court concluded that denying the PSLRA plaintiffs access to discovery would place them at a disadvantage in competing with the ERISA plaintiffs for the limited assets of the bankrupt defendant, creating a "very real risk" that maintaining the discovery stay would leave the PSLRA plaintiffs

18

pursuing claims against defendants who longer had "anything or at least as much to offer." *Id.* at 306. No such circumstance is present here.

Plaintiffs further argue that they have already fallen behind, and will continue to fall further behind, the Cayman Proceeding. Doc. 72 at 6. In support of their argument, Plaintiffs cite to *In re Delfi*, which the Court has already explained is plainly distinguishable. *In re Delfi Corp.*, 2007 WL 518626. Plaintiffs also cite to *In re Bank of America*, where the court found that the plaintiff would be "unduly prejudiced if the discovery stay is not lifted" because "[d]iscovery is moving apace in a parallel litigation." *In re Bank of America*, 2009 WL 4796169, at *3. This case, however, is readily distinguishable. Here, unlike in *In re Bank of America*, the record does not demonstrate that Plaintiffs face any real risk of falling behind in a parallel litigation.

In fact, counsel for the JOLs represented to this Court in April 2025 that the Cayman Proceedings are at an "early stage in the investigation," that no claims have been filed against "Surpique or anyone else," and that "in some respects [they're] behind the class action plaintiffs." Doc. 64 at 5. While Plaintiffs allege that Surpique has already turned over 16,000 documents to the JOLs, Doc. 60 at 11, the JOLs represented that, as of April 2025, Surpique had produced "only 200" documents, Doc. 64 at 4–5, and Surpique has represented that, as of May 22, 2025, they have "produced a total of 269 documents" to the JOLs. Doc. 69 ¶ 3, Greenblatt Decl. This is nominal relative to the approximately 100,000 documents Plaintiffs acknowledge to comprise the current universe of potentially responsive materials. Doc. 72 at 4. Plaintiffs nevertheless speculate that by the time the discovery stay is lifted "the Cayman Proceeding will be significantly advanced and may even be resolved, potentially leaving a Class in this securities class action without monetary recourse." Doc. 60 at 18. That assertion is undercut by Plaintiffs' own briefing. In their reply, Plaintiffs contended that "[t]he bankruptcy filings make clear that Defendants and Surpique have uniformly stonewalled the JOLs." Doc. 72 at 5. By Plaintiffs' own account, therefore, the JOLs' proceeding is not advancing rapidly, and any

suggestion that Plaintiffs will lose a race to the finish line is far too speculative to constitute undue prejudice.

But the absence of undue prejudice on these facts does not mean that a parallel proceeding can never amount to undue prejudice, as Surpique and the Individual Defendants suggest. Surpique and the Individual Defendants read too much into *In re Refco* and extend it far beyond its holding. *See* Doc. 67 at 10; Doc. 68 at 13. In *In re Refco*, the court recognized that "[t]he discrepancy between PSLRA actions and other actions" not subject to the stay "is not evidence of undue prejudice, but rather is evidence of Congress's judgement that PSLRA actions should be treated differently than other actions." *In re Refco*, 2006 WL 2337212, at *2. The court further emphasized that if the PSLRA discovery stay could be lifted merely because a third party was engaged in settlement discussions, the "'undue prejudice' requirement would essentially eviscerate the stay requirement. This is not what Congress intended." *Id.* at *3.

The fact that a parallel proceeding exists, standing alone, does not constitute undue prejudice. However, *In re Refco* does not hold, nor suggest, that a movant must show anything more than undue prejudice to obtain relief from the stay. When a parallel proceeding does in fact give rise to undue prejudice, Congress surely did not intend for the PSLRA discovery stay to remain in place.

### E. Undue Burden

It is customary for a court to consider whether a request to lift the PSLRA discovery stay would "place[] an undue burden on the party from which it is requested." *In re WorldCom*, 234 F. Supp. 2d at 306. However, "[t]here is no exception to the discovery stay for cases in which discovery would not burden the defendant." *In re Smith Barney*, 2006 WL 1738078, at *3. Indeed, "[t]he proper inquiry under the PSLRA is whether the plaintiff would be unduly prejudiced by the stay, not whether the defendant would be burdened by lifting the stay." *Id.*

Here, the inquiry need not be reached.  Plaintiffs have failed to satisfy the particularization requirement and have not demonstrated that the discovery sought is "necessary to preserve evidence or to prevent undue prejudice."  15 U.S.C. § 78u–4(b)(3)(B).

Plaintiffs nonetheless contend that their proposed subpoena would impose little or no burden on Surpique because it is limited only to those non-privileged documents that Surpique has already produce, or will produce, to the JOLs in response to the subpoena.  Doc. 60 at 6–7, 15–16.  According to Plaintiffs, Surpique is already conducting a privilege review and preparing a privilege log for that production, and to the extent that Surpique claims the need to conduct a separate privilege review, any additional burden associated with a separate review would be slight.  *Id.*

In response, Surpique asserts that Plaintiffs' proposed subpoena would impose upon them a "tremendous burden."  Doc. 67 at 5–6, 21–25.  Specifically, Surpique asserts that it would be required to expend significant resources preparing a motion to quash, and that even if the discovery stay were partially lifted, it would still be forced to negotiate a supplemental search and review protocol with Plaintiffs to isolate those documents from the far broader Rule 2004 production made to the JOLs.  *Id.* at 22–23.  Further, Surpique alleges that even if they attempted to avoid these costs by simply reproducing any productions to the JOLs, they would still incur substantial expense.  *Id.* at 23.  Specifically, they allege that they would be required to conduct a separate privilege review tailored to Plaintiffs, who are not similarly situated to the JOLs for purposes of attorney-client privilege.  *Id.*  Surpique asserts that a "sizable" number of documents that will be produced to the JOLs are protected by attorney-client privilege held exclusively by the JOLs acting on behalf of Farfetch Limited, or jointly with its former Farfetch subsidiaries now owned by Surpique.  *Id.*  As a result, Surpique asserts that it would be required to conduct a separate privilege review in order to identify and withhold those privileged materials from any reproduction to Plaintiffs.  *Id.* at 24.

Ultimately, the Court need not resolve these competing arguments. Because Plaintiffs have failed to satisfy the PSLRA's particularization requirement and have not shown that the requested discover is "necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. § 78u–4(b)(3)(B).

## IV.    CONCLUSION

For the forgoing reasons, the Plaintiffs motion to modify the PSLRA automatic discovery stay is DENIED. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 59 and 63.

It is SO ORDERED.

Dated:    February 26, 2026
        New York, New York

                                              EDGARDO RAMOS, U.S.D.J.